## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CENTER FOR LEGAL ADVOCACY, d/b/a
THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

      *Plaintiff*,

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

      *Defendants*.

---

## COMPLAINT

---

Plaintiff, the Center for Legal Advocacy, d/b/a The Legal Center for People with Disabilities and Older People (the "Legal Center"), for its Complaint alleges as follows:

### INTRODUCTION

1.     Presumptively innocent men and women are languishing in Colorado's jails awaiting court-ordered mental health evaluations and restorative treatment.  These individuals, who have been charged with but not convicted of crimes, have constitutionally protected liberty interests in promptly receiving such evaluations and treatment while not being confined any longer than necessary.  Colorado state officials are failing to timely conduct competency evaluations and admit into the state psychiatric hospital individuals found not competent to stand trial, creating delays for treatment that last as long as six months.  These unjustifiable delays

- 1 -

violate the United States Constitution by depriving individuals unable to protect themselves of their due process rights, and they strain the resources of local sheriffs unable to treat these mentally ill detainees.

## PARTIES

2.      The Legal Center files this Complaint against Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services (the "Department"), and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo ("CMHIP").

3.      The Legal Center is an independent non-profit corporation headquartered in Denver, Colorado. The Legal Center was designated in 1977 by Governor Richard Lamm as Colorado's protection and advocacy system ("P&A System") to protect and advocate for the rights of persons with mental illness and developmental disabilities under the Developmental Disabilities Assistance and Bill of Rights Act. 42 U.S.C. §§ 15041-45.  Since 1986, the Legal Center has received federal grants on an annual basis, and has established and administered a P&A System in Colorado for individuals with mental illness pursuant to 42 U.S.C. §§ 10803 and 10805 of the Protection and Advocacy for Individuals with Mental Illness Act, ("PAIMI Act"). Since 1986, the Legal Center has been and is currently the eligible P&A System for individuals with mental illness in Colorado as defined at 42 U.S.C. § 10802(2).

4.      The Legal Center has a governing board of directors which is composed of members who broadly represent and who are knowledgeable about the needs of individuals with mental illness.  The Legal Center's board of directors includes members who have received or are receiving mental health services or who have family members who have received or are receiving mental health services.

5.      The Legal Center's constituents include individuals with mental illness.  The Legal Center has established a PAIMI Advisory Council, over sixty percent (60%) of whose members themselves have received or are receiving mental health services or have family who have received or are receiving mental health services.  The PAIMI Advisory Council advises the P&A System on the policies and priorities designed to protect and advocate for the rights of individuals with mental illness.  The Chair of the Legal Center's PAIMI Advisory Council, who is also a member of the Legal Center's board of directors, has a family member who has received and is receiving mental health services.

6.      Together, the Legal Center's board of directors and PAIMI Advisory Council have developed the annual priorities and objectives of the P&A System for individuals with mental illness.  The Legal Center's first PAIMI Program Priority states that the Legal Center will monitor facilities, including jails, and investigate complaints of abuse, neglect and rights violations.  When the rights of its constituents—incapacitated individuals with mental illness—are violated, the Legal Center is authorized by statute to pursue legal remedies on their behalf, such as through this lawsuit.  42 U.S.C. § 10805(a)(1)(B) & (C).  To the extent the Legal Center expends its resources to protect the rights of its constituents in county jails waiting for competency evaluations or restorative treatment, its resources are diverted away from other priorities of its constituents.

7.      The Legal Center has established a grievance procedure for clients or prospective clients which allows its constituents with mental illness and family members of such individuals to assure them that the Legal Center and the PAIMI Program are operating in compliance with the provisions of the PAIMI Act.

8.      The Legal Center's constituents who are detained and charged with crimes are hindered from asserting their own rights.  Obstacles they face include the imminent mootness of individual claims as individuals are likely to be admitted to CMHIP for restorative treatment during the pendency of any case they might bring.  In addition, pretrial detainees who suffer from mental illness are often impaired and unable to direct or participate in litigation on their own behalf.

9.      Defendant Reggie Bicha is sued in his official capacity as the Executive Director of the Colorado Department of Human Services.  The Department is responsible under Colorado law for the operation of CMHIP and the provision of mental health evaluations and treatment for persons with mental illness found incompetent to proceed to trial.

10.      Defendant Teresa A. Bernal is sued in her official capacity as the Interim Superintendent of CMHIP.  CMHIP is the only state forensic mental hospital charged with providing court-ordered evaluations and accepting custody of pretrial detainees for restorative treatment.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because it arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

12.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because the events giving rise to this Complaint occurred in this district.

## ALLEGATIONS

**A.      Colorado's System to Evaluate the Competency of Criminal Defendants**

13.     Pretrial detainees are presumptively innocent because they have only been charged with, but not convicted of, crimes.  They are constitutionally entitled to speedy trials, but Colorado's speedy trial statute excludes time spent to evaluate a detainee's competency and to provide restorative treatment from the computation of time within which a detainee must be brought to trial under the speedy trial statute.  Colo. Rev. Stat. § 18-1-405(6).

14.     Under the federal constitution and under Colorado law, the State cannot subject incompetent defendants to trial.  A defendant is incompetent if, as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense.  Questions of a defendant's competency can be raised by the trial judge, prosecution, or defense.

15.     Once the question of a defendant's competency to proceed has been raised, "the court may make a preliminary finding of competency or incompetency, which shall be a final determination unless a party to the case objects within ten days after the court's preliminary finding."  *Id.* at 16-8.5-103(1).  When a party objects to the preliminary finding or "the court determines that it has insufficient information to make a preliminary finding, the court shall order that the defendant be evaluated for competency by the department and that the department prepare a court-ordered report."  *Id.* at -103(2).  The "department" that is required to conduct the competency evaluation and prepare the competency report is the Colorado Department of Human Services. *Id.* at -101(8).  Then, a party may request a hearing or a second evaluation within ten days from when the report is received.  *Id.* at -103(3).  "If neither party requests a hearing or a

second evaluation within the applicable time frame, the court shall enter a final determination, based on the information then available to the court, whether the defendant is or is not competent to proceed." *Id.* at -103(5).

16.     The location of competency evaluations is determined by the trial court. Defendants eligible for bond may be released on bond for the evaluation, or the court may commit the defendant to the custody of the Department for the evaluation or order that it be conducted in the jail where the defendant is being detained. *Id*. at -105(1)(a).  A written report of the evaluation must be prepared and delivered to the clerk of the court that ordered it.  The report must include the name of each physician, psychologist, or other expert who examined the defendant; a description of the nature, content, extent, and results of the evaluation and any tests conducted; a diagnosis and prognosis of the defendant's mental disability or developmental disability; and an opinion as to whether the defendant is competent to proceed.  *Id*. at -105(5).

17.     When a court orders a defendant committed to the custody of the Department for a competency evaluation, that evaluation is conducted by CMHIP at its psychiatric hospital in Pueblo.  If the court orders the competency evaluation to take place in the jail where the defendant is detained, CMHIP hires contract evaluators to complete the evaluation.

18.     After receiving the competency evaluation, the court makes a final determination whether the detainee is competent to proceed to trial.  *Id*. at -103(5).  If the final determination is that the defendant is not competent to proceed, the court may release the defendant on bond on the condition that he obtain treatment or habilitation services.  *Id*. at -111(2)(a).  If the court determines that the defendant is not eligible for release on bond, the court may commit the defendant to the custody of the Department for restorative treatment.  *Id*. at -111(2)(b).  Once the

defendant has been restored to competency, the defendant is returned to the custody of the county jail for the resumption of criminal proceedings against the defendant.  *Id*.

19.     While a defendant is committed for restorative treatment, the court is required to review the defendant's case at least every three months "with regard to the probability that the defendant will eventually be restored to competency and with regard to the justification for continued commitment or confinement."  *Id*. at -116(2).  A defendant is entitled to credit for any time spent in confinement for restorative treatment against any term of imprisonment imposed after restoration to competency, and a defendant may not be confined for restorative treatment for a period in excess of the maximum term of confinement that could be imposed for the offense with which the defendant is charged.  *Id*. at -116(1).

**B.     The Competency Evaluation System Is Plagued by Chronic Delays, Trapping Pretrial Detainees Who Are Presumed Innocent in Procedural Limbo**

20.     Pretrial detainees in many, if not all, of Colorado's jails are experiencing severe delays—some as long as six months—in receiving court-ordered competency evaluations and, for those determined not competent to proceed, for admission to CMHIP for restorative treatment.  In some cases, the delays for evaluation and admission for restorative treatment have resulted in confinement of pretrial detainees for periods longer than they otherwise would have been confined for the alleged offense.

21.     CMHIP currently maintains a wait list of pretrial detainees that have been ordered to receive restorative treatment at CMHIP and that it has not admitted.  There are more than 50 people on the wait list, and there are numerous detainees with serious mental illness who are waiting four, five, and even six months for admission to CHIP after they have been ordered to

receive restorative treatment. *See* Affidavit of Colorado State Public Defender Douglas K. Wilson, attached hereto as **Exhibit A**.

22.    For example, the Colorado Public Defender currently represents Client L.E.  L.E. was detained in the Boulder County Jail.  On December 30, 2010, the Judge D. Archuleta, of the Boulder County District Court, ordered that L.E. be evaluated to determine his competency to proceed to trial.  L.E.'s evaluation occurred on January 28, 2011 at the Boulder County Jail, and the written report of L.E.'s evaluation was filed with the court on February 7, 2011.  On February 14, 2011, the court entered its determination that L.E. was not competent to proceed and that L.E. be transported to CMHIP for treatment and restoration.  L.E. was not transported to CMHIP until July 15, 2011, *more than five months after the court ordered that he receive restorative treatment*.

23.    The Colorado Public Defender represents Client T.M.  On or about January 18, 2011, Judge T. Quammen of the Weld County District Court ordered that T.M. be evaluated to determine T.M.'s competency to stand trial.  T.M.'s evaluation occurred on February 1, 2011 at the Weld County Jail and the written report of T.M.'s evaluation was filed with the court on February 14, 2011. On February 17, 2011, the court made its determination that T.M., who has a history of schizophrenia, is not competent to stand trial and ordered that T.M. be transported to CMHIP for treatment and restoration.  T.M. was admitted to CMHIP on August 15, 2011, *six months following the court's order that he be admitted to CMHIP for restorative treatment*.

24.    The Colorado Public Defender represents Client P.E.  On January 31, 2011, Judge E. Rinaldi, of the Adams County District Court, ordered that P.E. be evaluated to determine P.E.'s competency to stand trial.  P.E.'s evaluation occurred on March 23, 2011 at the Adams County Jail, and the written report of P.E.'s evaluation was filed with the court on April 11,

2011. On April 29, 2011, the court made its determination that P.E. is not competent to stand trial and ordered that P.E. be transported to CMHIP for treatment and restoration.  P.E. had not been transported to CMHIP by June 10, 2011, on which date the court held a review hearing and entered a second order that P.E. be transferred to CMHIP for treatment and restoration.  While detained in the Adams County Jail, P.E. has been charged with additional offenses allegedly committed while in jail.  P.E. was admitted to CMHIP on July 13, 2011, *two-and-a-half months following the court's order that he be admitted to CMHIP for restorative treatment.*

25.     The Colorado Public Defender represents Client R.J.  On March 21, 2011, Judge J. Romeo, of the Adams County District Court, ordered that R.J. be evaluated to determine R.J.'s competency to stand trial.  The Department did not conduct R.J.'s evaluation until June 30, 2011 at the Adams County Jail. The written report of R.J.'s evaluation was filed with the court on July 5, 2011.  On July 26, 2011, the court made its determination that R.J. is not competent to stand trial and ordered that R.J. be transported to CMHIP for treatment and restoration.  On July 26, 2011, R.J.'s attorney requested that R.J. be released on bond given the wait times for restoration. The court, however, denied the request.  While awaiting transfer to CMHIP, R.J. has been charged with an additional offense allegedly committed while in jail.  As of the date of this Complaint, *more than five months following the order to evaluate R.J. for competency, and more than a month following the court's transportation order,* R.J. remains in custody at the Adams County Jail and has not received any restorative treatment.

26.     The Colorado Public Defender represents Client S.R.  On April 28, 2011, Judge R. Lowrey, of the El Paso County District Court, ordered that S.R. be evaluated to determine S.R.'s competency to stand trial.  S.R.'s evaluation occurred on June 13, 2011 at the El Paso County Jail and the written report of S.R.'s evaluation was filed with the court on July 1, 2011.

On July 7, 2011, the court made its determination that S.R. is not competent to stand trial and ordered that S.R. be transported to CMHIP for treatment and restoration.  On July 28, 2011, Lori Carter, Observations/Admissions Administrator for the Institute of Forensic Psychiatry at CMHIP notified S.R.'s Deputy Public Defender, that *S.R. would not be transported to CMHIP for at least seven weeks because there were 55 people ahead of S.R. on CMHIP's waiting list.* As of the date of this Complaint, *almost two months following the court's order that he be admitted to CMHIP*, S.R. remains in custody at the El Paso County Jail and has not received any restorative treatment.

27.     Numerous other pretrial detainees have experienced or are currently experiencing similarly severe delays in receiving competency evaluations or in being admitted to CMHIP for treatment and restoration.

28.     Data from a county sheriff's office further demonstrates that delays for evaluation and admission for restorative treatment are severe and growing.  *See* Affidavit of Arapahoe County Sheriff J. Grayson Robinson, attached hereto as **Exhibit B**.  The Arapahoe County Sheriff, who oversees the Arapahoe County Detention Facility, has witnessed the following delays in 2010 and 2011.  In 2010, an average of 43 days elapsed between a court order for a competency evaluation and the provision of the evaluation in jail.  In 2011, the average has increased to 51.6 days.  In one instance in 2011, it took 58 days—*more than eight weeks*—for a detainee to receive a court-ordered competency evaluation.

29.     The Arapahoe County Sheriff has also seen increases in delays for admission to CMHIP after a finding of incompetency.  In 2010, an average of 26.25 days elapsed between a court order for commitment of an incompetent detainee to CMHIP and admission to CMHIP.  In

2011, the average has increased to 32.5 days.  In one instance in 2011, it took 48 days—*almost seven weeks*—for a detainee to be admitted into CMHIP.

30.     Statistics from the Arapahoe County Sheriff's Office are set forth in the table below.

### Arapahoe County Detention Facility Statistics

|  | 2010 | 2011 |
|---|---|---|
| Average days from court-ordered evaluation to conduct of evaluation in jail. | 43 | 51.6 |
| Average days from court-ordered evaluation to evaluation at CMHIP. | 31.9 | 54.5 |
| Average days from court-ordered commitment of incompetent detainees to CMHIP and admission to CMHIP. | 26.25 | 32.5 |

**C.      The Delays Cause Detainees Severe Harm, Violate Their Constitutional Rights, and Impose Significant Burdens on Jails and Sheriff Departments**

31.     In late 2006, approximately 85 pretrial detainees all over the State of Colorado were experiencing significant delays, up to six months, waiting for evaluation and transport to CMHIP.  In one instance, Judge M. Egelhoff of the Denver District Court, found the Department and CMHIP in contempt of his orders for competency evaluations or commitment for restorative treatment of three individuals.  As a result of the contempt citations, and further proceedings, the Department and CMHIP entered into a settlement agreement with Special Counsel, which required them to admit pretrial detainees to CMHIP within 24 days of receipt of a court order for

evaluation or commitment.  This settlement agreement was commonly known as the "Zuniga"

agreement.  The settlement agreement expired in June 2009 when CMHIP's new 200-bed

forensic facility was open for admission.  Unfortunately, this new facility was not enough to curb

the dire and growing violation of constitutional rights suffered by those once again waiting for

months for admission to CMHIP for evaluation and treatment.  Beginning in January 2010,

pretrial detainees were once again waiting for significant periods to obtain evaluations and/or be

transported to CMHIP for restorative treatment.

32.     Pretrial detainees who wait months for evaluation and/or restorative treatment

suffer serious harm.  Jails can provide medication management for people willing to take

medications, but cannot administer medication involuntarily, except in a life-threatening

emergency.  The psychological condition and behavior of incompetent detainees often

deteriorates rapidly when they do not receive necessary treatment.

33.     None of the jails in Colorado are able to provide treatment designed to restore a

person found incompetent to proceed.   As a result, detainees who suffer from mental illness are

unpredictable and disruptive, taking up valuable resources needed for the care of other inmates.

34.     The jails' only system for controlling inmates is through disciplinary control,

which is behavior driven.  Such a system is ineffective and harmful for persons with mental

illness.  Unlike the county jails, CMHIP has the capacity to treat a person's mental illness.  Each

of the CMHIP units housing persons found incompetent to proceed is staffed by a full-time

psychiatrist, psychologist, mental health nurses, social workers, mental health technicians, and

even a recreational counselor.

35.     In addition to assessment, medication evaluation and management, and individual

and group psychotherapy, CMHIP provides legal skills training one to three times per week to

assist patients in learning about the law, pleas, and returning to court.  This treatment is designed to enable a person to regain fitness to participate in criminal proceedings.

36.     Pretrial detainees with mental illness are a population that has a high suicide risk, and psychosis can be an emergency requiring immediate treatment.

37.     Depriving persons with mental illness who are incompetent to proceed with the necessary restorative treatment increases the likelihood that their condition will deteriorate and they will suffer unduly.  The delays also hamper efforts to provide effective representation regarding their criminal prosecution.

38.     Although the jails have the capacity to transport detainees to CMHIP more quickly, detainees cannot be transported until CMHIP agrees to admit them upon arrival.  If the jails transport detainees before receiving notice from CMHIP that it will admit them, CMHIP will refuse their admission.

39.     While pretrial detainees are in jail, they do not receive care giving them a realistic opportunity of becoming competent to stand trial. This failure of the Defendants to evaluate and admit the pretrial detainees in a timely manner violates their due process rights.

40.     The resources of Sheriffs' departments around Colorado are strained by the delays in evaluating pretrial detainees and admitting those not competent to proceed to CMHIP.  For example, the average cost per day to house an inmate in the Arapahoe County Detention Facility is $68.30.  *The average cost per day to house a detainee suffering from mental illness can be double that amount*.  Sheriffs' departments are incurring this increased cost more often than they should because of the Defendants' failure to promptly evaluate and admit detainees.

**CAUSE OF ACTION**
(42 U.S.C. § 1983 for violation of the Due Process Clause
of the Fourteenth Amendment)

41.     Plaintiff realleges each allegation above as if fully set forth herein.

42.     Defendants, in their official capacities, act under color of Colorado law when they provide, or fail to provide, detainees with timely court-ordered competency evaluations and timely restorative mental health treatment.

43.     Defendants Bicha and Bernal, in their official capacities, have failed to provide prompt competency evaluations and prompt admission to CMHIP of detainees determined to be incompetent.

44.     There is an actual, present, and justiciable controversy between Plaintiff and Defendants over the severe delays caused by Defendants in providing court-ordered competency evaluations and in admitting pretrial detainees to CMHIP for court-ordered treatment and restoration.

45.     Due process requires that the nature and duration of confinement bear reasonable relation to the purpose for which an individual is confined.

46.     Once a defendant is found unable to aid and assist in his own defense, the only lawful purpose for confinement is to treat the person in order to return them to competency.

47.     Individuals found not competent to aid and assist in their defense have a constitutional right to such individualized treatment as will give them a reasonable opportunity to be cured or to improve their mental condition.

48.     Colorado's county jails do not have the structure, mission, expertise or resources to provide the restorative mental health treatment required by detainees who have been found not competent to proceed to trial.  There is no legitimate state interest in keeping pretrial detainees

with mental illness incarcerated in county jails for weeks or months and depriving them of timely evaluations and restorative treatment.

49.     "The United States Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  "Because incapacitated criminal defendants have not been convicted of any crime, they have an interest in freedom from incarceration.  They also have a liberty interest in receiving restorative treatment."  *Id.*

50.     Defendants actions and inactions result in confinement of pretrial detainees with mental illness that violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

51.     Plaintiff is entitled to a declaratory judgment from this Court under 28 U.S.C. §§ 2201-02 and Fed. R. Civ. P. 57 that (1) the current delays in Colorado for competency evaluations and admission to CMHIP of incompetent detainees violate the Due Process Clause of the Fourteenth Amendment, (2) competency evaluations must be completed and submitted to the court ordering them no later than 7 days after the court's order, or within such other time that this Court determines comports with the Due Process Clause of the Fourteenth Amendment, and (3) detainees found not competent to proceed to trial be admitted by CMHIP for restorative treatment no later than 7 days following the court's determination of incompetency, or within such other time that this Court determines comports with the Due Process Clause of the Fourteenth Amendment. *See Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (holding that state hospital must admit mentally incapacitated criminal defendants within 7 days of judicial finding of incapacitation).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Legal Center prays for relief as follows:

a.     A judgment declaring (1) that the current delays in Colorado for competency evaluations and admission to CMHIP for restorative treatment of incompetent detainees violate the Due Process Clause of the Fourteenth Amendment; (2) that competency evaluations must be completed and submitted to the court ordering them no later than 7 days after the court's order, or within such other time that this Court determines comports with the Due Process Clause of the Fourteenth Amendment; and (3) that detainees found not competent to proceed to trial be admitted by CMHIP for restorative treatment no later than 7 days following the court's determination of incompetency, or within such other time that this Court determines comports with the Due Process Clause of the Fourteenth Amendment;

b.     A preliminary and permanent injunction requiring Defendants (1) to complete court-ordered competency evaluations within 7 days of the court's order, or within such other time that this Court determines comports with the Due Process Clause of the Fourteenth Amendment; and (2) to transport to and accept for restorative treatment at CMHIP detainees found not competent to proceed to trial within 7 days of the court's order, or within such other time that the Court determines comports with the Due Process Clause of the Fourteenth Amendment;

c.     An award of Plaintiffs' reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988; and

d.     Such other and further relief as the Court may deem just and proper.

DATED:  August 31, 2011

Respectfully submitted,

/s/  Jason M. Lynch

Iris Eytan
Jason M. Lynch
Caleb Durling
REILLY POZNER LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
(303) 893-6100
ieytan@rplaw.com
jlynch@rplaw.com
cdurling@rplaw.com


/s/ Marcus Lock

Marcus Lock
BRATTON HILL WILDERSON & LOCK LLC
525 North Main Street
Gunnison, CO 81230
(970) 641-1903
MLock@BrattonHill.com


Chester R. Chapman
Mark J. Ivandick
THE LEGAL CENTER FOR PEOPLE WITH
     DISABILITIES
455 Sherman St., Suite 130
Denver, CO 80203
(303) 722-0300
rchapman@thelegalcenter.org
mivandick@thelegalcenter.org

*Attorneys for Plaintiff Legal Center*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CENTER FOR LEGAL ADVOCACY, d/b/a
THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

      *Plaintiff,*

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

      *Defendants.*

---

## AFFIDAVIT OF DOUGLAS K. WILSON

---

I, Douglas K. Wilson, the Colorado State Public Defender, being of lawful age and duly sworn under oath, states as follows:

1.      I have clients who currently are experiencing or who have recently experienced delays in competency evaluation and/or transport for mental health treatment by the Colorado Department of Human Services (DHS) and the Colorado Mental Health Institute at Pueblo (CMHIP).

2.      I have personal knowledge of certain instances where a detainee's case would be resolved and he would be free but for CMHIP's inability to provide a timely court ordered competency evaluation.

3.      I have knowledge that some of the clients get charged with additional offenses in the jail due to their untreated mental illness because they are not transported to CMHIP for evaluation or treatment in a prompt manner. This is because of their inability, due to their mental illness, to conform their behavior to the requirements of the jail where they are being housed.

4.      Specifically, I have knowledge of the following clients who currently are experiencing or have experienced such delays within the past twelve months:

a) Client R.M.: On June 8, 2010, client R.M. was arrested and charged with a felony and a misdemeanor. R.M. underwent an outpatient competency evaluation on August 24, 2010 and the El Paso County District Court received the report on September 13, 2010. On September 29, 2010, the court entered its finding that R.M. was incompetent to stand trial and ordered that R.M. be remanded into custody and transported to CMHIP for treatment and restoration. As a result of more than a two-month delay, the court entered an order for the immediate transport of R.M. on December 8, 2010. R.M. was finally transported on December 22, 2010.

b) Client L.E.: On December 27, 2010, client L.E. was arrested and charged with a felony and misdemeanors. The Boulder County District Court ordered a competency evaluation for L.E. on December 30, 2010. L.E.'s evaluation occurred on January 28, 2011 at the Boulder County Jail, and the written report was filed with the court on February 7, 2011. On February 14, 2011, the court entered its finding that L.E. was incompetent to stand trial and ordered that L.E. be transported to CMHIP for treatment and restoration. L.E. was transported on July 15, 2011.

c) Client T.M.: On January 16, 2011, client T.M. was arrested and charged with a felony. To the best of my knowledge, the Weld County District Court ordered a competency evaluation for T.M. on January 18, 2011. T.M.'s evaluation occurred on February 1, 2011 at the Weld County Jail, and the written report was filed with the court on February 14, 2011. On February 17, 2011, the court entered its finding that T.M. was incompetent to stand trial and ordered that T.M. be transported to CMHIP for treatment and restoration.  T.M. was transported to CMHIP on August 15, 2011.

d) Client P.E.: On January 6, 2011, client P.E. was arrested and charged with a felony. The Adams County District Court ordered a competency evaluation for P.E. on January 31, 2011. P.E.'s evaluation occurred on March 23, 2011 at the Adams County Jail, and the written report was filed with the court on April 11, 2011. On April 29, 2011, the court entered its finding that P.E. was incompetent to stand trial and ordered that P.E. be transported to CMHIP for treatment and restoration. On June 10, 2011, the court held a review hearing and issued a second order that P.E. be transported to CMHIP for treatment and restoration. P.E. has been charged with two additional offenses during the waiting period; the first occurred several hours before the court issued the transport order; the second

occurred during the waiting period. P.E. was admitted to CMHIP on July 13, 2011.

e) Client R.J.: On February 22, 2011, client R.J. was arrested and charged with various felonies and misdemeanors. The Adams County District Court ordered a competency evaluation for R.J. on March 21, 2011. R.J.'s evaluation did not occur until June 30, 2011 at the Adams County Detention Center, and the written report was filed with the court on July 5, 2011. On July 26, 2011, the court entered its finding that R.J. was incompetent to stand trial and ordered that R.J. be transported to CMHIP for treatment and restoration. R.J. has been charged with one additional offense during the waiting period. As of today, R.J. remains in custody at the Adams County Jail awaiting transport to CMHIP.

f) Client S.R.: On March 22, 2011, client S.R. was arrested and charged with various crimes. The El Paso County District Court ordered a competency evaluation for S.R. on April 28, 2011. S.R.'s evaluation occurred on June 13, 2011 at El Paso County Detention Center, and the written report was filed with the court on July 1, 2011. On July 7, 2011, the court entered its finding that S.R. was incompetent to stand trial and ordered that S.R. be transported to CMHIP for treatment and restoration. As of today, S.R. remains in custody at the El Paso County Jail awaiting transport to CMHIP. On July 28, 2011, Lori Carter, Observations/Admissions Administrator for the Institute of Forensic Psychiatry at CMHIP, notified S.R.'s Deputy Public Defender that S.R. would not be transferred for 7 additional weeks because there were 55 people ahead of S.R. on the waiting list.

Dated: August 30 , 2011

Douglas K. Wilson Reg. No. 11622
Colorado State Public Defender

Sworn to before me this 30 day of August, 2011, by Douglas K. Wilson.

Witness my hand and official seal.
My commission expires 9/25-13 .

Notary

# EXHIBIT B

## AFFIDAVIT OF J. GRAYSON ROBINSON

I, J. Grayson Robinson, do state and affirm as follows:

1.      I am over 18 years of age and competent to testify if so called.  I am the Sheriff and Chief Law Enforcement Officer of Arapahoe County, Colorado, and I have personal knowledge of the facts set forth below.

2.      As Arapahoe County Sheriff, I am responsible for the operations of the Arapahoe County Sheriff's Office Detentions Facility (the Detentions Facility).  The Detentions Facility is the jail in Arapahoe County where criminal defendants are secured and housed before and during trial.  The Detentions Facility has the capacity to house 1,166 inmates.

3.      The population of pretrial detainees at the Detentions Facility regularly includes individuals suffering from mental illness, and the cost to properly house pretrial detainees who suffer from mental illness is greater than the cost to house other detainees.  For example, in fiscal year 2010, it cost the Arapahoe County Sheriff's Office $68.30 per day on average to house an inmate who does not suffer from mental illness, while the daily costs for an inmate who suffers from mental illness could be double.

4.      Housing detainees with mental illness places special demands on the staff of the Arapahoe County Sheriff's Office Detentions Facility.  The Arapahoe County Sheriff's Office Detentions Facility continues to earn facility accreditations by ensuring the safety of our staff and detainees.

5.      Housing detainees with mental illness in a county jail also exposes those detainees to special risks.  For example, it is not uncommon for mentally ill detainees to violate facility conduct rules because of their inability to conform their behavior to the requirements of a secure detentions facility.  Since January 1, 2010, there have been 28 inmates at the Detention Facility

- 1 -

who committed criminal offenses or rule violations while waiting for competency evaluations and/or admission to the Colorado Mental Health Institute at Pueblo (CMHIP).

6.      I am familiar with the process by which pretrial detainees receive court-ordered evaluations to determine their competency to proceed.  Competency evaluations are conducted at the Detentions Facility, and sometimes detainees are transferred from the Detentions Facility to CMHIP for evaluations.

7.      The amount of time that elapses between the entry of a court order directing the Department of Human Services to conduct a detainee's competency evaluation inside the Detentions Facility has increased from 2010 to 2011.  In 2010, it took on average 43 days following a court order for the Department of Human Services to conduct a competency evaluation of a detainee in the Detentions Facility.  The longest wait time in 2010 was 52 days and the shortest wait time was 35 days. By contrast, in 2011, the delay has increased to an average of 51.6 days.  To date, the longest wait time in 2011 has been 58 days and the shortest wait time has been 48 days.

8.      The Arapahoe County Sheriff's Office is able to make detainees immediately available for competency evaluations inside the Detentions Facility.  The delays that detainees experience in receiving in-jail competency evaluations are due to CMHIP's inability to send evaluators to the Detentions Facility in a more timely manner following a court order.

9.      The amount of time that elapses between the entry of a court order directing a detainee's competency evaluation at CMHIP and admission of the detainee into CMHIP also has increased from 2010 to 2011.  In 2010 it took on average 31.9 days following a court order for an inmate to be received at CMHIP for a competency evaluation.  The longest wait time in 2010 was 77 days and the shortest wait time was 13 days.  By contrast, in 2011 the delay has increased

to an average of 54.5 days.  To date, the longest wait time in 2011 has been 78 days and the shortest wait time has been 17 days.

10.     The Arapahoe County Sheriff's Office could transfer a detainee to CMHIP for a competency evaluation within seven days of a court's order.  The delays that detainees experience in being transferred to CMHIP for competency evaluations are due to CMHIP's inability to accept custody of detainees more quickly.

11.     I am familiar with the process by which pretrial detainees are transferred from the Detentions Facility to CMHIP following a court order directing CMHIP to take custody of a detainee for the purpose of providing them with restorative treatment.

12.     The amount of time that elapses between a court order finding a detainee incompetent to proceed and ordering their transfer to CMHIP and a detainee's admission into CMHIP has increased from 2010 to 2011.  In 2010 it took on average 26.25 days for a pretrial detainee determined to be incompetent to proceed to be admitted and transported to CMHIP. The longest wait time in 2010 was 42 days and the shortest wait time was 12 days.  By contrast, in 2011 the delay has increased to an average of 32.5 days.  To date, the longest wait time in 2011 has been 48 days and the shortest wait time has been 17 days.

13.     The Arapahoe County Sheriff's Office could transfer a detainee to CMHIP for restorative treatment within seven days of a court's order.  The delays that detainees experience in being transported are due to CMHIP's refusal or inability to accept custody of detainees more quickly.

14.     The inability of CMHIP to promptly provide competency evaluations to pretrial detainees and to promptly transfer to CMHIP detainees that have been found by a court to be

incompetent to proceed imposes a substantial burden on the Arapahoe County Sheriff's Office,

both in terms of personnel and financial resources.

Dated this 30th day of August, 2011.

J. Grayson Robinson

STATE OF COLORADO     )
                      )
COUNTY OF DENVER      )

     I hereby certify that the foregoing Affidavit of J. Grayson Robinson was subscribed and sworn to before me on the 30th day of August, 2011.

     WITNESS my official hand and seal.

     My commission expires: 7-24-14.

Notary Public

[S*E*A*L]     LISA G KNIGHT
              Notary Public
              State of Colorado