# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-2285-MSK-BNB

CENTER FOR LEGAL ADVOCACY,
d/b/a THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

Plaintiff,

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendants Reggie Bicha, in his official capacity as Executive Director for the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo (collectively "Defendants"), by and through counsel Office of the Colorado Attorney General, hereby submits their reply in support of the Motion to Dismiss (Doc. No. 12) (hereafter "Motion") and Memorandum in support thereof (Doc. No. 12-1) (hereafter "Memorandum").

## INTRODUCTION

In its Response in Opposition to Defendants' Motion to Dismiss Complaint (Doc. No. 14) (hereafter "Response"), The Legal Center contends it has standing to sue on behalf of criminal defendants waiting for competency evaluations and criminal defendants awaiting restorative treatment. However, The Legal Center misconstrues or too narrowly applies the law it relies upon, and much of the law cited by The Legal Center is distinguishable from the present case. Thus, despite making numerous allegations of fact intended to distract this Court with the merits of their case: 1) The Legal Center's status as Colorado's protection and advocacy system does not *per se* confer standing upon it to prosecute this lawsuit; and 2) The Legal Center cannot meet the requirements for establishing associational standing. As such, Defendants' Motion should be granted and this matter should be dismissed for lack of subject matter jurisdiction.

## ARGUMENT

I.  **The Legal Center Fails to Meet Its Burden to Establish Standing**

Standing requires in essence a showing that the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on its behalf. *Oregon Advocacy Center v Mink*, 322 F.3d 1101, 1108 (9th Cir. 2003). Before addressing the issue of whether The Legal Center has met the three prongs for associational standing, The Legal Center

2

must demonstrate its close relationship to the case or controversy. Plaintiff has the burden of establishing the requirements of standing. *Indiana Protection and Advocacy Services Comm'n v. Commissioner, Indiana Dep't of Correction,* 642 F.Supp.2d 872, 876 (S.D. Ind. 2009).

    A.    <u>The Legal Center Fails to Establish Case or Controversy</u>

In its Complaint, The Legal Center gives details about its board and policy committee, but it fails to show that any member or constituent represented in this lawsuit has any relationship to The Legal Center. The Legal Center has obligations under the PAIMI Act to advocate on behalf of its constituents; however, nothing in the Complaint sets forth that any members of its board or its committee have any relationship to pre-trial detainees with mental illness. No affidavit supports that The Legal Center has done any investigating of this issue or has met with any pre-trial detainees. It appears The Legal Center has no personal knowledge of the issues presented in the Complaint. The Legal Center relies on third party affidavits. Nothing in the Complaint itself, even assuming the allegations are true, establishes that The Legal Center has such a personal stake in the outcome of this controversy that federal court jurisdiction is warranted.

The doctrine of standing requires that federal courts recognize their limited powers and requires that there be (1) an injury in fact; (2) a causal

relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Oregon v. Mink*, 322 F.3d at 1108. Addressing the three components of traditional standing doctrine, The Legal Center fails to meet at least two if not all three prongs. The first, an injury in fact, has been alleged as to at least five individuals. None of the five individuals are also named as plaintiffs, and more importantly, nothing in the Complaint shows that The Legal Center has any relationship with any of these five individuals, or any other pre-trial detainee. The Legal Center provides no supporting affidavit or allegation in the Complaint that they interviewed or met with any individual pre-trial detainee, that they have any direct knowledge about the alleged delays in receiving competency evaluations or restoration treatment, or that they have conducted their own investigation into the allegations.

Secondly, a causal relationship between the injury and the challenged conduct is also absent from the Complaint. The Fifth Circuit has found that a federally funded program that must redirect some of its resources is insufficient to impart standing on the organization. *Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees,* 19 F.3d 241, 244 (5th Cir. 1994). The Legal Center argues that the resources expended to protect the rights of constituents in county jails diverts

4

resources from other priorities. Complaint, at ¶ 6. This is not sufficient. To establish the requisite causal relationship between the alleged individual pre-trial detainees' due process liberty interests and the Colorado Mental Health Institute is also not established. Under Colorado law, the court determines the location for a competency evaluation. Colo. Rev. Stat. §16-8.5-105(1)(a) (2011). A defendant may be released on bond or referred or committed to the state hospital for the evaluation. *Id*. The Colorado Mental Health Institute plays no role in determining whether the individual will be incarcerated while waiting for the competency evaluation, and the courts decide where such evaluations will be done. The Complaint attaches an affidavit from the Arapahoe County Sheriff, which alleges that it costs more to house pre-trial detainees with mental illness than others. This additional cost, even if true, does not demonstrate how the Mental Health Institute can be responsible for those costs. While the Complaint seeks relief in the form of an order requiring that competency evaluations and restorative treatment be completed within seven (7) days, the sheriff's affidavit already provides evidence that this is impossible. The sheriff states that he can transport a detainee within seven days of a court's order. Complaint Affidavit B at ¶ 13. The relief requested would only allow for transportation and no time to conduct any evaluation or treatment. The supporting affidavit from the sheriff informs how the delays affect the sheriff's department, but it does not provide

any support for The Legal Center's involvement. Nothing in the affidavit addresses The Legal Center or its relationship to pre-trial detainees.

Third, the likelihood that a favorable decision will address the alleged injuries has not been established. In a budget crisis and recession economy, resources are scarce. Nothing in the Complaint alleges that individuals have been denied admission for acute treatment, only that there are delays. Whether action by this Court can redress the alleged injuries has not been demonstrated. The Complaint alleges that untimely court-ordered competency evaluations and restorative mental health treatment violates criminal defendants' due process right to be free from incarceration without a conviction. The Mental Health Institute does not make the determination as to where individuals must remain while waiting for evaluation or treatment. The decision as to incarceration is made by the courts. Pre-trial detainees may be released with or without bond to await a competency evaluation or restorative treatment. Competency evaluations can be done on an outpatient basis. It is not clear from the Complaint that a favorable decision from this Court will change the state's budget crisis or affect state court orders holding pre-trial detainees in jail rather than releasing them with conditions.

The doctrine of standing under Article III of the United State constitution contains both constitutional and prudential limitations as outlined in the

opening memorandum. Those still must be met even if the Court were to find that PAIMI Act confers associational standing. *Indiana Protection and Advocacy Services Comm'n v. Commissioner, Indiana Dep't of Correction,* 642 F.Supp.2d 872, 877 (S.D. Ind. 2009). Even where courts have found that the PAIMI Act confers standing, there is recognition that constitutional standing requirements cannot be waived. *Id.*at 878. This is not a case where the protection and advocacy system is filing suit to obtain records or to improve conditions in care. This Court is being asked to review state statutes and make a determination about what is untimely, where the statutes are silent on the issue.

The Legal Center heavily relies on the Ninth Circuit ruling in *Mink* to support the P&A system's standing. However, that court rejects that PAIMI necessarily confers standing outright. *Oregon v Mink,* 322 F.3d at 1110. "Although we agree that PAIMI is relevant to OAC's standing, it cannot override constitutional standing requirements." *Id.* at 1109. Although the Complaint contains allegations about individuals, the support for those allegations is provided by third party affidavits and nothing from the The Legal Center itself. The Legal Center must establish a relationship between the constituents named or described and the organization.

B.  <u>The Legal Center Fails to Show the Close Nexus Required for Standing</u>

7

The eleventh circuit finds that under the PAIMI Act there are two theories under which the protection and advocacy system may sue: 1) by establishing that defendant's actions caused injury to the system itself or 2) on behalf of its constituents during the course of their treatment or within ninety days after discharge. *Doe v. Stincer,* 175 F.3d 879, 883-884 (11 Cir. 1999). Although the *Stincer* court finds that the PAIMI Act confers standing for the purpose of protecting and litigating the rights of individuals with mental illness and that no individual need be named, the *Stincer* court still recognizes that there must be "a close nexus between the organization and its members and an allegation of injury to its members as a result of the action." *Id.* at 884-885. Even if The Legal Center is not required to name any individual, it must still establish this close nexus. The Legal Center fails to do so. Nothing in the Complaint shows that The Legal Center has ever met with the individuals described, that The Legal Center has anyone on its board who has ever been a pre-trial detainee found incompetent to proceed or a family member of a pre-trial detainee awaiting restorative treatment, or that The Legal Center has gone out and visited detention centers to establish any of the harms alleged in the Complaint. Generally advocating for the mentally ill does not establish any nexus between the organization and the specific allegations in the Complaint.

The Legal Center asserts generally a claim based on third party representations, which is insufficient to confer standing. Generally a party must assert his or her own legal rights or courts would be called upon to decide abstract questions even though other governmental institutions may be more competent to address the questions. *Kowalski v. Tesmer,* 543 U.S. 125, 129, 125 S.Ct. 564, 567 (2004). In establishing Article III standing, one must show that they have a close relationship with the person who possesses the right. *Id.* at 130, 567. Attorneys attempting to assert the rights of *pro se* defendants in challenging a state statute were found to lack a close relationship where they were not representing actual clients. *Id.* at 131-132, 568. The concurring opinion makes clear that where there is no relationship at all, one cannot assert third-party standing. *Id.* at 135, 570-571.

In its most recent decision the Supreme Court does not address standing at all although cited by The Legal Center for this issue. In that case, the court examines whether *Ex parte Young* allows a federal court to hear a lawsuit for prospective relief against state officials brought by another agency of the same state. *Virginia Office for Protection and Advocacy v. Stewart,* 131 S. Ct. 1632, 1636 (2011). In that case Virginia elected to designate a government entity as their protection and advocacy system, and the court analyzes whether sovereign immunity bars the suit. In this case, no Colorado statute gives The Legal Center

9

any authority under state law. The Legal Center is only designated as the protection and advocacy system by the governor. Complaint at ¶ 3.

Leaving aside the issue of whether Congress intended to confer standing, the Complaint itself fails to demonstrate essential standing elements. The Legal Center has not alleged sufficient facts to support any relationship with the constituents on whose behalf it brings suit. The PAIMI Act does not automatically confer standing, as found by several courts, including the *Mink* case relied on by The Legal Center. The Legal Center still needs to meet the constitutional dimension of standing and make out a case or controversy by showing it has sufficient stake in the outcome. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975). Plaintiff fails to meet its burden. The Legal Center alleges no relationship to any individual named in the Complaint, alleges no investigation or attempt to understand the issue for itself. The Legal Center is an advocacy organization for the mentally ill, but how that confers standing to sue for criminal due process violations is not made clear. The Legal Center's own alleged injury of having to divert resources is not sufficient as found by the Fifth Circuit. Justice Scalia's recent decision finds the plaintiff in that case has standing because of its own state statutes. *Virginia Office for Protection & Advocacy*, 131 S.Ct. at 1643. Colorado has no such corresponding statutes. The

10

only allegation in the Complaint of diverting of resources is not sufficient to demonstrate any close relationship with those who are allegedly being harmed.

The Court has the power to allow or require a plaintiff to amend the Complaint or provide supporting affidavits to support a plaintiff's claim of standing. If after this opportunity standing does not adequately appear from the record, the Complaint must be dismissed. *Id.* at 2206-227, 501-502. The Legal Center may seek this relief, but when consulted prior to filing the motion to dismiss, counsel for The Legal Center declined to amend the Complaint. Accordingly, because The Legal Center has failed to demonstrate standing to pursue the claim alleged, the complaint must be dismissed.

## II.     The Legal Center Does Not Meet the Requirements for Associational Standing

It is undisputed that associational standing is found when: 1) the organization's members would otherwise have standing to sue in their own right; 2) the interests the organization seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

As established in the Motion and Memorandum, The Legal Center cannot satisfy the first, threshold element of the test for associational standing.  First,

11

The Legal Center asserts that it is "well-settled that PAIMI organizations [such as it] have associational standing to sue on behalf of their constituents." Response at p. 8. In support of this proposition, The Legal Center directs this Court to *Oregon v. Mink*, 322 F.3d 1101 (9th Cir. 2002), *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999), and *Advocacy Center for the Elderly and Disabled v. Louisiana Dept. of Health and Hospitals*, 731 F.Supp.2d 583 (E.D. La. 2010). However, none of these cases are Tenth Circuit decisions, and thus are not binding on this Court. Regardless, each of them is distinguishable from the case at hand.

In *Oregon v. Mink*, A.J. Madison, a mentally incapacitated criminal defendant who was detained in a county jail while awaiting transfer to the state mental health hospital, was named as an individual plaintiff. *Oregon*, 322 F.3d at 1105. Mr. Madison requested that the PAIMI organization bring suit on his behalf. *Id*. at 1105. Thus, A.J. Madison's status as a constituent of the PAIMI organization was clear, and the PAIMI organization demonstrated that at least one of its constituents would have standing to sue.

Similarly, in *Advocacy Center for the Elderly and Disabled v. Louisiana*, the plaintiffs included W.B., an individual incompetent detainee awaiting transfer to the state mental health hospital. *Advocacy Center for the Elderly*

12

*and Disabled*, 731 F.Supp.2d at 587, 597.  Thus, again, in that case, at least one of the PAIMI organization's constituents had standing to sue in his own right.

Both of these cases established the organization's individual members' right to sue, by including, one such member as a plaintiff bringing suit.  The Legal Center states that its constituents include pre-trial detainees awaiting competency evaluations or treatment.  However, unlike the plaintiff PAIMI organizations in the cases it relies upon, The Legal Center has failed to identify even one individual pre-trial detainee whom it represents.  In fact, the individuals identified in its Complaint are specifically being advocated for by the Colorado Public Defender.  Complaint at ¶¶ 22-26.  Thus, even assuming *arguendo*, that the law is well-settled that PAIMI organizations have associational standing to sue on behalf of their constituents, here The Legal Center has failed to demonstrate a nexus between its constituents and the specific individuals it alleges are being harmed by the Defendants' action or inaction.  By failing to identify any individual constituent who has been aggrieved by the Defendants',  The Legal Center has distinguished this case from those it relies upon, and has not demonstrated that any of its members would otherwise have standing to sue in their own right.

A similar situation was considered by the court in *Doe v. Stincer*, a case which The Legal Center also relies upon in support of its claim of associational

13

standing. There, the plaintiffs included a PAIMI organization and Chris Doe, an individual who had been examined and treated by two psychiatrists at a psychiatric hospital. *Stincer*, 175 F.3d at 881. The *Stincer* court recognized that a PAIMI organization, in general, has the right to sue on behalf of its constituents. *Id.* at 886. The court further opined that "the right to sue on behalf of its constituents, however, does not relieve [the PAIMI organization] of its obligation to satisfy *Hunt*'s first prong by showing that one of its constituents otherwise has standing to sue…" *Id.* In reviewing the evidence before it, the *Stincer* court concluded, in part, that because the Advocacy Center failed to state that any of the aggrieved persons were its clients, it failed to satisfy the first prong of the test for associational standing. Here, The Legal Center similarly cannot escape the fact that they have failed to show that any of pre-trial detainees were or are their clients.

### A. <u>The Legal Center does not satisfy the first element of the test for associational standing</u>

Despite failing to make such a showing, The Legal Center still contends that it has satisfied the first element of the test for associational standing. The Legal Center further asserts that Defendants' argument is limited to whether a group's members have standing to sue in their own right. Response at p. 11.

This mischaracterizes Defendants' arguments.[1]  As discussed above, The Legal Center has failed to demonstrate whether any of *its* members would have standing to sue in their own right.  Defendants do not assert, as The Legal Center would have this Court believe, that traditional membership is required for an organization to have associational standing.  In fact, Defendants agree that there must be "indicia of membership" in an organization for associational standing to exist.

However, The Legal Center has failed to show that its *constituents* possess such indicia of membership.[2]  In its Complaint, The Legal Center distinguishes

---

[1] While the Motion and Memorandum focuses on this point, Defendants' have not conceded, implicitly or otherwise, that The Legal Center meets the second and third factors of the *Hunt* test.

[2] The Legal Center also erroneously assert that Defendants "fail to acknowledge" decisions that support the rejection of Defendants' constitutional standing arguments.  Response at p. 10.  However, The Legal Center does not advise this Court that the alleged rejected arguments do not pertain to standing under the *Hunt* test as The Legal Center claims, but instead they address the prudential element of standing.  *See Indiana Protection & Advocacy Services Commission v. Commissioner, Indiana Dept. of Correction*, 642 F.Supp.2d 872, 878 (S.D. Ind.

between its members and its constituents, and does not make a showing that its constituents bear the same "indicia of membership" as its expressly identified members.  Complaint at ¶¶ 4-8.

Interestingly, The Legal Center continues to rely on case law where a specific individual constituent of the plaintiff PAIMI organization is named as a plaintiff, in support of its argument that it satisfies the first element of *Hunt*. *See* discussion regarding *Mink*, supra., *Stincer*, supra., *Advocacy Center for the Elderly and Disabled*, supra at p. 4-6 above.  *See also LaFlamme v. New Horizons*, 605 F.Supp.2d 378, 380 (D.Conn. 2009) (severely physically disabled individual plaintiff bringing lawsuit together with the plaintiff PAIMI organization); *Aiken v. Nixon*, 236 F.Supp.2d 211, 218 (N.D.N.Y. 2002) (individual plaintiff serving as a representative for the claims brought by plaintiff PAIMI organization).[3]  Thus, while other courts have found the plaintiff PAIMI organizations' constituents had the requisite indicia of membership, each

---

2009).  Thus, each of the cases relied upon by The Legal Center is distinguishable as to the issue of constitutional standing, which is argued here.

[3] As The Legal Center is well aware, its citation to unpublished opinion *N.J. Protection and Advocacy, Inc. v. Davy*, 2005 WL 2416962 (D.N.J. 2005) is inappropriate and carries no precedential weight.

16

court did so following an express demonstration of said constituent's standing to sue in their own right. Again, The Legal Center fails to make such a showing and its position that Defendants' arguments are "overly formalistic" is unpersuasive and inappropriately dismissive. In that The Legal Center has failed to demonstrate the requisite standing to pursue this case, this matter should be dismissed.

B. <u>The Legal Center mischaracterizes *Carnahan*, which is persuasive law</u>

Finally, The Legal Center attempts to summarily dismiss the Eighth Circuit's ruling in *Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007). In doing so, The Legal Center misconstrues the basis for that court's decision. Specifically, The Legal Center erroneously states that the *Carnahan* court "based its denial of associational standing on its conclusion that the constituents of the PAIMI organization there 'have no relationship' to the organization." Response at 15. This quote misstates and mischaracterizes the basis of that court's decision. In reality, the *Carnahan* court stated that "the 'constituents' of [the PAIMI organization] *have no such relationship* to the organization." *Carnahan*, 499 F.3d at 810. In stating that there was "no such relationship", that court was referring to the indicia of membership specified by the U.S. Supreme Court in *Hunt*. *Id*. The *Carnahan* court's ruling is still good law, and is as persuasive as other law among the

17

various circuits. As stated in Defendants' Memorandum, The Legal Center has failed to demonstrate that its constituents, as opposed to its members, possess the indicia of membership necessary to confer associational standing on it. It is up to this Court, not The Legal Center, to determine what weight to provide all of the law presently before it.

## **CONCLUSION**

The Legal Center has failed to allege facts sufficient to support constitutional standing requirements and associational standing requirements. The Legal Center has demonstrated no nexus between the criminal defendants who are waiting for competency evaluations or restorative treatment and their organization other than a broad federal statutory authority to advocate the rights of the mentally ill. The Legal Center has not satisfied the first element of the test for associational standing and mischaracterization of other courts' rulings does not change its failures. The Legal Center has the burden and has not met it.

WHEREFORE, Defendants request that this Court enter an Order granting Defendants' Motion to Dismiss, dismissing Plaintiff's Complaint, and for any other relief the Court deems necessary in the circumstances.

Respectfully submitted this 31st day of October, 2011.

JOHN W. SUTHERS
Attorney General


/s/ *Alicia R. Calderón*
ALICIA R. CALDERÓN*
First Assistant Attorney General
TANYA E. SMITH*
Assistant Attorney General
Human Services Unit
State Services Section
Attorneys for Defendants
1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  303-866-5228
FAX:  303-866-5671
E-Mail:  tanya.smith@state.co.us
Alicia.calderon@state.co.us
*Counsel of Record


**CERTIFICATE OF SERVICE**

This is to certify that I have duly served the within DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT upon all parties herein by electronic service delivery using the PACER/ECF system, this 31st day of October, 2011, addressed as follows:

Iris Eytan
Jason Lynch
Caleb Durling
REILLY POZNER LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202

19

Marcus Lock
BRATTON HILL WILDERSON & LOCK, LLC
525 North Main Street
Gunnison, Colorado 81230


                                           /s/ Alicia R. Calderón
                                           Alicia Calderón