IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-2285-BNB

CENTER FOR LEGAL ADVOCACY, d/b/a
THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

     *Plaintiff,*

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

     *Defendants.*

---

### ~~[PROPOSED]~~ ORDER OF DISMISSAL UNDER FED. R. CIV. P. 41(a)(2)

---

     Before the Court is the Parties' Joint Motion to Dismiss Under Fed. R. Civ. P. 41(a)(2) (the "Motion"). Following a series of settlement conferences overseen by the Court, the Parties have settled the issues and controversies between them to their mutual satisfaction, and their settlement is embodied in a signed settlement agreement attached as Exhibit 1 to the Motion. The Parties request that the Court retain jurisdiction to enforce the terms of the Settlement Agreement under the authority of *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381-82 (1994) and *Bell v. Board of County Commissioners*, 451 F.3d 1097, 1103 (10th Cir. 2006).

     IT IS HEREBY ORDERED:

     1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 2201-02, and pursuant to 42 U.S.C. § 1983.

     2.    Being fully advised of the disputed issues between the parties and the contents of the Settlement Agreement, the Court approves of the Settlement Agreement between the Parties.

3.   The Parties shall comply with the terms of their Settlement Agreement entered into on April 6, 2012, a copy of which is attached hereto and incorporated by reference as if fully set forth herein.

4.   By consent of the Parties, the Court shall retain continuing jurisdiction over the settlement and enforcement of the Settlement Agreement for the duration of the agreement plus 60 days following the delivery of the final report made by Defendants under the Agreement.

5.   Except as provided in paragraphs 3 and 4 above, this case is DISMISSED pursuant to Fed. R. Civ. P. 41(a)(2).

IT IS SO ORDERED, this 9TH day of April , 2012.

_____
Judge

**BOYD N. BOLAND**
**United States Magistrate Judge**

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between the Center for Legal Advocacy, d/b/a The Legal Center for People with Disabilities and Older People (the "Legal Center"), on the one hand, and Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo, on the other hand. Each of the foregoing parties is sometimes referred to as a "Party" and collectively as "the Parties."

WHEREAS, the Department has a statutory obligation under C.R.S. §§ 16-8.5-101 *et seq.* to provide competency evaluations for persons charged with criminal offenses, and to provide treatment for persons found incompetent to proceed;

WHEREAS, the Legal Center has brought a civil action against Bicha and Bernal captioned *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11-cv-02285-BNB (D. Colo.) to challenge the length of time it takes for pretrial detainees in Colorado jails to receive competency evaluations or restorative treatment;

WHEREAS, the Parties have participated in settlement conferences with the Honorable Boyd N. Boland to resolve the claim made in the Action;

NOW, THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements contained herein, the Parties agree as follows:

- 1 -

649149

## AGREEMENT

1.     **Definitions.** The following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Agreement):

(a)     "Action" means the lawsuit pending in the United States District Court for the District of Colorado captioned *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11-cv-02285-BNB.

(b)     "Average" means the mean average.

(c)     "Competency Evaluation" means a court-ordered evaluation for competency to proceed administered by the Department and the accompanying report prepared by the Department and more fully described in C.R.S. §§ 16-8.5-103, -105.

(d)     "Competency to Proceed" means that a defendant in a criminal case does not have a mental disability or developmental disability that prevents the defendant from having sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense or prevent the defendant from having a rational and factual understanding of the criminal proceedings.

(e)     "Collateral Materials" means the police incident reports for the offense in the charging documents and the charging documents (the criminal information or indictment).

(f)     "County Jail" means jails or detention facilities which house Pretrial Detainees.

(g)     "Court Order" means a written order, issued by a court and signed by a judge, which clearly authorizes the transfer of custody of a Pretrial

- 2 -

Detainee.  A minute order shall not constitute a court order for the purposes of this Agreement.

   (h) "Department" means the Colorado Department of Human Services.  Any reference to the Department includes the Colorado Mental Health Institute at Pueblo, which is a division of the Colorado Department of Human Services and does not have independent authority or obligations under Title 16, Article 8.5, C.R.S.

   (i) "Hospital" means the Colorado Mental Health Institute at Pueblo, and includes its Institute for Forensic Psychiatry.

   (j) "In-Patient Evaluation" or "In-Patient Competency Evaluation" means a Competency Evaluation of a Pretrial Detainee that is ordered to be performed at the Hospital.

   (k) "Medically Cleared" means that a Pretrial Detainee is, in the opinion of the Hospital's medical staff, appropriate for placement at the Hospital.

   (l) "Monthly Average" shall mean the Average timeframe for admission for all Pretrial Detainees within that calendar month who (1) were admitted to CMHIP for Restorative Treatment or In-Patient Competency Evaluations, as calculated in Paragraph 2(a); or (2) have an Out-Patient Competency Evaluation performed at the County Jail, as calculated in Paragraph 2(b).  Monthly Average shall not include anyone who is still waiting at the end of a calendar month for (1) admission to CMHIP for Restorative Treatment or In-Patient Competency Evaluation or (2) the completion of an Out-Patient Competency Evaluation performed at the County Jail.

   (m) "Offered Admission Date" means the date the Hospital provides to the County Jail, on which the Hospital will have a bed open for the Pretrial Detainee and will be ready to receive the Pretrial Detainee for admission to the Hospital.

   (n) "Out-Patient Evaluation" or "Out-Patient Competency Evaluation" means a Competency Evaluation of a Pretrial Detainee that is ordered to be

- 3 -

performed in the County Jail where the detainee is held.  Evaluations ordered to be performed at any location other than in the County Jail where the Pretrial Detainee is held are excluded from this Agreement.

      (o)    "Pretrial Detainees" means a person who is being held in the custody of a County Jail, and whom a court has ordered to undergo an Out-Patient Evaluation in the County Jail, an In-Patient Evaluation at the Hospital, or Restorative Treatment at the Hospital.  Persons serving a sentence in the Department of Corrections, juveniles, and persons on bond are excluded from this Agreement.

      (p)    "Ready for Admission Date" means the date on which the Hospital has received the Court Order for admission to the Hospital, and, in the case of a court-ordered Competency Evaluation, the Collateral Materials required for the evaluation must be received by the Hospital for a Pretrial Detainee to be "Ready for Admission."

      (q)    "Restorative Treatment" means mental health care and treatment provided for the purpose of restoring a Pretrial Detainee to competency.

      (r)    "Settlement Payment" has the meaning set forth in Paragraph 7.

    **2.**    **Timeframes for Admission to the Hospital for Restorative Treatment and Performance of Competency Evaluations.**  The Department and Hospital agree to adhere to the following timeframes for admissions for Restorative Treatment and the performance of Competency Evaluations.

      (a)    <u>Admission of Pretrial Detainees for Restorative Treatment and In-Patient Competency Evaluations</u>.  The Department shall admit Pretrial Detainees to the Hospital for Restorative Treatment or Competency Evaluations no later than 28 days after the Pretrial Detainee is Ready for Admission, and shall maintain a Monthly Average of 24 days or less for admission.

      (b)    <u>Performance of Out-Patient Evaluations</u>.  The Department shall complete all Out-Patient Evaluations of a Pretrial Detainee no later than 30 days after

- 4 -

the Hospital's receipt of a Court Order directing the evaluation and receipt of Collateral Materials. The time frames for assuming this obligation are set out in Appendix 1, as the obligation is phased in statewide on a county-by-county basis to be completed within twelve months of the Effective Date of this Agreement.  As long as the phase-in plan is followed as set forth in Appendix 1, the Department is in full compliance with performance of Out-Patient Evaluations, subject to Paragraph 4(b)'s qualifications.

   3.   **Regular Reporting by Department.**

      (a)   <u>Content and Form of Reports</u>.  The Department will provide monthly reports containing the following information:

         (i)   The reports will consist of four separate lists, including (1) a list of Pretrial Detainees referred to the Hospital for Restorative Treatment, (2) a list of Pretrial Detainees referred for In-Patient Evaluations, (3) a list of Pretrial Detainees referred for Out-Patient Evaluations, and (4) a list of Pretrial Detainees for whom the Department has invoked Individual Special Circumstances and its reasons for doing so.

         (ii)   The Pretrial Detainees included in each list will be those who, during the month reported on, met the criteria set forth in Paragraph 3(a)(i).

         (iii)   The data presented in the reports shall include:

            -   The name of the referred Pretrial Detainee;

            -   The count(ies) referring the Pretrial Detainee;

            -   The case number of the criminal case in which the Court Order was issued;

            -   The date of the Court Order;

            -   The date the Court Order was received by the Hospital;

- 5 -

- The date that the Hospital learned that the Court Order was vacated or converted to another type of evaluation or restorative process;

- The date the Collateral Materials were received by the Hospital;

- The date the Out-Patient Evaluation was signed and dated by the evaluator;

- The defense attorney's name if shown in the Hospital's records;

- The criminal charges filed against the Pretrial Detainee as shown in the Hospital's records;

- The Ready for Admission date;

- The Offered Admission date;

- The date of admission.

(b) <u>Timing of Reports</u>. The first report shall be made on September 1, 2012, or the first business day thereafter, and shall include the required information for the period of July 1 through July 31, 2012. Thereafter, reports shall be provided monthly for the term of the Agreement.

(c) <u>Distribution of Reports</u>. The reports shall be provided to the Legal Center.

4. **Duration of Agreement.**

(a) <u>Duration</u>. The terms and provisions of this Agreement shall remain in force for ten years from the Effective Date set forth in Paragraph 8, except that the duration of this Agreement may be modified according to the provisions of Paragraphs 4(b) and 4(c).

- 6 -

649149

(b)     Reduction in Duration.  Upon the first anniversary of the full execution of this Agreement and if the Department has fully complied with the terms of the Agreement, the duration of the Agreement set forth in Subparagraph (4)(a) shall be reduced by one year.  Duration of the Agreement for In-Patient Evaluations and Restorative Treatment shall be separate from Out-Patient Evaluations.  For Out-Patient Evaluations, if Paragraphs 1(a) and 1(b) of Appendix 1 are completed by the dates set forth therein, there shall be a six month reduction in the duration of the Agreement.  At each subsequent anniversary of the full execution of the Agreement, the duration of the Agreement shall be reduced by one year if the Department has fully complied with the Agreement during the preceding year.  A reduction in duration is automatic if the parties agree in writing that the Department has complied with this Agreement.  If the parties do not agree regarding full compliance, the parties will follow the procedure set forth in Paragraph 6(c).

(c)     Effect of the Invocation of Departmental Special Circumstances on the Duration of the Agreement.   If the timeframe requirements of Paragraph 2 of this Agreement are temporarily suspended pursuant to the provisions of Paragraph 6(c), the duration of this Agreement shall be extended for a period equal to the length of time of the suspension of the timeframe requirements.  Invocation of Individual Special Circumstances will not affect the reduction in duration.  Where Departmental Special Circumstances are invoked, then the Department will receive only a reduction in duration for the number of months it was in compliance for the year.

5.     **Dismissal of the Action; Court's Retention of Jurisdiction.**  Within five days of the full execution of this Agreement, the Parties shall file in the Action the Joint Motion for Dismissal and [Proposed] Order of Dismissal that are attached hereto as Appendix 2.  In filing the Joint Motion and [Proposed] Order, it is the intention of the Parties that the U.S. District Court for the District of Colorado retain jurisdiction for the purpose of enforcing the terms of this Agreement for the entire duration of this Agreement and for sixty days after the Hospital provides the final monthly report. The Department will not raise the issue of standing in an action to enforce this agreement, but in doing so, does not waive this defense in any future or ancillary actions.

- 7 -

6.      **Special Circumstances**. The Parties recognize that to some extent the Department's ability to perform its statutory obligations and its obligations under this Agreement is based on factors beyond its control. The Parties agree that, subject to the terms and conditions of this Paragraph 6, the timeframe requirements of Paragraph 2 of this Agreement may be temporarily suspended.

(a)      <u>Special Circumstances</u>. The Department may invoke, under this Paragraph 6, two categories of Special Circumstances:

(i)      "Individual Special Circumstances" means a situation that delays the offering of admission to a Pretrial Detainee, where the circumstances are not within the control of the Department. Historically, these situations have included requests by the Court, jail, or defense counsel that admission be delayed because they are seeking an out-patient arrangement or a more appropriate placement; additional information or testing required for the evaluation is outstanding; the court has ordered a hold and wait evaluation and the sheriff must transport the Pretrial Detainee to the nearest county where there are services available; or the inmate is not Medically Cleared for admission due to illness or other non-psychiatric medical need. These examples are provided for illustration only. Individual Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events.

(ii)      "Departmental Special Circumstances," means circumstances beyond the control of the Department which impact the Hospital's ability to comply with the timeframes set forth in Paragraph 2. This could mean an unanticipated spike in referrals, a substantial and material decrease in the Hospital's budget, or another sentinel event impacting clinical decisions system wide. These examples are provided for illustration only. Departmental Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events.

(b)      <u>Effect of Invocation of Individual Special Circumstances</u>. The Legal Center will review the reporting of Individual Special Circumstances. If the Legal Center questions the Department's invocation of Individual Special Circumstances, the Parties will confer to review the reasons for invocation of Individual Special

- 8 -

Circumstances and to determine issues for resolution. Additionally, the Hospital may proactively seek confirmation that an event qualifies as an Individual Special Circumstance by contacting a representative of the Legal Center in advance of formal reporting of the event. If the Department believes Individual Special Circumstances have become a systemic issue, it will follow the Departmental Special Circumstances procedure below. The Parties shall use good faith efforts to try and resolve any disputes concerning the invocation of Individual Special Circumstances. However, if the Parties do not reach an agreement through good faith efforts at resolution, either party may seek judicial enforcement of this Agreement.

(i)     If the parties agree to the invocation of Individual Special Circumstances for a particular Pretrial Detainee, the timeframe requirements of Paragraph 2 shall be suspended as to that individual Pretrial Detainee for a period of 60 days from the maximum timeframe for admission of that particular Pretrial Detainee, as defined in Paragraph 2.

(ii)     The Hospital may attempt to invoke Individual Special Circumstances more than once for the same Pretrial Detainee, but it must follow the notification and conferral procedures in Paragraph 6(b) each time it seeks to invoke Individual Special Circumstances.

(c)     <u>Effect of Invocation of Departmental Special Circumstances</u>. If the Department determines that Departmental Special Circumstances exist, it may notify the Legal Center pursuant to the Notice provisions of Paragraph 18 of this Agreement, and in such notification, the Department shall provide a detailed explanation of the basis for invoking Departmental Special Circumstances. Upon the Legal Center's receipt of a Notice of Departmental Special Circumstances, the parties will confer to review the reasons for invocation of Departmental Special Circumstances and to determine issues for resolution. Thereafter, the Department will submit in writing within 14 days of the conferral, a proposal to address the issues. The Legal Center will provide a written response within 14 days of receiving this proposal, which shall include all areas of acceptance and may include counter-proposals. The

- 9 -

Department must provide a reply to the Legal Center's response within 7 days of receiving the Legal Center's response. The Parties shall use good faith efforts to try and resolve any disputes concerning the invocation of Departmental Special Circumstances. The parties are not precluded from seeking mediation to resolve any disputes. However, if the Parties do not reach an agreement through good faith efforts at resolution, either Party may seek judicial enforcement of this Agreement. If Departmental Special Circumstances is invoked and then agreed upon by the parties, the timeframe requirements of Paragraph 2 shall be suspended as to all Pretrial Detainees affected by the invoked Departmental Special Circumstances for a period of six months from the date of the Department's invocation.

(d)     Effect on Reporting Requirements. A Notice of Special Circumstances shall not affect the Department's reporting obligations under Paragraph 3 of this Agreement.

7.     **Payment of Attorneys' Fees and Costs.** Part of the effect of this Agreement is to settle all matters outlined or referenced in this Agreement as to the Parties up to the date the Agreement is finalized. Accordingly, the Department, through the Colorado Division of Risk Management, agrees to pay to the Legal Center the lump sum amount of $75,000 (Seventy-Five Thousand Dollars) in full and final settlement of all costs and fees, including attorney fees, incurred by the Legal Center up to and including the date this Agreement is finalized and signed by all Parties hereto ("Settlement Payment"). The Legal Center shall enter into a binding settlement agreement related to the Settlement Payment, which agreement shall be on the then-current, Controller-approved standard settlement agreement form substantially in the form attached to this Agreement as Appendix 3. The Settlement Payment shall be paid to the Legal Center as follows: A warrant in the amount of $75,000.00 will be made payable to The Legal Center COLTAF Account Center for Legal Advocacy Colorado Lawyer Trust Account Fund. The warrant will be delivered to the Legal Center within thirty days after the date this Agreement and the Controller-approved settlement document are finalized and signed by all Parties and the Controller. No withholding for payment of federal, state or local taxes will occur respecting any warrant issued

- 10 -

pursuant to this Agreement. The Legal Center will complete, execute and provide an original of I.R.S. form W-9 in conjunction with submitting the required signed version of the settlement agreement as an initial step in completing the arrangements described here. A Form 1099 will be issued to the Legal Center on the Settlement Payment. The Settlement Payment made hereunder shall not be designated as wages, salary or back pay, but is instead made in compromise of all claims arising from or related to the subject matter of this Agreement for those matters up to and including the date this Agreement is fully executed.

8.   **Effective Date of the Agreement.** The Effective Date of this Agreement shall be July 1, 2012.

9.   **Remedies by Pretrial Detainees Not Precluded.** Nothing in this Agreement limits a Pretrial Detainee, or his or her counsel, from bringing other court action, such as contempt of court proceedings, if the circumstances warrant such action. In any court action brought by a Pretrial Detainee for contempt of court, the Department retains all defenses to such action, including but not limited to those attending Rule 107, C.R.C.P.

10.   **Contempt Actions Against Other Agencies, Non-Complying Sheriff's Offices, District Attorney's Offices, and Defense Counsel Not Precluded.** Nothing in this Agreement precludes a court from issuing contempt citations to Sheriffs for failing to comply with transport orders, District Attorneys for violating timelines ordered by courts to provide Collateral Materials, and defense attorneys who fail to comply with orders related to Competency Evaluations and admission for Restorative Treatment.

11.   **Joint Activities of the Parties to Education State Judiciary, District Attorneys, Defense Attorneys, and County Sheriffs.** The Parties and their counsel will work together in good faith to ensure the cooperation of other interested groups— such as the State Judiciary, District Attorneys, Public Defenders, and County Sheriffs— in the successful implementation of this Agreement.

- 11 -

649149

12.     **No Admission of Liability.** The Parties' agreement to the terms of this Agreement shall in no manner be deemed an admission, express or implied, of (a) liability by any Party to any other person or entity; (b) any fact, other than the facts set forth in the recitals to this Agreement; and (c) the merits of the position taken by any Party with respect to any matter.

13.     **Representations and Warranties.** Each Party to this Agreement represents, warrants, and agrees as to itself as follows:

(a)     It has fully and carefully reviewed this Agreement prior to its execution by an authorized signatory;

(b)     It has consulted with its attorneys regarding the legal effect and meaning of this Agreement and all terms and conditions hereof, and that it is fully aware of the contents of this Agreement and its legal effect;

(c)     It has had the opportunity to make whatever investigation or inquiry it deems necessary or appropriate in connection with the subject matter of this Agreement;

(d)     It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claims that it might have against the other; and

(e)     It is executing this Agreement voluntarily and free from any undue influence, coercion, duress or fraud of any kind.

14.     **Complete Agreement; Modification; and Waiver.** This Agreement constitutes the entire agreement between the Parties and supersedes all prior and contemporaneous agreements, representations, warranties, and understandings of the Parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all Parties. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether

- 12 -

or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

15.   **Authority of the Signatories.** The Signatories hereto represent and warrant that they have the power and authority necessary to execute this Agreement and bind the Party they represent to the terms of the Agreement.

16.   **Multiple Counterparts.** This Agreement may be executed in a number of identical counterparts, each of which for all purposes is deemed an original, and all of which constitute collectively one agreement. The Parties intend that faxed signatures and electronically-imaged signatures such as PDF files shall constitute original signatures and are binding on all Parties.   An executed counterpart signature page delivered by facsimile or by electronic mail shall have the same binding effect as an original signature page. This Agreement shall not be binding until all Parties have signed and delivered a counterpart of this Agreement whether by mail, facsimile, or electronic mail.

17.   **Successors, Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and the Parties' respective heirs, legal representatives, successors, and assigns.

18.   **Notices.** Any notice or other communication required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when (a) mailed by United States registered or certified mail, return receipt requested, (b) mailed by overnight express mail or other nationally recognized overnight or same-day delivery service, (c) sent as a PDF attachment to electronic mail, or (d) delivered in person, to the Parties at the following addresses:

If the Legal Center, to:

The Legal Center
455 Sherman Street, #130
Denver, Colorado 80203

Attention:      Randy Chapman

- 13 -

649149

rchapman@thelegalcenter.org

with a copy to:

    Iris Eytan, Esq.
    REILLY POZNER LLP
    1900 Sixteenth Street, Suite 1700
    Denver, Colorado 80202
    ieytan@rplaw.com

    Marcus Lock, Esq.
    Wilderson Lock & Hill LLC
    525 North Main Street
    Gunnison, Colorado 81230
    mlock@lawoftherockies.com

If the Department, to:

    Department of Human Services
    1575 Sherman Street
    Denver, Colorado 80203

    Attention:    Reggie Bicha
                reggie.bicha@state.co.us

If the Hospital, to:

    Colorado Mental Health Institute at Pueblo
    1600 West 24th Street
    Pueblo, Colorado 81003
    Attention:    Superintendent: Teresa Bernal
                Teresa.bernal@state.co.us

With a copy to:

    Office of the Attorney General
    1525 Sherman Street, 6th Floor
    Denver, CO 80203

    Attention:    Alicia Calderón/Tanya Smith
                Tanya.smith@state.co.us

A Party may change the names or address where notice is to be give to it by providing

notice to the other Parties of such change in accordance with this Paragraph 18.

649149

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year so indicated.


[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

649149

_Center for Legal Advocacy, d/b/a The Legal Center for People with Disabilities and Older People_

Name:   MARK J. IVANDICK

Title:   MANAGING ATTORNEY

Dated:   4-6-12

_Colorado Department of Human Services_

Name:   Reggie Bicha

Title:   Executive Director, in his official capacity

Dated:   April 6, 2012

_Colorado Mental Health Institute at Pueblo_

Name:   Teresa A. Bernal

Title:   Interim Superintendent, in her official capacity

Dated:

- 16 -

*Center for Legal Advocacy, d/b/a The Legal Center for People with Disabilities and Older People*

Name:

Title:

Dated:

*Colorado Department of Human Services*

Name:  Reggie Bicha

Title:   Executive Director, in his official capacity

Dated:

*Colorado Mental Health Institute at Pueblo*

Name:  Teresa A. Bernal

Title:   Interim Superintendent, in her official capacity

Dated: 4/6/2012

- 16 -

649149

# APPENDIX  1

**Appendix 1 Re: Implementation of Out-Patient Evaluation Obligation**

**Supplementing Paragraph 2(b)**

1.     The Department shall assume the 30-day completion obligations according to the following schedule:

        a.     Beginning July 1, 2012:  Boulder, Arapahoe, Douglas and Pueblo Counties

        b.     Beginning January 1, 2013:  Denver, Broomfield, Larimer and Weld Counties

        c.     Beginning July 1, 2013:  Adams, Jefferson, Alamosa, El Paso, Fremont, Custer, Huerfano, Otero, Teller, Elbert, and Crowley Counties

2.     Counties not identified above in paragraph 1, are counties that use the "hold and wait" court ordered process. The counties not named above may choose between 1) an In-Patient Evaluation or 2) a Hold and Wait Evaluation, as defined below.  Hold and Wait Evaluations for these counties will be offered a meeting date within 30 days of the Hospital's receipt of the Court Order and Collateral Materials, and the evaluation will be completed within 30 days of the meeting.  Counties that choose an In-Patient Evaluation will be subject to the timeframes for In-Patient Evaluations set forth in Paragraph 2(a) of the Agreement.

3.     "Hold and Wait Evaluation" means an in-custody evaluation of a Pretrial Detainee that is conducted in another facility, after transport by the sheriff of the commitment county to the alternative facility.  For example, a sheriff in a county in which there are no evaluation services may transport the Pretrial Detainee to the nearest county where these services are available, wait for the evaluator to complete the interview and examination, and return the inmate to the jail in the county of commitment.

4.     If population growth causes such change that the "hold and wait" process does not meet the evaluation needs of a county, the parties agree to confer in good faith to address any issues that may arise.

649149

# APPENDIX  2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-2285-MSK-BNB

CENTER FOR LEGAL ADVOCACY, d/b/a
THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

   *Plaintiff,*

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

   *Defendants.*

---

**JOINT MOTION TO DISMISS UNDER FED. R. CIV. P. 41(a)(2)**

---

   Plaintiff, the Center for Legal Advocacy, d/b/a The Legal Center for People with

Disabilities and Older People (the "Legal Center"), and Defendants Reggie Bicha, in his

official capacity as Executive Director of the Colorado Department of Human Services,

and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado

Mental Health Institute at Pueblo, hereby submit this Joint Motion to Dismiss Under

Fed. R. Civ. P. 41(a)(2).  In support of this Motion, the Parties state as follows:

   1.  The Parties have participated in several settlement conferences ordered

by the Court and have conducted additional settlement discussions outside of those

conferences.

649149

2.      The Parties have resolved the issues and controversies between them, and they have embodied their agreement to settle this action in a written Settlement Agreement. The Parties have executed the Settlement Agreement, a copy of which is attached hereto as Exhibit 1.

3.      The Parties agree that this Court has jurisdiction over the enforcement of the Settlement Agreement.

4.      The Parties request that the Court retain continuing jurisdiction over the settlement and enforcement of the Settlement Agreement under the authority of *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381-82 (1994) and *Bell v. Board of County Commissioners*, 451 F.3d 1097, 1103 (10th Cir. 2006).

5.      Fed. R. Civ. P. 41(a)(2) permits the Court to enter an order dismissing the action on terms that the Court considers proper. The Parties agree that the terms contained in the [Proposed] Order of Dismissal submitted with this motion are proper.

WHEREFORE, the Parties jointly and respectfully request that the Court enter

an Order of Dismissal in the form submitted herewith.


DATED: _____, 2012                Respectfully submitted,


/s/ Jason M. Lynch                          /s/ Alicia Calderón

Iris Eytan                                  Alicia Calderón
Jason M. Lynch                              Tanya Smith
Caleb Durling                               Office of the Attorney General
REILLY POZNER LLP                           State Services Section
1900 Sixteenth Street, Suite 1700           1525 Sherman Street, 6th Floor
Denver, CO 80202                            Denver, CO 80203
(303) 893-6100                              (303) 866-5228
ieytan@rplaw.com                            Alicia.calderon@state.co.us
jlynch@rplaw.com                            Tanya.smith@state.co.us
cdurling@rplaw.com
                                            *Attorneys for Defendants*
/s/ Marcus J. Lock

Marcus Lock
WILDERSON LOCK & HILL LLC
525 North Main Street
Gunnison, CO 81230
(970) 641-1903
MLock@BrattonHill.com


Chester R. Chapman
Mark J. Ivandick
THE LEGAL CENTER FOR PEOPLE WITH
   DISABILITIES
455 Sherman St., Suite 130
Denver, CO 80203
(303) 722-0300
rchapman@thelegalcenter.org
mivandick@thelegalcenter.org


*Attorneys for Plaintiff Legal Center*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-2285-MSK-BNB

CENTER FOR LEGAL ADVOCACY, d/b/a
THE LEGAL CENTER FOR PEOPLE WITH
DISABILITIES AND OLDER PEOPLE,

     *Plaintiff,*

v.

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and
TERESA A. BERNAL,
in her official capacity as Interim Superintendent
of the Colorado Mental Health Institute at Pueblo,

     *Defendants.*

---

### [PROPOSED] ORDER OF DISMISSAL UNDER FED. R. CIV. P. 41(a)(2)

---

     Before the Court is the Parties' Joint Motion to Dismiss Under Fed. R. Civ. P. 41(a)(2) (the "Motion"). Following a series of settlement conferences overseen by the Court, the Parties have settled the issues and controversies between them to their mutual satisfaction, and their settlement is embodied in a signed settlement agreement attached as Exhibit 1 to the Motion. The Parties request that the Court retain jurisdiction to enforce the terms of the Settlement Agreement under the authority of *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381-82 (1994) and *Bell v. Board of County Commissioners*, 451 F.3d 1097, 1103 (10th Cir. 2006).

     IT IS HEREBY ORDERED:

     1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 2201-02, and pursuant to 42 U.S.C. § 1983.

649149

2.      Being fully advised of the disputed issues between the parties and the contents of the Settlement Agreement, the Court approves of the Settlement Agreement between the Parties.

3.      The Parties shall comply with the terms of their Settlement Agreement entered into on [DATE], a copy of which is attached hereto and incorporated by reference as if fully set forth herein.

4.      By consent of the Parties, the Court shall retain continuing jurisdiction over the settlement and enforcement of the Settlement Agreement for the duration of the agreement plus 60 days following the delivery of the final report made by Defendants under the Agreement.

5.      Except as provided in paragraphs 3 and 4 above, this case is DISMISSED pursuant to Fed. R. Civ. P. 41(a)(2).

IT IS SO ORDERED, this _____ day of _____, 2012.

_____
Judge

649149

# APPENDIX 3

## FULL AND FINAL RELEASE OF ALL CLAIMS

This Full and Final Release of All Claims ("Release") is made as of April ____, 2012 (notwithstanding the actual date of execution) by and between the Center for Legal Advocacy, d/b/a The Legal Center for People with Disabilities and Older People (hereinafter the "Legal Center" or "Plaintiff") and Reggie Bicha and Teresa Bernal and their successors ("Defendants"). Plaintiff and Defendants shall be referred to collectively in this Release as "the Parties."

## RECITALS

WHEREAS, Reggie Bicha and Teresa Bernal were both sued in their official capacities, and are employees of the Colorado Department of Humans Services, which is an agency of the State of Colorado, and

WHEREAS, the Legal Center brought a lawsuit captioned *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11-cv-02285-BNB in U.S. District Court for the District of Colorado (hereinafter the "Lawsuit"); and

WHEREAS, the Lawsuit was brought to challenge the length of time it takes for pretrial detainees in Colorado jails to receive competency evaluations or restorative treatment; and

WHEREAS, the parties have settled the claims brought in the Lawsuit and, as part of the settlement of the Lawsuit, have agreed on an amount that will settle all possible claims for attorney fees or costs associated with the Lawsuit up to and including the date of this Agreement; and

WHEREAS, Plaintiff and Defendants, in good faith, have agreed to avoid the expense and time of litigation, and have further agreed that this Release fully resolves all of the claims for attorney fees and costs incurred by Plaintiff in this matter;

THEREFORE, on condition of the promises and covenants contained in this Release, the adequacy and sufficiency of which are hereby acknowledged, the following is agreed:

1.1 <u>DISMISSAL OF CLAIMS</u>: Plaintiff, its attorneys, agents, assigns, heirs, representatives, and subrogees, hereby acquit, release, and forever discharge Defendants, the State of Colorado, and all of their or its agencies, employees, officers, directors, agents, subagents, contractors, subcontractors, and attorneys in any capacity, from any and all claims for attorney fees and costs incurred on or before the effective date of this agreement that Plaintiff has or may have arising out of the circumstances described in the Lawsuit, whether such claims for attorney fees and costs are now known or come to be known in the future. This Release extends to and applies to all unknown, unforeseen, unanticipated and unsuspected claims for attorney fees and costs as well as those now disclosed and known to exist against Defendants and the State of Colorado. Plaintiff hereby waives the provisions of any state, local, federal or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries, or damages which are unknown or unsuspected to exist at the time, to the persons executing such release.

649149

1.2     COVENANT NOT TO SUE:  Plaintiff expressly agrees and covenants that it will not sue or assert any cause of action, at law or in equity, and whether before a court of law or an administrative agency, against Defendants or the State of Colorado or any of their  officers, officials, employees, departments or agencies, for any claims for attorney fees and costs arising in any way from the allegations described in the Lawsuit.

1.3     UNKNOWN FACTS:  Plaintiff acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereby, and it agrees that this Release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

1.4     SETTLEMENT PAYMENTS:  Without admitting any liability to Plaintiff, or admitting that Defendants, the State of Colorado, or any of their employees, agents, officers, officials, contractors, subrogees or subcontractors have committed any act or omission that gives rise to any liability, the Office of Risk Management for the State of Colorado, on behalf of Defendants, shall pay to the Legal Center COLTAF account, the Center for Legal Advocacy Colorado Lawyer Trust Account Fund, a check or state warrant in the amount of seventy-five thousand dollars ($75,000); and

        The payment ("State Settlement Payment") described in this paragraph 1.4 shall constitute the full and complete settlement of any and all of Plaintiff's claims for attorney fees and costs against Defendants and the State of Colorado arising from or related to the Lawsuit. The check or state warrant will not issue until thirty (30) days after this Release is executed in full.

1.5     INTENDED THIRD PARTY BENEFICIARIES:  The Parties agree and acknowledge that the defendants named as defendants in the Lawsuit, their successors, the State of Colorado, and employees, officers, officials,  agencies, and departments of the State of Colorado, although they may not be signatory parties hereto, are intended third-party beneficiaries of this Release, and shall have the right to rely on and enforce this Release in any court of competent jurisdiction in the event that claims asserted against them for attorney fees and costs are not dismissed or any action on claims released hereby may be threatened or commenced hereafter.

1.6     WARRANTIES AND REPRESENTATIONS:  Plaintiff represents that it is the sole owner of all claims purported to be released hereby and the sole owner of all claims for attorney fees arising from or related to the Lawsuit.  Plaintiff represents and warrants that it has not assigned or transferred any claim arising from or related to the Lawsuit to any third party and that no third party has been subrogated to its interest in claims purported to be released hereby, or, if any third party has been subrogated to Plaintiff's interest, the interest of any subrogee has been settled, compromised, and extinguished.  Plaintiff agrees to defend and indemnify Defendants, the State of Colorado, their departments, agencies, officers, officials and employees, and to hold them harmless against the claims of any actual or purported assignee, transferee or subrogee to claims purported to be released hereby that may hereafter be asserted.

1.7     REPORTING AND TAX TREATMENT:  Plaintiff shall complete and provide to the State of Colorado an I.R.S. form W-9 "Request for Taxpayer Identification Number (TIN) Verification" for proper reporting of the State Settlement Payment to the IRS on Form 1099 by the State. The State Controller shall issue an I.R.S. form 1099 to Plaintiff for the full amount of the State Settlement Payment. In the event any claim is ever asserted against Defendants, their successors, or the State of Colorado to satisfy a tax liability arising from the failure of Plaintiff, its assignee, transferee, or subrogee to pay any tax owed on the State Settlement Payment,

Plaintiff agrees it shall be solely responsible for any portion of the tax liability that may arise as a result. Plaintiff further agrees that it will defend, indemnify, and hold the Defendants, the State of Colorado, and its officers, officials, employees, departments and agencies harmless for any interest or penalty assessed on such amount, within 30 days after notification from any Defendant or the State of Colorado that a taxing authority has asserted a tax claim, or such longer period as specified by the taxing authority. Plaintiff agrees that the Defendants, State of Colorado, the Office of Risk Management, and the Office of the Colorado Attorney General have made no representations and have given no legal opinion concerning the tax treatment of the State Settlement Payments, and Plaintiff is not relying on any such representation or opinion. Plaintiff has sought and received such tax opinions and advice as it deems necessary from attorneys and/or tax advisors of its choice.

1.8     **INTEGRATION**: This Release constitutes the entire agreement between Plaintiff, the Defendants, and the State of Colorado with respect to the subject matter and transactions referred to herein and may not be amended absent a writing evidencing such an amendment executed by all parties. No waiver of any covenant or obligation of this Release shall be effective unless contained in a writing signed by the party against whom such waiver is asserted.

2.1     **BINDING EFFECT**: This Release shall inure to the benefit of, and be binding upon, the successors, assigns, subrogees, representatives, agents of the parties.

2.2     **GOVERNING LAW**: The Release is entered into at Denver, Colorado and shall be governed by the laws of the State of Colorado, including the Colorado Fiscal Rules.

2.3     **HEADINGS**: The headings used in this Release are for the convenience of the parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Release.

2.4     **SEVERABILITY**: If any provision of this Release should be declared to be unenforceable, the remainder of this Release shall continue to be binding upon the parties.

2.5     **COSTS**: Plaintiff and Defendants agree that each party shall be responsible for their own costs and expenses, including attorney fees, associated with the negotiation and execution of this Release and any other instrument or activity necessary to effectuate settlement between the parties.

2.6     **ADVICE OF COUNSEL**: Plaintiff represents that (a) it has relied upon the advice of attorneys and/or other consultants of its own choice concerning the legal and federal, state and local tax consequences of this Release, (b) this Release has been thoroughly read by Plaintiff and its terms have been explained to it to its satisfaction by an attorney or attorneys of its choice, and (c) the terms of this Release, including its release of unasserted and unknown claims, are fully understood and voluntarily accepted by Plaintiff. Plaintiff further understands and agrees that this Release shall be forever binding and that no cancellation, rescission or modification of, or release from the terms of, this Release shall be made based upon any mistake of fact or of law.

2.7     **STIPULATION OF DISMISSAL**: The terms of this Release are intended to be self-operative. Notwithstanding the foregoing, Plaintiff agrees that it will execute any further documentation or instruments reasonably necessary to effectuate the transactions contemplated by this Release.

649149

**2.8    GENERAL PROVISIONS:**

      a.    The terms of this Release are contractual and not merely recitals.

      b.    This Release is entered into voluntarily by the parties, without duress and after each party has had the opportunity to consult with legal counsel of his or her choosing, has read and understood the Release and obtained full knowledge of its legal significance.

      c.    This Release is made as a compromise of contested claims for attorney fees and costs to avoid expense and to terminate all controversies and claims for attorney fees and costs. None of the parties hereto made any representations or promises to the other to do or refrain from any act not expressly set forth herein.

      d.    Plaintiff warrants and represents that it has full capacity and authority to settle, compromise and release its claims against Defendants and that no other person or entity has any right to assert against any person or entity released hereby any portion of the released claims.

      e.    This Release may be executed in one or more counterparts, each of which shall be an original, but which together shall constitute a single instrument.

      f.    The Parties understand and agree that upon a valid request pursuant to the Open Records Act, § 24-72-201 *et seq.*, C.R.S. (2003), Defendants or the State of Colorado are obligated to provide the requesting person a copy of this Release.

      g.    This Release shall not be deemed valid, binding on the Parties, and enforceable until it shall have been approved by the Controller of the State of Colorado or such assistant as he may designate.  This provision is applicable to any contract involving the payment of money by the State.

      h.    Pursuant to C.R.S. 24-30-202.4 (as amended) the State Controller may withhold debts owed to State agencies under the vendor offset intercept system for: (a) unpaid child support or child support arrearages; (b) unpaid balance of tax, accrued interest and other charges specified in Article 21, Title 39, C.R.S.; (c) unpaid loans due to the Student Loan Division of the Department of Higher Education; (d) owed amounts required to be paid to the Unemployment Compensation Fund; and (e) other unpaid debts owing to the State or any state agency thereof, the amount of which is found to be owing as a result of final agency determination or reduced to judgment as certified by the State Controller.

**2.9    CONSIDERATION:**  Plaintiff acknowledges the receipt of good and sufficient consideration for this Release.  Plaintiff hereby releases any claim or action upon which it may seek to overturn this Release, including but not limited to any claim of insufficiency of consideration in whole, or in part, as to any party, regardless of the source of the consideration.

**3.0    NO ADMISSION OF LIABILITY:**  It is expressly understood and agreed that this Release is in full settlement and satisfaction of disputed claims for attorney fees and costs incurred by Plaintiff and arising from or related to the Lawsuit.  It is further understood and agreed that any claims for attorney fees and costs and the legal liability therefore are disputed and denied by Defendants and that the payment of the considerations given in this Release is based solely on the economic consideration of conservation of public money.

In witness thereof, Plaintiff has signed this Release on the date set forth adjacent to its signature.

**CAUTION: READ THIS BEFORE SIGNING.  THIS IS A RELEASE OF ALL YOUR CLAIMS FOR ATTORNEY FEES AND COSTS.**

649149

**FOR PLAINTIFF THE LEGAL CENTER**

_____          4-6-12
Mark J. Ivandick                              DATE

Its   MANAGING ATTORNEY

**FOR DEFENDANTS:**

By: _____          4/6/12
REGGIE BICHA                                 DATE
Executive Director, Colorado Department of
Human Services

By: _____          4/6/12
DAVID J. MCDERMOTT, CPA                      DATE
State Controller
State of Colorado

**649149**

**APPROVED AS TO FORM:**

William V. Allen
Senior Assistant Attorney General
Office of the Colorado Attorney General
1525 Sherman St.
Denver, CO 80203

Jason M. Lynch
Reilly Pozner LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
**Also on behalf of:**
Iris Eytan
Caleb Durling

Marcus Lock
Wilderson Lock & Hill LLC
525 North Main Street
Gunnison, CO 81230

649149

Form **W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
**Center for Legal Advocacy**

Business name, if different from above
**The Legal Center for People with Disabilities & Older People**

Check appropriate box: ☐ Individual/Sole proprietor  ☒ Corporation  ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ ........
☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)
**455 Sherman Street, Suite 130**

City, state, and ZIP code
**Denver, CO 80203-4403**

Requester's name and address (optional)

List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

8 4 | 0 7 0 5 8 9 0

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

Sign
Here

Signature of
U.S. person ▶ *Jim McBride*

Date ▶ *4/5/2012*

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

   1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

   2. Certify that you are not subject to backup withholding, or

   3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Definition of a U.S. person. For federal tax purposes, you are considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

● An estate (other than a foreign estate), or

● A domestic trust (as defined in Regulations section 301.7701-7).

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 10-2007)