# APPENDIX  1

## AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Amended and Restated Settlement Agreement (the "Agreement") is entered into by and between the Center for Legal Advocacy, d/b/a Disability Law Colorado ("DLC"), on the one hand, and Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Ronald B. Hale, in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo, on the other hand.  Each of the foregoing is sometimes referred to as a "Party" and collectively as "the Parties."

WHEREAS, the Colorado Department of Human Services (the "Department") has a statutory obligation under C.R.S. §§ 16-8.5-101 *et seq.* to provide competency evaluations for persons charged with criminal offenses, and to provide restorative treatment for persons found incompetent to proceed;

WHEREAS, DLC has brought a civil action against Bicha and Hale's predecessor captioned *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11-cv-02285-BNB (D. Colo.) (the "Original Action") to challenge the length of time it took for pretrial detainees in Colorado jails to receive competency evaluations or restorative treatment;

WHEREAS, the Parties settled the Original Action pursuant to a Settlement Agreement executed on April 6, 2012, which was incorporated into the Order of Dismissal entered by the District Court in the Original Action;

WHEREAS, DLC filed a Motion To Reopen the Original Action on October 28, 2015;

WHEREAS, the District Court granted DLC's Motion To Reopen;

WHEREAS, the Parties participated in mediation at the Judicial Arbiter Group conducted by the Hon. Boyd N. Boland in an attempt to resolve the new claims without an evidentiary hearing;

WHEREAS, the Parties reached an agreement on modifications to the Settlement Agreement to resolve DLC's claims;

NOW, THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements contained herein, the Parties agree as follows:

## AGREEMENT

1.     **Definitions.** The following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Agreement):

(a)     "Action" means the lawsuit pending in the United States District Court for the District of Colorado captioned *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services, and Teresa A. Bernal, in her official capacity as Interim Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11-cv-02285-BNB, including the Original Action and proceedings instituted following DLC's Motion to Reopen filed on October 28, 2015.

(b)     "Average" means the mean average.

(c)     "Competency Evaluation" means a court-ordered evaluation for competency to proceed administered by the Department and the accompanying report prepared by the Department and more fully described in C.R.S. §§ 16-8.5-103 -105.

(d)     "Competency to Proceed" means that a defendant in a criminal case does not have a mental disability or developmental disability that prevents the defendant from having sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense or prevent the defendant from having a rational and factual understanding of the criminal proceedings.

(e)     "Collateral Materials" means the relevant police incident reports and the charging documents, either the criminal information or indictment.

(f)    "County Jail" means a jail or detention facility which houses Pretrial Detainees.

(g)    "Court Order" means a written order, issued by a court and signed by a judge, which clearly authorizes the transfer of custody of a Pretrial Detainee.  A minute order shall not constitute a court order for the purposes of this Agreement.

(h)    "Days Waiting" means the number of days elapsed between the Ready for Admission date and the Offered Admission date.

(i)    "Department" means the Colorado Department of Human Services.  Any reference to the Department includes the Colorado Mental Health Institute at Pueblo, which is a division of the Colorado Department of Human Services and does not have independent authority or obligations under Title 16, Article 8.5, C.R.S.

(j)    "Hold and Wait Evaluation" means an in-custody evaluation of a Pretrial Detainee that is conducted in another facility, after transport by the sheriff of the commitment county to the alternative facility.  For example, a sheriff in a county in which there are no evaluation services may transport the Pretrial Detainee to the nearest county where these services are available, wait for the evaluator to complete the interview and examination, and return the inmate to the jail in the county of commitment.

(k)    "Hospital" means the Colorado Mental Health Institute at Fort Logan (CMHIFL), Colorado Mental Health Institute at Pueblo (CMHIP), and includes CMHIP's Institute for Forensic Psychiatry and the jail-based evaluation and restoration programs.

(l)    "Independent Consultant" means an individual experienced in the management and oversight of a state's mental health system, who is independent of the Parties, and, at the Department's expense, oversees the implementation of the timeframe and data reporting requirements set forth in this Agreement.

(m)    "In-Patient Competency Evaluation" means a Competency Evaluation of a Pretrial Detainee that is ordered to be performed at the Hospital.

(n)     "Medically Cleared" means that a Pretrial Detainee is, in the opinion of the Hospital's medical staff, appropriate for placement at the Hospital.

(o)     "Monthly Average" shall mean the average number of days waiting for admission for all Pretrial Detainees within that calendar month who (1) were Offered Admission to CMHIP for Restorative Treatment or In-Patient Competency Evaluations, as calculated in Paragraph 2(a); or (2) have an Out-Patient Competency Evaluation performed at the County Jail, as calculated in Paragraph 2(b).  Monthly Average shall not include anyone who is still waiting at the end of a calendar month (1) to be Offered Admission to CMHIP for Restorative Treatment or an In-Patient Competency Evaluation or (2) for the completion of an Out-Patient Competency Evaluation performed at the County Jail.

(p)     "Offered Admission Date" means the date the Hospital satisfies the following three (3) criteria with respect to each Pretrial Detainee: (1) the Hospital has an open bed for the Pretrial Detainee; (2) the Hospital is ready to receive the Pretrial Detainee for admission; and (3) the Hospital notifies the County Jail of the same.

(q)     "Out-Patient Competency Evaluation" means a Competency Evaluation of a Pretrial Detainee that is ordered to be performed in the County Jail where the Pretrial Detainee is held.  Evaluations ordered to be performed at any location other than in the County Jail where the Pretrial Detainee is held are excluded from this Agreement.

(r)     "Pretrial Detainees" means a person who is being held in the custody of a County Jail, and whom a court has ordered to undergo an Out-Patient Competency Evaluation in the County Jail, an In-Patient Competency Evaluation at the Hospital, or Restorative Treatment at the Hospital.  Persons serving a sentence in the Department of Corrections, juveniles, and persons on bond are excluded from this Agreement.

(s)     "Ready for Admission Date" means the date on which the Hospital has received the Court Order for admission to the Hospital and the Collateral Materials.

(t)     "Restorative Treatment" means mental health care and treatment provided for the purpose of restoring a Pretrial Detainee to competency.

(u)     "Settlement Payment" has the meaning set forth in Paragraph 7.

**2.     Timeframes for Admission to the Hospital for Restorative Treatment and Performance of Competency Evaluations.**  The Department and Hospital agree to adhere to the following timeframes for admissions for Restorative Treatment and the performance of Competency Evaluations.

(a)     <u>Admission of Pretrial Detainees for In-Patient Competency Evaluations and Restorative Treatment</u>.  The Department shall Offer Admission to Pretrial Detainees to the Hospital for Restorative Treatment or Inpatient Competency Evaluations no later than 28 days after the Pretrial Detainee is Ready for Admission, and shall maintain a Monthly Average of 24 days or less for both types of Offers of Admission. Compliance with this measure shall be calculated based on the number of Days Waiting for each Pretrial Detainee.

(b)     <u>Performance of Out-Patient Competency Evaluations</u>.  The Department shall complete all Out-Patient Competency Evaluations of a Pretrial Detainee no later than 30 days after the Hospital's receipt of a Court Order directing the evaluation and receipt of Collateral Materials. This timeframe requirement shall apply to the following counties: Boulder, Arapahoe, Douglas, Pueblo, Denver, Broomfield, Larimer, Weld, Adams, Jefferson, Alamosa, El Paso, Fremont, Custer, Huerfano, Otero, Teller, Elbert, and Crowley. Counties not specifically identified, are counties that use the "hold and wait" court ordered process. Counties utilizing the Hold and Wait Evaluation process will be offered a meeting date within 30 days of the Hospital's receipt of the Court Order and Collateral Materials, and the evaluation will be completed within 30 days of the meeting.

**3.     Regular Reporting by Department, Quarterly Meetings, and Departmental Contact for Reports of Concerns.**

(a)     <u>Content and Form of Reports</u>.  The Department will provide monthly reports to DLC and the Independent Consultant containing the following information:

(i)     Four separate lists, including (1) a list of Pretrial Detainees referred to the Hospital for Restorative Treatment, (2) a list of Pretrial Detainees referred for In-Patient Competency Evaluations, (3) a list of Pretrial Detainees referred for Out-Patient

Competency Evaluations, and (4) a list of Pretrial Detainees for whom the Department has invoked Individual Special Circumstances and its reasons for doing so. Additionally, the Department will generate another report monthly that will include cumulative information designed to allow the Independent Consultant and DLC to monitor the two historic areas the Department has cited as causing delayed admissions in the past, specifically dramatic increases in referrals and unprecedented staffing shortages. This report will include the following information: (A) the number of referrals for Restorative Treatment, In-Patient Evaluations, and Out-Patient Evaluations each month; (B) the number of staff employed each month by category (nursing positions, security positions, mental health professionals, etc.) and how many vacancies remain in each staffing category; and (C) the number of temporary staff and the number of security staff employed each month.

(ii)     Each list will include any Pretrial Detainees for whom a court order for In-Patient Competency Evaluation, Outpatient Competency Evaluation, or Restoration Treatment or Collateral Materials has been received by the Hospital (even if no other data is available during that month.).

(iii)     The data presented in the reports shall include:

- The name of the referred Pretrial Detainee;

- The Pretrial Detainee's CMHIP Patient ID number

- The count(ies) referring the Pretrial Detainee;

- The case number of the criminal case in which the Court Order was issued;

- The date of the Court Order;

- The date the Court Order was received by the Hospital;

- The date that the Hospital learned that the Court Order was vacated or converted to another type of evaluation or restorative process;

- The date the Collateral Materials were received by the Hospital;

- The date the Out-Patient Competency Evaluation report was signed and dated by the evaluator;

- The defense attorney's name if shown in the Hospital's records;

- The criminal charges filed against the Pretrial Detainee as shown in the Hospital's records;

- The Ready for Admission date;

- The Offered Admission date;

- The Hospital's 28-day Offered Admission deadline for that specific Pretrial Detainee, based on the Ready for Admission date;

- The date of admission;

- The location of the evaluation or restorative treatment of the Pretrial Detainee; and

- The number of Days Waiting for each Pretrial Detainee.

(b)     Timing of Reports. The first report under this Agreement shall be made on August 7, 2016. The August 7, 2016 submission to DLC shall include reports for both June and July 2016.  Thereafter, monthly reports shall be provided on the seventh day of each month following the reporting month, or on the next business day if the seventh day of the month falls on a weekend or holiday.

(c)     Distribution of Reports.  The report shall be provided to DLC and the Independent Consultant monthly, in Microsoft Access format and PDF format, unless another format is agreed upon in writing by the parties.

(d)     Quarterly Meetings.  Representatives of the Parties and the Independent Consultant shall meet quarterly to discuss any issues related to the provision of restoration and competency evaluation services system-wide. In 2016, the Independent Consultant shall attend the quarterly meeting in person. In 2017, the Independent Consultant shall attend two quarterly meetings a year in person, and two quarterly meetings a year by teleconference or video conference.  In 2018 and future years, the Independent Consultant will attend one quarterly meeting a year in person and three quarterly meetings a year by teleconference or video conference. If the Independent Consultant believes attendance is necessary to any other quarterly meetings, the Independent Consultant may attend in person only upon agreement of the parties. The Parties shall treat the meetings as a serious opportunity to raise concerns or potential barriers with the system of institutions involved in the competency evaluation and restoration treatment of Pretrial Detainees, including, without limitation the courts, judges, clerks, district attorneys, defense attorneys, the Hospital, and to explore ways in which the Department's performance may be improved through collaboration or other means.  Each party shall designate appropriate senior representatives, based on the agenda for each meeting, to participate in the quarterly meeting so that meaningful discussion can occur, and may include outside stakeholders, as appropriate based on the agenda. The Parties shall designate one representative to collaborate on scheduling the quarterly meetings. The first quarterly meeting shall be scheduled for a mutually agreeable date between September and December 2016, with subsequent meetings scheduled for each calendar quarter, unless the parties agree to meet less often.

(e)     Department Contact for Reports of Concerns. Upon execution of this Agreement, the Department shall designate an appropriate individual as the single point of contact to receive reports from families of pre-trial detainees, sheriffs, public defenders, and others who wish to report concerns about the timeliness of competency evaluations and restorative treatment for Pretrial Detainees.  The Department shall provide a phone number and email address for this contact person.  DLC and its counsel shall provide the phone number and email address of the Department's single point of contact to persons who contact them with concerns about the timely provision of competency evaluations and restorative treatment. Pursuant to DLC's obligations as Colorado's Protection and Advocacy for Individuals with Mental Illness ("PAIMI") under 42 C.F.R. § 51.32, DLC will continue to share information

regarding complaints or issues with Pretrial Detainees as early as possible with the Department, to facilitate non-adversarial problem solving and protect the rights of Pretrial Detainees.

**4.      Duration of Agreement.**

(a)      <u>Duration and Certification</u>.  The terms and provisions of this Agreement shall remain in force until July 31, 2021. Beginning in January 2017, and for each subsequent January during the term of the Agreement, the Independent Consultant shall certify in writing to the Parties the number of months during the prior calendar year that the Department was in full compliance with the timeliness requirements of Paragraph 2 of this Agreement.  The duration of this Agreement may be modified according to the provisions of Paragraphs 4(b) and 4(c), below. If the duration of this Agreement is modified according to the provisions of Paragraphs 4(b) or 4(c), the annual certification of compliance shall state the new termination date. The term of the Agreement shall not be modified to end earlier than January 1, 2019.  When the annual compliance certification occurs in January 2017, the months of January – May 2016 shall not be considered and the Department will not be entitled to any reduction or subject to any increase in duration for the time period of January through May, 2016. The Independent Consultant's appointment terminates at the end of this Agreement.

(b)      <u>Reduction or Increase in Duration</u>.  The term of the Agreement shall be reduced by three months for each of the number of months of certified timeliness compliance for the prior calendar year. The term of the Agreement shall be increased by three months for each month during the prior calendar year that the Department was not in full compliance with the timeliness requirements of this Agreement. For the purposes of this Subparagraph 4(b), timeliness compliance shall be determined based on the Department's performance beginning in June 2016.

(c)      <u>Effect of the Invocation of Departmental Special Circumstances on the Duration of the Agreement</u>.   If the timeframe requirements of Paragraph 2 of this Agreement are temporarily suspended pursuant to the provisions of Paragraph 6(c), the duration of this Agreement shall be extended for a period equal to the length of time of the suspension of the timeframe requirements.  Invocation of Individual Special Circumstances will not affect the reduction in duration.

5.       **Dismissal of the Action; Court's Retention of Jurisdiction.**  Within five days of the full execution of this Agreement, the Parties shall file in the Action the Joint Motion for Dismissal and [Proposed] Order of Dismissal that are attached hereto as Appendix 1.  In filing the Joint Motion and [Proposed] Order, it is the intention of the Parties that the U.S. District Court for the District of Colorado retain jurisdiction for the purpose of enforcing the terms of this Agreement for the entire duration of this Agreement and for sixty days after the Hospital provides the final monthly report. The Department will not raise the issue of standing in an action to enforce this agreement, but in doing so, does not waive this defense in any future or ancillary actions.

6.       **Special Circumstances**.  The Parties recognize that to some extent the Department's ability to perform its statutory obligations and its obligations under this Agreement is based on factors beyond its control.  The Parties agree that, subject to the terms and conditions of this Paragraph 6, the timeframe requirements of Paragraph 2 of this Agreement may be temporarily suspended.

(a)      <u>Special Circumstances</u>.  The Department may invoke, under this Paragraph 6, two categories of Special Circumstances:

(i)       "Individual Special Circumstances" means a situation that delays the Offer of Admission to a Pretrial Detainee, where the circumstances are not within the control of the Department.  Historically, these situations have included requests by the court, County Jail, defense counsel or CMHIP that admission be delayed because they are seeking an out-patient arrangement or a more appropriate placement; additional information or testing required for the evaluation is outstanding; the court has ordered a hold and wait evaluation and the sheriff must transport the Pretrial Detainee to the nearest county where there are services available; or the inmate is not Medically Cleared for admission due to illness or other non-psychiatric medical need.  These examples are provided for illustration only.  Individual Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events.

(ii)      "Departmental Special Circumstances," means circumstances beyond the control of the Department which impact the Department's ability to comply with the timeframes set forth in Paragraph 2.  This could mean an unanticipated spike in referrals, a

national or statewide disaster impacting admissions decisions system wide. These examples are provided for illustration only.  Departmental Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events.

      (b)    <u>Effect of Invocation of Individual Special Circumstances</u>.  DLC will review the reporting of Individual Special Circumstances. If DLC questions the Department's invocation of Individual Special Circumstances, the Parties will confer to review the reasons for invocation of Individual Special Circumstances and to determine issues for resolution.  Additionally, the Hospital may proactively seek confirmation that an event qualifies as an Individual Special Circumstance by contacting a representative of DLC in advance of formal reporting of the event.  If the Department believes Individual Special Circumstances have become a systemic issue, it will follow the Departmental Special Circumstances procedure below.  The Parties shall use good faith efforts to try and resolve any disputes concerning the invocation of Individual Special Circumstances.  However, if the Parties do not reach an agreement through good faith efforts at resolution, either party may seek judicial enforcement of this Agreement.

      (i)    If the parties agree to the invocation of Individual Special Circumstances for a particular Pretrial Detainee, the timeframe requirements of Paragraph 2 shall be suspended as to that individual Pretrial Detainee for a period of 60 days from the maximum timeframe for admission of that particular Pretrial Detainee, as defined in Paragraph 2.

      (ii)    The Hospital may invoke Individual Special Circumstances more than once for the same Pretrial Detainee, but it must follow the notification and conferral procedures in Paragraph 6(b) each time it seeks to invoke Individual Special Circumstances.

      (c)    <u>Effect of Invocation of Departmental Special Circumstances</u>. If the Department determines that Departmental Special Circumstances exist, it shall notify DLC pursuant to the Notice provisions of Paragraph 20 of this Agreement, and in such notification, the Department shall provide a detailed explanation of the basis for invoking Departmental Special Circumstances, a plan to remedy the Departmental Special Circumstance, and the projected timeframe for resolution.  The period of Departmental Special Circumstances shall commence on the date that the Notice of Departmental Special Circumstances is transmitted to

DLC. Upon the invocation of Departmental Special Circumstances, the timeframe requirements of Paragraph 2 shall be automatically suspended for six months, unless the Department notifies DLC that a shorter time period is sufficient to resolve Departmental Special Circumstances, commencing with the month in which the Notice of Departmental Special Circumstances is transmitted to DLC. The Department shall provide written notice to DLC of its intent to terminate Departmental Special Circumstances. Upon DLC's receipt of a Notice of Departmental Special Circumstances, it may request supporting documentation for the Department's Notice and the Parties shall confer to review the reasons for invocation of Departmental Special Circumstances, to resolve questions that the Consultant or DLC may have about the circumstances that triggered the Notice, and to assess whether the parties are able to reach resolution of any disagreement concerning invocation of Departmental Special Circumstances. If DLC decides to challenge the invocation of Departmental Special Circumstances, it may do so by filing a motion to reopen the Action to seek enforcement of this Agreement.  The Department agrees that it will not oppose a motion to reopen the Action challenging the invocation of Departmental Special Circumstances and DLC may designate any such motion as "unopposed." The Department, however, shall retain and may assert in the reopened action any and all defenses to a claim that it has breached this Agreement.

> (d)     Effect on Reporting Requirements.  A Notice of Departmental Special Circumstances shall not affect the Department's reporting obligations under Paragraph 3 of this Agreement.

> **7.     Independent Consultant.**

> (a)     Selection of an Independent Consultant. The Parties shall appoint an Independent Consultant who is knowledgeable in the management and oversight of programs serving individuals with mental illness. This Consultant shall be independent from the Parties. The Department and DLC will suggest up to two independent consultants that the parties have confirmed are qualified and able to serve as the Independent Consultant within 14 days after the execution of this Agreement. The Parties will jointly select an Independent Consultant from the list within seven days of receiving the list of qualified nominees. If the Parties are unable to reach agreement by that date, each party will nominate one person to serve as Consultant and

Judge Boland (or Judge Boland's successor) will select the Consultant from those nominees. Judge Boland's decision shall be final. In the event the Independent Consultant resigns or otherwise becomes unavailable, the process described above will be used to select a replacement. After appointment, the Parties may mutually agree to replace the Independent Consultant with another individual through the process described above or by joint agreement.

(b)     <u>Duties and Reporting</u>. The Independent Consultant shall review and evaluate the Department's compliance with the timeframe requirements of Paragraph 2 of this Agreement and make recommendations to the Department for improved performance in the timely delivery of competency evaluations and restorative treatment.  The Independent Consultant will also identify actual and potential areas of non-compliance with the timeframe requirements of Paragraph 2 of this Agreement, and mediate disputes between the Parties related to such timeframe requirements and as necessary bring issues and recommendations for their resolution to the quarterly meetings as defined in Section 3(d) of this Agreement.  The Independent Consultant will provide the Parties with reports four times per calendar year (beginning in October 2016, thereafter each January, April, July, October of each following year) regarding the Department's compliance with the timeframe requirements of the Agreement and any other information or recommendations the Independent Consultant believes the parties should consider relating to compliance with the Agreement. Such reports shall include the information necessary, in the Independent Consultant's professional judgment, for the Plaintiffs to evaluate Defendants' compliance or non-compliance with the timeframe requirements of Paragraph 2 of this Agreement. The Independent Consultant shall have reasonable access to all records that the parties determine are reasonably related to the subject matter of this Agreement. Reports issued in January of each year shall also contain the certification set forth in paragraph 4(a). As a component of the reporting, the Independent Consultant shall select a sample of Pretrial Detainees from the Department's monthly reporting and audit the timeliness by the Department of that sample's Offered Admission dates for competency evaluations or restoration treatment. The Independent Consultant shall include its findings of each audit in its quarterly reports. All reports issued by the Independent Consultant shall be confidential, other than DLC's use pursuant to their authority as PAIMI under 42 C.F.R. §§ 51.45- 51.46. .

(c)    <u>Review and Evaluation of Data and Information</u>.  The Independent Consultant shall review and evaluate the Department's compliance with the timeframe requirements of Paragraph 2 of the Agreement. The Department shall provide the Independent Consultant with copies of the monthly reports in accordance with Paragraph 3(c) of this Agreement.  The Department will provide the Independent Consultant access to documents or other information that are reasonably related to the Independent Consultant's review and evaluation of the Department's compliance with the timeframe requirements of Paragraph 2 of this Agreement. Upon request, DLC will be provided with copies of the same documents or other information received by the Independent Consultant and that are reasonably related to the Independent Consultant's review and evaluation of the Department's compliance with the timeframe requirements of Paragraph 2 of this Agreement. The Consultant shall, within the year 2016 upon reasonable notice, make an initial in-person visit to the Department's facilities related to the provision of competency evaluations and restorative treatment, to coincide with the 2016 quarterly meeting. The Consultant shall visit the facilities once a year thereafter, and shall coincide those visits with a quarterly meeting as indicated in Section 3(d). If the parties agree that additional in-person visits are necessary, the Independent Consultant shall make additional visits. Upon reasonable notice and agreement by the parties, the Independent Consultant may conduct confidential discussions with personnel at the facilities whose positions are reasonably related to the Consultant's review and evaluation of the Department's compliance with the Agreement.  The Independent Consultant shall, upon reasonable notice, be provided with access to the Pre-Trial Detainees and their records and files, with express written consent from the Pretrial Detainee.  If a dispute arises related to the timeframe requirement of Paragraphs 2 of this Agreement and DLC subsequently seeks judicial enforcement of this Agreement as a result, DLC and its counsel shall have access to all information provided to or collected by the Independent Consultant.  All private health information provided pursuant to the terms of this paragraph 7(c) shall be kept confidential.  In any release of information to the court, private health information shall be redacted by the submitting party, to protect that information.

(d)    <u>Compliance</u>. In the event the Independent Consultant determines that the Department is not in compliance with the timeframe requirements of Paragraph 2 of this Agreement, the Independent Consultant shall promptly meet and confer with the Department in an effort to identify steps to achieve compliance. In the event that DLC believes that the

Department is not complying with the timeframe requirements of this Agreement, DLC shall first notify the Department of such alleged non-compliance. If the Department is unable to provide DLC with sufficient information to demonstrate compliance, DLC shall then notify the Independent Consultant of the potential non-compliance. The Independent Consultant shall review DLC's claims of actual or potential non-compliance. The Independent Consultant shall investigate and may also meet and confer with the Department and DLC, as he or she deems appropriate in his or her professional judgment, in an effort to obtain the Parties' agreement on steps necessary to achieve compliance with the timeframe requirements of Paragraph 2 of this Agreement. If the Independent Consultant and Parties agree to the steps proposed, they shall be memorialized in writing. In the event the Independent Consultant is unable to reach agreement between the Department and DLC, either party may seek appropriate relief from the Court to enforce the timeframe requirements of Paragraph 2 of this Agreement.

(e)    <u>Compensation of the Independent Consultant</u>. Subject to the provisions of paragraph 7(d) above, the Department shall compensate the Independent Consultant and his or her staff at the rates agreed upon by the Independent Consultant and Department as set forth in the purchase order agreement between the same. The Department shall reimburse all reasonable expenses of the Independent Consultant and Independent Consultant's staff consistent with the State's procurement guidelines and Department policy.

(f)    <u>Duration of Engagement</u>. The Independent Consultant shall be retained for the duration of this Agreement

**8.    Payment of Attorneys' Fees and Costs.**  Part of the effect of this Agreement is to settle all matters outlined or referenced in this Agreement as to the Parties up to the date the Agreement is finalized.  Accordingly, the Department, through the Colorado Division of Risk Management, agrees to pay Plaintiffs' Counsel the lump sum amount of  $196,000.00 Dollars) in full and final settlement of all costs and fees, including attorney fees, incurred by the Plaintiffs' Counsel up to and including the date this Agreement is finalized and signed by all Parties hereto ("Settlement Payment").  Plaintiffs' Counsel shall enter into a binding settlement agreement related to the Settlement Payment, which agreement shall be on the then-current, Controller-approved standard settlement agreement form substantially in the form attached to this

Agreement as Appendix 2.  The Settlement Payment shall be paid to Eytan Nielsen LLC as follows:  A warrant in the amount of $196,000.00 will be made payable to Eytan Nielsen LLC. The warrant will be delivered to Eytan Nielsen LLC within thirty days after the date this Agreement and the Controller-approved settlement document are finalized and signed by all Parties and the Controller.  No withholding for payment of federal, state or local taxes will occur respecting any warrant issued pursuant to this Agreement.  Eytan Nielsen LLC  will complete, execute and provide an original of I.R.S. form W-9 in conjunction with submitting the required signed version of the settlement agreement as an initial step in completing the arrangements described here.  A Form 1099 will be issued to Eytan Nielsen LLC  on the Settlement Payment. The Settlement Payment made hereunder shall not be designated as wages, salary or back pay, but is instead made in compromise of all claims arising from or related to the subject matter of this Agreement for those matters up to and including the date this Agreement is fully executed.

**9.     Effective Date of the Agreement**.  The Effective Date of this Agreement shall be the date of last signature on the execution pages below.

**10.     Remedies by Pretrial Detainees Not Precluded.**  Nothing in this Agreement limits a Pretrial Detainee, or his or her counsel, from bringing other court action, such as contempt of court proceedings, if the circumstances warrant such action.  In any court action brought by a Pretrial Detainee for contempt of court, the Department retains all defenses to such action, including but not limited to those attending Rule 107, C.R.C.P.

**11.     Contempt Actions Against Other Agencies, Non-Complying Sheriff's Offices, District Attorney's Offices, and Defense Counsel Not Precluded.**  Nothing in this Agreement precludes a court from issuing contempt citations to Sheriffs for failing to comply with orders to transport Pretrial Detainees to or from the Hospital, District Attorneys for violating timelines ordered by courts to provide Collateral Materials, and defense attorneys who fail to comply with orders related to Competency Evaluations and admission for Restorative Treatment.

**12.     Joint Activities of the Parties to Educate State Judiciary, District Attorneys, Defense Attorneys, and County Sheriffs.**  The Parties and their counsel will work together in good faith to ensure the cooperation of other interested groups—such as the State Judiciary,

District Attorneys, Public Defenders, and County Sheriffs—in the successful implementation of this Agreement.

      **13.**    **No Admission of Liability.**  The Parties' agreement to the terms of this Agreement shall in no manner be deemed an admission, express or implied, of (a) liability by any Party to any other person or entity; (b) any fact, other than the facts set forth in the recitals to this Agreement; and (c) the merits of the position taken by any Party with respect to any matter.

      **14.**    **Release by DLC.** DLC hereby releases the Department from all claims and demands known or unknown related to the subject matter of this Action as of the date of execution of this Agreement, including those asserted in its Motion to Reopen filed in the Action on October 28, 2015.  This release does not, however, limit in any way the Parties' right to enforce this Agreement in the future.

      **15.**    **Representations and Warranties.**  Each Party to this Agreement represents, warrants, and agrees as to itself as follows:

      (a)    It has fully and carefully reviewed this Agreement prior to its execution by an authorized signatory;

      (b)    It has consulted with its attorneys regarding the legal effect and meaning of this Agreement and all terms and conditions hereof, and that it is fully aware of the contents of this Agreement and its legal effect;

      (c)    It has had the opportunity to make whatever investigation or inquiry it deems necessary or appropriate in connection with the subject matter of this Agreement;

      (d)    It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claims that it might have against the other; and

      (e)    It is executing this Agreement voluntarily and free from any undue influence, coercion, duress or fraud of any kind.

      **16.**    **Complete Agreement; Modification; and Waiver.**  This Agreement constitutes the entire agreement between the Parties and supersedes all prior and contemporaneous

agreements, representations, warranties, and understandings of the Parties.  This Agreement replaces and supersedes the Settlement Agreement executed by the Parties on April 6, 2012 in its entirety.  No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all Parties.  No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

17.    **Authority of the Signatories.**  The Signatories hereto represent and warrant that they have the power and authority necessary to execute this Agreement and bind the Party they represent to the terms of the Agreement.

18.    **Multiple Counterparts.** This Agreement may be executed in a number of identical counterparts, each of which for all purposes is deemed an original, and all of which constitute collectively one agreement. The Parties intend that faxed signatures and electronically-imaged signatures such as PDF files shall constitute original signatures and are binding on all Parties.   An executed counterpart signature page delivered by facsimile or by electronic mail shall have the same binding effect as an original signature page. This Agreement shall not be binding until all Parties have signed and delivered a counterpart of this Agreement whether by mail, facsimile, or electronic mail.

19.    **Successors, Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and the Parties' respective heirs, legal representatives, successors, and assigns.

20.    **Notices.** Any notice or other communication required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when (a) mailed by United States registered or certified mail, return receipt requested, (b) mailed by overnight express mail or other nationally recognized overnight or same-day delivery service, (c) sent as a PDF attachment to electronic mail, or (d) delivered in person, to the Parties at the following addresses:

If DLC, to:

        Disability Law Colorado
        455 Sherman Street, #130
        Denver, Colorado 80203

        Attention:     Mark Ivandick
                        mivandick@disabilitylawco.org
                        Jennifer Purrington
                        jpurrington@disabilitylawco.org

With a copy to:

        Iris Eytan, Esq.
        EYTAN NIELSEN LLC
        3200 Cherry Creek South Drive
        Denver, CO 80209
        iris@eytan-nielsen.com

If the Department, to:

        Department of Human Services
        1575 Sherman Street
        Denver, Colorado 80203

        Attention:     Reggie Bicha
                        reggie.bicha@state.co.us

If the Hospital, to:

        Colorado Mental Health Institute at Pueblo
        1600 West 24th Street
        Pueblo, Colorado 81003
        Attention:     Superintendent: Ronald B. Hale
                        ronald.hale@state.co.us

With a copy to:

        Office of the Attorney General
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 6th Floor
        Denver, CO 80203

Attention:    Tanya Wheeler
tanja.wheeler@coag.gov

Libbie McCarthy@coag.gov
libbie.mccarthy@coag.gov

Lauren Peach
lauren.peach@coag.gov

A Party may change the names or address where notice is to be given by providing notice to the other Parties of such change in accordance with this Paragraph 20.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year so indicated.

[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

*Center for Legal Advocacy, d/b/a Disability Law Colorado*

Name:   MARK J. IVANDICK

Title:   Managing Attorney

Dated:   7-28-2016

_____

*Colorado Department of Human Services*

Name:   Reggie Bicha

Title:   Executive Director, in his official capacity

Dated:

_____

*Colorado Mental Health Institute at Pueblo*

Name:   Ronald B. Hale

Title:   Superintendent, in his official capacity

Dated:

_____
*Center for Legal Advocacy, d/b/a Disability Law Colorado*

Name:

Title:

Dated:

_____
*Colorado Department of Human Services*

Name:  Reggie Bicha

Title:   Executive Director, in his official capacity

Dated:   7-27-2016

_____
*Colorado Mental Health Institute at Pueblo*

Name:  Ronald B. Hale

Title:   Superintendent, in his official capacity

Dated:

-21-

_____

*Center for Legal Advocacy, d/b/a Disability Law Colorado*

Name:

Title:

Dated:



_____

*Colorado Department of Human Services*

Name:   Reggie Bicha

Title:   Executive Director, in his official capacity

Dated:



_____

*Colorado Mental Health Institute at Pueblo*

Name:   Ronald B. Hale

Title:   Superintendent, in his official capacity

Dated:   7. 28. 16