# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.** 11-CV-02285-NYW

CENTER FOR LEGAL ADVOCACY, d/b/a
DISABILITY LAW COLORADO**,**

     Plaintiff**,**

**v.**

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and

RONALD B. HALE,
in his official capacity as Superintendent
of the Colorado Mental Health Institute at Pueblo**,**

     Defendants**.**

---

**DECLARATION OF JENNIFER L. PURRINGTON**

---

    I, Jennifer L. Purrington, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an attorney for the Denver office of The Center for Legal Advocacy d/b/a Disability Law Colorado ("DLC") and formerly known as The Legal Center for People with Disabilities and Older People. I have worked at DLC since August of 2012, and I was admitted to the Colorado State Bar in October of 2012 (Colorado Attorney Registration #44901). I have personal knowledge of, and am competent to testify concerning, the matters addressed in this declaration.

2. The parties filed the operative Amended and Restated Settlement Agreement (the "Settlement Agreement") with the Court on July 28, 2016. Dkt. 78-1. Under the Settlement Agreement, the Colorado Department of Human Services (the "Department"), which includes and oversees the Colorado Mental Health Institute at Pueblo ("CMHIP"), has been responsible for making monthly monitoring reports to DLC. The Department had similar reporting obligations under the parties' prior settlement agreement in this action and first started reporting in August of 2012. Each report is due on the seventh day of each

month following the reporting month, or on the next business day if the seventh day of the month fell on a weekend or holiday.

3. I have personally monitored and analyzed all monthly reports DLC has received from the Department since approximately the Fall of 2012.

4. The Settlement Agreement specifies the following timeframes:

    a. The Department shall Offer Admission to Pretrial Detainees to the Hospital for Restorative Treatment or Inpatient Competency Evaluation no later than 28 days after the Pretrial Detainee is Ready for Admission, and shall maintain a Monthly Average of 24 days or less for both types of Offers of Admission. Compliance with this measure shall be calculated based on the number of Days Waiting for each Pretrial Detainee.

    b. The Department shall complete all Out-Patient Competency Evaluations of a Pretrial Detainee no later than 30 days after the Hospital's receipt of a Court Order directing the evaluation and receipt of Collateral Materials. This timeframe requirement shall apply to the following counties: Boulder, Arapahoe, Douglas, Pueblo, Denver, Broomfield, Larimer, Weld, Adams, Jefferson, Alamos, El Paso, Fremont, Custer, Huerfano, Otero, Teller, Elbert and Crowley. Counties not specifically identified, are counties that use the "hold and wait" court ordered process. Counties utilizing the Hold and Wait Evaluation process will be offered a meeting date within 30 days of the Hospital's receipt of the Court Order and Collateral Materials, and the evaluation will be completed within 30 days of the meeting.

5. The monthly monitoring report includes several lists.

    a. Report A lists all pretrial detainees in Colorado state court actions for whom the court has found that the detainee is incompetent to proceed and must be transported to CMHIP or the Department's facility in Arapahoe County for restorative treatment. The report details the detainee, his/her charges and case information, the date of the court order, when the Department received the order plus collateral materials, when the Department deems the detainee ready for admission, the Settlement Agreement's deadline to admit the detainee, the date Defendants offer admission, the ultimate admission date, and the number of days waiting.

    b. Report B is the list of detainees whose competency to proceed has been raised and are awaiting evaluation by the Department at CMHIP or the Arapahoe County facility, termed "inpatient." This information tracks the data inputs on Report A.

    c. Report C is the list of detainees whose competency to proceed has been raised and are awaiting evaluation by the Department in the jail where the detainee is located, termed "outpatient." The report details the detainee, his/her charges and case information, the date of the court order, when the Department received the order

plus collateral materials, when the Department deems the detainee ready for evaluation, the date the evaluator signs the report, and the number of days waiting.

    d.  Report D is a list of Individual Special Circumstances, when they exist, as defined in the Settlement Agreement.

6. I review the monthly reports and calculate from the data therein, whether Defendants are complying with the timeframes agreed to in the Settlement Agreement for inpatient restorations (using Report A), inpatient competency evaluations (using Report B), and outpatient evaluations (using Report C).

7. Less than a year after the parties entered the Settlement Agreement, Defendants failed to meet the timeframes set forth in the Settlement Agreement for inpatient restorations and inpatient competency evaluations. As a result, on June 22, 2017, Defendants invoked Departmental Special Circumstances under the Settlement Agreement. A true and correct copy of the Notice of Invocation of Departmental Special Circumstances dated June 22, 2017 that DLC received from the State is attached hereto as **Exhibit A**. In the June 22, 2017 Notice of Invocation of Departmental Special Circumstances, Defendants claimed that they could not comply with the Settlement Agreement's timeframes due to "an unanticipated spike in court-ordered referrals for inpatient competency evaluation and restoration treatment services."

8. On December 22, 2017—the day the Department's six month suspension period was set to expire—the Department sent DLC another notice of invocation of Departmental Special Circumstances. A true and correct copy of the Notice of Invocation of Departmental Special Circumstances dated December 22, 2017 that DLC received from the State is attached hereto as **Exhibit B**. In that notice, the Department claimed Departmental Special Circumstances due to an "unabated" and "sustained increase" in court orders for evaluation and restoration as the reason why the Department remained unable to comply with the evaluation and restoration timeframes set forth in the Settlement Agreement.

9. Defendants are out of compliance with the timeframes set forth in the Agreement. In his September 2017 report, the Independent Expert charged with overseeing Defendants' compliance with the Settlement Agreement concluded that "currently the State is clearly failing to meet the deadlines contained in the Settlement Agreement." A true and correct copy of the September 4, 2017 Report of Independent Expert, Joel A. Dvoskin, Ph.D., ABPP (Forensic) that Plaintiff received from the State is attached hereto as **Exhibit C**.

10. Since June 2017, Defendants have failed to admit all pretrial detainees for restorative treatment with 28 days of their ready for admission date and failed to maintain a monthly average of 24 days. The monthly reports are now voluminous and exceed 100 pages each. Instead of attaching a year's worth of these reports, I have attached a summary of those monthly reports in the below chart. I can provide the Court with a copy of all of these monthly reports (after redacting personal information) upon request.

11. The below table summarizes the data in the monthly reports (Report A) that DLC received

from the State between June 2017 and May 2018 related to inpatient restoration. The first column is the number of detainees on that monthly report who had been waiting for inpatient restoration services in excess of 28 days, the Settlement Agreement's limit. The next column is the average (mean) wait time of all detainees who were transported that month for inpatient restoration or otherwise exited the waiting list (because, for example, the prosecution dropped the charges and the detainee was released). The final column is the longest wait time of any pretrial detainee waiting for inpatient restoration services on that monthly report.

| Month | Detainees on Wait List, 28+ Days | Average Wait Time | Longest Wait Time |
|---|---|---|---|
| June 2017 | 3 | 23.93 | 29 |
| July 2017 | 19 | 28.12 | 45 |
| August 2017 | 87 | 37.35 | 56 |
| September 2017 | 104 | 47.26 | 68 |
| October 2017 | 120 | 58.17 | 88 |
| November 2017 | 144 | 66.46 | 87 |
| December 2017 | 170 | 67.14 | 129 |
| January 2018 | 177 | 72.84 | 129 |
| February 2018 | 193 | 74.51 | 114 |
| March 2018 | 221 | 90.24 | 133 |
| April 2018 | 213 | 87.34 | 136 |
| May 2018 | 206 | 93.98 | 142 |

12. It is estimated that 25-30% of pretrial detainees listed in the Department's reports are individuals being held in jail as a result of an arrest on a petty, misdemeanor, non-violent, or drug offense. Tragically, the length of their detention while waiting for an evaluation or treatment exceeds what jail sentence they likely would have received if they had pled guilty on the day they were arrested. Many of these pretrial detainees are seriously mentally ill and in danger of harming themselves or others, and are victimized by other detainees as they wait for a humane environment to be evaluated and treated.

13. In 2015, Defendants did not comply with the timeframes in the parties' previous settlement agreement for ten of twelve months. In 2016, Defendants were out of compliance for five out of twelve months. In 2017, Defendants were out of compliance for the last seven months of the year. It appears that Defendants will not come back into compliance until, at the earliest, July 2019. The result will be a five-year period in which Defendants have spent more time out of compliance than in compliance.

14. Using another monthly report sent by Defendants, I created the following table, which shows the monthly totals of new inpatient evaluations and restorations between June 2016 and May 2018. For "inpatient," I included evaluations and restorations which occurred at CMHIP or CMHIP's facility in Arapahoe County called RISE, which is how the parties have defined inpatient.

| Fiscal Year | In Patient Competency Evaluations | In Patient Restorations |
|---|---|---|
| June 2016 | 25 | 45 |
| July 2016 | 21 | 47 |
| August 2016 | 32 | 46 |
| September 2016 | 25 | 53 |
| October 2016 | 28 | 43 |
| November 2016 | 23 | 72 |
| December 2016 | 24 | 48 |
| January 2017 | 27 | 58 |
| February 2017 | 28 | 58 |
| March 2017 | 27 | 54 |
| April 2017 | 29 | 75 |
| May 2017 | 26 | 84 |
| June 2017 | 37 | 73 |
| July 2017 | 22 | 66 |
| August 2017 | 31 | 76 |
| September 2017 | 30 | 66 |
| October 2017 | 25 | 66 |
| November 2017 | 19 | 76 |
| December 2017 | 14 | 68 |
| January 2018 | 19 | 77 |
| February 2018 | 17 | 78 |
| March 2018 | 30 | 65 |
| April 2018 | 9 | 71 |

15. I created the following table based on information Defendants provided to DLC in previous court filings and in our meetings during the last year. This table shows the number of referrals for in-patient evaluation and restoration for each fiscal year from 2005 through 2017 and the percentage of change on an annual basis.

| Fiscal Year | In Patient Competency Evaluations | % Change | In Patient Restorations | % Change |
|---|---|---|---|---|
| 2005-06 | 115 | - | 167 | - |
| 2006-07 | 144 | 25.2% | 224 | 34.1% |
| 2007-08 | 184 | 27.8% | 219 | -2.2% |
| 2008-09 | 238 | 29.3% | 170 | -22.4% |
| 2009-10 | 275 | 15.5 | 212 | 24.7% |
| 2010-11 | 276 | 0.4% | 213 | 0.5% |
| 2011-12 | 287 | 3.9% | 268 | 25.8% |
| 2012-13 | 355 | 23.7% | 274 | 2.2% |
| 2013-14 | 378 | 6.4% | 342 | 24.8% |
| 2014-15 | 415 | 9.7% | 462 | 35.1% |
| 2015-16 | 326 | -21.4% | 550 | 19.0% |
| 2016-17 | 327 | 0.3% | 711 | 29.3% |

16. At DLC's suggestion, the State sent letters to judges and attorneys involved in 15 cases since April 2018.  In the letters, the State admits that it is holding pretrial detainees in jail for months whom it concedes would be better served in the community.  Sadly, the effort has not been as successful as it could have been because the State has failed to partner with community mental health centers—for example, the letters fail to provide a judge any direction on what resources exist in the court's community if the detainee were to be released.  True and correct copies of these letters are attached hereto as **Exhibit D**.

Signed: _____                                   Date: __6/13/18_____
Jennifer L. Purrington

# EXHIBIT A



Nancy VanDeMark, Ph.D., Director, Office of Behavioral Health

June 22, 2017

Disability Law Colorado
Attention:  Mark Ivandick
Attention:  Jennifer Purrington
455 Sherman Street #130
Denver, CO 80203

RE: *Center for Legal Advocacy d/b/a The Legal Center for People with Disabilities and Older People v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services and Ron Hale, in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11cv-02285-BNB (D. Col.)

SUBJECT:  Notice of Invocation of Departmental Special Circumstances

Dear Mr. Ivandick and Ms. Purrington:

This correspondence serves as the Colorado Department of Human Services' (CDHS) Notice of Invocation of Departmental Special Circumstances (DSC) in the above referenced case. DSC is being invoked pursuant to paragraph 6(c) of the Amended and Restated Settlement Agreement (Agreement).

Basis for Invoking Departmental Special Circumstances

CDHS may invoke DSC when "circumstances beyond the control of the Department impact the Department's ability to comply with the timeframes" set forth in the Agreement. This could mean "an unanticipated spike in referrals, a national or statewide disaster impacting admissions decisions system wide," or other "unique and often unforeseen" events.

CDHS is in compliance with all timeframes set forth in the Agreement. However, circumstances beyond the control of the Department are expected to impact the Department's ability to remain in compliance. Specifically, CDHS has experienced an unanticipated spike in court-ordered referrals for inpatient competency evaluation and restoration treatment services. Accordingly, CDHS is invoking DSC.

On March 31, 2017, First Assistant Attorney General Tanja Wheeler and Assistant Attorney General Lauren Peach contacted Jennifer Purrington by telephone as a courtesy to let Disability Law Colorado

(DLC) know that the Colorado Mental Health Institute at Pueblo was under tremendous pressure related to the volume of court-ordered referrals for competency evaluation and restoration treatment services. At that time, CMHIP was closely reviewing the data and various pressure points to assess what was causing the potential problem. Ms. Purrington was informed that based on a cursory review of the daily data, it appeared the volume of orders for restoration treatment was outpacing orders for competency evaluations, potentially causing a backlog due to disparate length of stay related to each type of order. At the time, the data appeared to show a steady increase in orders, rather than a spike.

On May 8, 2017, the parties and independent consultant, Dr. Joel Dvoskin, met for a quarterly meeting, as required by the Agreement. At that time, CMHIP again raised the issue of an increase in court ordered referrals for competency evaluation and restoration treatment services. Additionally, Dr. Patrick Fox reviewed data (presented in the chart included here as Attachment A) evidencing the same upward trend observed in March.

Neither the upward trend in March or May was deemed sufficient by CDHS to warrant invoking DSC. However, between May and June 2017, CDHS has experienced an unanticipated spike in court ordered referrals, supporting invocation of DSC at this time.

CDHS tracks the number of court ordered referrals in the regular course of business, in order to anticipate CMHIP's future needs. This tracking informs decision-making regarding both regular and supplemental budget requests to the Joint Budget Committee and overall staffing allocations throughout CMHIP. In order to best plan for the future, CDHS projects growth as far as six fiscal years into the future.

For fiscal year 2016-2017, CMHIP was projected to receive 318 orders for inpatient competency evaluations and 541 orders for inpatient restoration treatment services. These projections are based on the rate of court referrals reported so far in the current fiscal year. *See* Attachment A.

In addition to reviewing data by fiscal year, CMHIP also projects the number of anticipated court-ordered referrals by month. During June 2016, CMHIP received 25 court-ordered referrals for competency evaluations (data is included here in Attachment B). These numbers informed the projections for the same month in 2017. CMHIP projected receiving 33 court ordered referrals for competency evaluations in June 2017. Similarly, CMHIP projected 53 referrals for inpatient restoration treatment in June 2017. *See* Attachment B.

Based on these projections, CMHIP anticipated receiving 86 total court ordered referrals for inpatient competency evaluations and restoration treatment, in June 2017. On June 14, 2017 CMHIP recalculated its projections based on the number of orders received, and is now projected to receive 103 referrals in June 2017. *See* Attachment B. This number also reflects an increase in the projected referrals specifically attributable to orders for inpatient competency evaluations. In May 2017 CMHIP received 26 referrals for inpatient competency evaluations, but for June 2017, is now on pace to receive 41. *See* Attachment B.

2

Both the increase in projected combined inpatient referrals from 86 to 103, and the increase in inpatient competency referrals from 26 in May to a projected 41 in June, represent an unanticipated spike in referrals.

A steady increase in the number of orders for inpatient restoration treatment is further exacerbating the pressure on CMHIP to meet the Agreement timeframes. Completing restoration treatment takes significantly longer than completing a competency evaluation. CMHIP received 450 court ordered referrals for inpatient restoration treatment in fiscal year 2015-2016; as of June 14, 2017, 487 orders have already been received.

The bottom line is this: CMHIP has experienced an unanticipated spike in referrals for inpatient competency evaluation and restoration treatment services, at the same time that it is experiencing a decrease in the number of discharges, resulting in fewer beds available to meet the demand.

Each of these factors is a circumstance beyond the Department's control, and is the basis for CDHS's invocation of Departmental Special Circumstances.

Plan to Remedy Departmental Special Circumstances

The Department has identified long and short-term options to keep pace with the referrals for inpatient competency evaluation and restoration treatment and the mechanisms available for funding these options.  CDHS is continuously reviewing all options, including funding, and will approach the Joint Budget Committee in September or December if necessary.

The most innovative of the near term options being explored includes contracts with private hospitals to complete restoration treatment for low risk patients or for the transfer of civil patients to increase inpatient capacity at both state mental health institutes, expansion of jail-based restoration treatment, and further streamlining competency evaluation processes at CMHIP. The Department has discussed the potential for contracts with four Colorado hospitals to enable the Department to rapidly expand capacity. The Department met with David Morris, CEO of Denver Springs Hospital, a 96-bed psychiatric hospital slated to open in August 2017, to explore the possibility of utilizing one of their inpatient units to meet the Department's current need.  The Department has also contacted the CEOs of Cedar Springs, Centennial Peaks, and Highlands Behavioral Health to explore the immediate use of available bed capacity at each of these facilities.  CDHS is also considering approaching several other public and private hospitals regarding potential partnerships.

The Department will also continue to work collaboratively with state Judicial to ensure that inpatient competency evaluation orders follow the current requirements of 16-8.5-105, C.R.S. This includes efforts such as educating individual courts, defense attorneys, and prosecutors on the new criteria for admission to CMHIP, for inpatient competency evaluations.  CMHIP has seen an increase in the amount of pretrial detainees ordered for admission who have low level charges. When this happens, Court Services staff contact the clerk asking if the evaluation can take place in the community versus CMHIP, to ensure

inpatient beds are being utilized for the most ill individuals and that services are being provided in the least restrictive setting.

Additionally, in light of conversations between CDHS and State Judicial, ongoing training is provided to clerks and new judges regarding the statutory amendments; we have proposed to State Judicial that this topic be discussed again during the upcoming fall Judicial Conference. Related, State Judicial and CMHIP Court Services staff will be conducting joint training for clerks around the state, focusing in part on court orders for competency evaluations.

Projected Timeframe for Resolution

As stated in Paragraph 6(c), DSC commences on June 22, 2017, contemporaneously with the transmission of this Notice of Departmental Special Circumstances. As a result, the timeframe requirements of the Agreement are automatically suspended until December 22, 2017. However, CDHS may terminate DSC prior to that date, upon written notice to DLC of its intent to do the same.

Thank you for your attention to this matter. CDHS looks forward to conferring with you and Dr. Dvoskin to review the reasons for invocation of DSC and resolve questions you may have about the circumstances that triggered this Notice.

Sincerely,

Dr. Nancy VanDeMark
Director, Office of Behavioral Health

cc:     Dr. Joel Dvoskin, independent consultant
        Iris Eytan, Eytan Nielsen LLC
        Ron Hale, Superintendent, CMHIP
        Dr. Patrick Fox, Chief Medical Officer, CDHS
        Anthony Gherardini, Deputy Executive Director of Operations, CDHS

Attachment A



# Number of Inpatients in Beds at Fiscal Year End vs Competency Evaluation and Restoration Orders - CMHIP

*Projected orders for FY17, bed utilization as of 3/28/17



COLORADO
Office of Behavioral Health
Department of Human Services

Attachment B

Orders for CDHS Forensic Evaluations (sanity, competency, mental condition, etc.) and ITP Referrals (Competency Restorations) per Fiscal Year

| Month | Referred Evaluations | | | | | Referred Restorations (ITP) | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | In Patient | | Out Patient | | | In Patient | Out Patient | ITP Total |
| | Comp | Inpatient Eval Total | Comp | Outpatient Eval Total | Eval Total | | | |
| May 2016 | 18 | 25 | 107 | 116 | 141 | 38 | 24 | 62 |
| June 2016 | 25 | 31 | 121 | 136 | 167 | 33 | 21 | 54 |
| May 2017 | 26 | 28 | 163 | 184 | 212 | 72 | 31 | 103 |
| June 2017 as of 6/14 | 19 | 19 | 61 | 67 | 86 | 29 | 10 | 39 |
| June 2017 projected (based on year-to-date data) | 33 | 35 | 136 | 148 | 183 | 53 | 25 | 78 |
| June 2017 projected (based on June-to-date data) | 41 | 41 | 131 | 144 | 184 | 62 | 21 | 84 |

# EXHIBIT B



Robert Werthwein, Ph.D., Director, Office of Behavioral Health

December 22, 2017

Disability Law Colorado
Attention:  Mark Ivandick
Attention:  Jennifer Purrington
455 Sherman Street #130
Denver, CO 80203

RE: *Center for Legal Advocacy d/b/a Disability Law Colorado v. Reggie Bicha, in his official capacity as Executive Director of the Colorado Department of Human Services and Ron Hale, in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo*, Case No. 11cv-02285-BNB (D. Col.)

SUBJECT:  Notice of Invocation of Departmental Special Circumstances

Dear Mr. Ivandick and Ms. Purrington:

The Colorado Department of Human Services (the Department) hereby provides notice that it is invoking Departmental Special Circumstances (DSC) in the above referenced case. The Department has received your counsel's correspondence dated December 22, 2017, alleging that the current term of DSC expires today and the Department is in breach of the Amended and Restated Settlement Agreement (Agreement). The Department respectfully disagrees. *See* Agreement at ¶ 6(c).

The Department is invoking DSC pursuant to paragraph 6(a)(ii) of the Amended and Restated Settlement Agreement (Agreement). As agreed upon by the parties and stated in the Agreement, Departmental Special Circumstances means "circumstances beyond the control of the Department which impact the Department's ability to comply with the timeframes set forth in [the Agreement]. This could mean an unanticipated spike in referrals, a national or statewide disaster impacting admissions decisions system wide. These examples are provided for illustration only. Departmental Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events." *See* Agreement at ¶ 6(a)(ii).

**Basis for Invoking Departmental Special Circumstances**

Currently, the volume of court orders for inpatient competency evaluation or restoration treatment is outpacing Department capacity at an unabating rate, which is a circumstance beyond the Department's control. The Department is mobilizing a multi-faceted strategy to leverage more resources and engage a diverse group of stakeholders, and continues to admit pretrial detainees as capacity allows. However, the

Department cannot single-handedly curb the inflow of court orders. As such, and in accordance with the Agreement, the Department is invoking DSC.

In May and June 2017, the Department experienced an unanticipated spike in the number of court orders for inpatient competency evaluation and restoration treatment services, at the same time that it experienced a decrease in the number of discharges. As soon as the Department identified the spike in court orders, in June 2017, the Department took steps to request the allocation of additional state resources through the emergency supplemental budget process to manage the unanticipated increase in court orders. At the time, the Department did not know that the increase in June represented a new normal in the number of court orders, as opposed to a temporary anomaly.

Since then, the courts have continued to order pretrial detainees for inpatient restoration services at the same elevated level. Had the number of court orders for inpatient restoration services returned to the rate of growth seen prior to May 2017, the Department had sufficient resources to resume offering admission to pretrial detainees within the timeframes required by the Agreement. However, the rate of growth did not decline, and instead has remained at an elevated level. The unabated increase in restoration orders, which take significantly longer to complete than competency evaluations,[1] has reduced the number of beds available to accommodate new competency evaluation and restoration orders. Data reflecting the sustained increase in inpatient restoration orders is attached. *See* Attachment A – Competency and Restoration Referrals YTD.

In summary, the sustained increase in the number of court orders for inpatient competency restoration treatment has outpaced the Department's capacity and is beyond its control. The Department has conferred with Dr. Joel Dvoskin, the Independent Consultant on this case, concerning this invocation of DSC. Dr. Dvoskin agrees with the Department's basis for invoking DSC. However, he is interested in working with DLC and the Department to explore further the plan to remedy DSC laid out below, to assess whether the plan is complete or if there are additional options that both the Department and DLC can pursue.

**Plan to Remedy Departmental Special Circumstances**

Over the past six months, the Department has worked diligently and creatively to devise and implement strategies to enable it to timely offer admission to pretrial detainees for competency evaluations and restoration treatment. In light of the sustained increase in the number of court orders for inpatient restoration treatment, the Department has identified multiple additional options, which together the Department believes will ultimately allow it to keep pace with the orders for inpatient competency restoration treatment.

---

[1] The average length of stay for a pretrial detainee receiving restoration treatment at the Colorado Mental Health Institute at Pueblo (CMHIP) in FY2016-17 was 141.2 days (compared to 38.9 days for a competency evaluation). This results in fewer beds available to meet the demand caused by inpatient orders.

Resource Development and Legislative Proposals

During the 2017 legislative session, the Department introduced a bill to increase the availability of outpatient restoration services. The proposal designated the Office of Behavioral Health as the state entity responsible for the oversight of restoration education and coordination of clinical services to restore defendants to competency in the community. By designating a specific state entity for oversight of community restoration and providing funding to deliver restoration services, the Department believed that the courts would order a greater number of individuals to receive outpatient restoration, instead of inpatient competency restoration, as is currently the practice. Although the bill passed, the General Assembly struck the funding to provide outpatient competency restoration services. In late September 2017, the Department submitted an emergency supplemental to the Joint Budget Committee (JBC), requesting additional funding in part to address challenges meeting the Agreement timeframes. Consequently, the JBC approved $479,711 in FY2017-18 and $1,177,767 annually, so that the Department could begin providing outpatient competency restoration services sooner. The Department is currently procuring a vendor to provide statewide outpatient competency restoration services, and anticipates that the system will be operational by May 2018. Until then, the Department is contracting with vendors through single case agreements to provide outpatient competency restoration services on a case-by-case basis, and has set aside some of the FY2017-18 appropriation to accomplish this.

Additionally, as a result of the FY2017-18 Figure Setting in March 2017, CMHIP received $0.9 million as of July 1, 2017 and $1.2 million ongoing, to move adolescent patients at CMHIP from their current unit to the Sol Vista building, which is better designed to meet their needs (the Circle Program formerly occupied the Sol Vista building). Because of the move, the hospital's forensic capacity will be increased by an additional 20 beds. The Department expects that the additional 20 beds will be available for use by March 2018.

The Department also requested emergency supplemental funds in September 2017. The approved funds are documented in the JBC's *Interim Supplemental Budget Requests FY 2017-18 for the Department of Human Services (Office of Behavioral Health)*. Those funds include*, in relevant part,* the following:

- *Expansion of CMHIP Forensic Unit:* The FY2017-18 Long Bill includes $5.4 million in capital construction funding to add 24 beds in the CMHIP high security forensic facility (designated as the L2 unit). These beds are designed to serve patients with high acuity and security needs, and are anticipated to become operational in FY2020-21.

- *Law Enforcement Assisted Diversion (LEAD) pilot programs:* The FY2017-18 Long Bill includes $2.6 million to support four LEAD pilot programs. LEAD is an evidence-based pre-booking diversion program that offers low-level drug offenders case management and other supportive services as an alternative to jail and prosecution.

3

Program participants are assessed and then receive ongoing case management services, are connected with existing resources in the community (e.g., legal advocacy, job training or placement, housing assistance, counseling).

- *Mental Health Services for Juvenile and Adult Offenders:* The FY2017-18 Long Bill includes an increase of $2.4 million to allow community mental health center staff in every region to provide case management and treatment services, wrap-around services, and medications (that are not covered by Medicaid) for juvenile and adult offenders who have mental health problems.

- *Senate Bill 17-019 (Behavioral Health Medication for Persons in the Criminal Justice System):* This act seeks to improve medication consistency for individuals in the criminal justice system by authorizing the establishment of a medication formulary, cooperative purchasing of medication, and the sharing of patient-specific mental health care and treatment information.

- *Senate Bill 17-021 (Assistance to Persons with Mental Illness in the Criminal Justice System):* The act establishes a housing program for persons with a behavioral or mental health disorder transitioning from the criminal justice system. The FY2017-18 Long Bill includes $15.3 million for supportive housing initiatives, including $4.0 million to support the development of housing units with intensive support services (called permanent supportive housing) for behavioral health consumers, including those exiting or at risk of entering hospitals or state mental health institutes, and $11.3 million for other permanent supportive housing and rapid rehousing initiatives.

- *Senate Bill 17-207 (Strengthen Behavioral Health Crisis Response System):* Effective May 1, 2018, this act eliminates the use of the criminal justice system to hold individuals who are experiencing a mental health crisis. The act also makes a number of changes to enhance the State's coordinated behavioral health crisis response system, including the addition of $7.1 million for FY2017-18 to:
  - support local partnerships between law enforcement and behavioral health agencies;
  - to improve regional coordination for the provision of 24-7 crisis services; and
  - to expand behavioral health crisis response system services in rural areas.

In September 2017, the Legislature also approved $1.9 million in FY2017-18 to expand jail-based competency evaluation and restoration services in the RISE (Restoring Individuals Safely and Effectively) program by an additional 28 beds. Funding for the initial four beds became available immediately, and funding for the remaining 24 beds will be available in January 2018. The initial four beds have been operational since late October 2017, and the remaining 24 beds are expected to be operational by March 2018, to allow time for required renovations to the space within the facility. The Department is continually evaluating whether it will be necessary to make additional requests for supplemental funding in January 2018.

On November 1, 2017, the Governor released the State's FY2018-19 Budget. The budget contains a request from the Department for new funding, which includes the following:

- $7.4 million and 3.3 FTE to create an additional 62-bed jail-based competency evaluation and restoration program;

- $1.1 million and 11 FTE for additional psychologists (8) and administrative support (3) at CMHIP to conduct competency evaluations;

- $3.4 million and 3 FTE to allow the Department to enter into contracts, which the Department believes is the first of their kind nationally, with private/non-profit hospitals within the Denver metro area. This appropriation will enable the Department to pay for 10 non-state hospital beds to further expand the state's inpatient bed capacity; and

- $11.8 million to complete Phase IIa of the Department's Facility Modernization Plan for the Colorado Mental Health Institute at Fort Logan. This funding will enable the Department to complete the design phase for replacement of the existing facility. The Site Master Plan and Facility Program Plan call for an increase in the facility's bed capacity from 94 beds to 244 beds. The Department will use the additional 150 beds to serve both civil and forensic patients. Once Phase IIa is completed, the next phase (Phase III) of the project will be facility construction. The date of completion of the project is contingent on funding of Phases IIa and Phase III.

The Department is also proposing several legislative changes as part of the solution. For instance, the Department has received a number of court orders for inpatient competency restoration for pretrial detainees who do not require a hospital level of care. The Department has drafted proposed bills that would require the courts to order restoration in the most appropriate setting, similar to HB16-1410. The Department is also proposing statutory language that would limit when the court may order inpatient competency restoration for pretrial detainees who are not eligible for release from custody. Finally, the Department has also proposed a statutorily created pilot program that would enable a specific number of jails to petition the probate court for authority to administer involuntary medications.

Partnerships and Collaboration

Department representatives participate on the Commission for Criminal and Juvenile Justice's (CCJJ) Mental Health/Point of Contact Through Jail Release Task Force (the Task Force). Task Force members also include representatives from the State Public Defender's Office, the Colorado District Attorneys' Council, Sheriffs, the Department of Probation, the Department of Parole, the Colorado Jail Association, and others. The Task Force was instrumental in crafting SB17-207, involving pre-arrest jail deflection, which ultimately became law. The CCJJ recently approved the second area of focus for the Task Force; specifically, expansion and enhancement of the use of pre-filing and arraignment jail diversion. Through participation on the Task Force, the Department strongly supports and advocates for the allocation of

resources to provide for pre-arrest and pre-arraignment jail diversion, as these upstream interventions reduce incarceration rates for persons with mental health disorders, which in turn reduces the number of competency to proceed evaluation orders. In addition, the Department suggested that the JBC request a multi-systemic interim committee or task force representing each branch of government to make systemic improvements in anticipation of the forecasted rate of referrals.

The Department also continues to work collaboratively with the State Court Administrator's Office within State Judicial to ensure that inpatient competency evaluation orders comply with § 16-8.5-105, C.R.S. This includes efforts such as educating individual courts, defense attorneys, and prosecutors on the current criteria for inpatient competency evaluations. The Department's Court Services staff also contact clerks to request that evaluations be ordered to occur outpatient, in cases where pretrial detainees with low-level charges have been ordered inpatient. Because the Department has seen an increase in these type of orders, these requests help ensure that inpatient beds are utilized for the most ill pretrial detainees and that services are being provided in the most appropriate setting.

County sheriffs have compounded issues arising from the overall demand on the Department's inpatient system. Despite court orders requiring transport within 72-hours after a pretrial detainee is ready to return to the jail, county sheriffs routinely delay in transporting pretrial detainees. In some cases, the delays are longer than a week, and delays in discharge result in under-utilization of inpatient beds. CMHIP staff continues to work with sheriffs' offices to address this issue.

Additionally, the lack of adequate treatment in jails across the state is a significant contributor to the decompensation of pretrial detainees. This decompensation can trigger an order for a competency evaluation, which could be avoided if the pretrial detainee were receiving adequate treatment in the jail. Pretrial detainees who are found incompetent to proceed because they decompensate in jail then add to the number of inpatient restoration treatment orders. Pretrial detainees also decompensate upon return to the jail after being restored to competency by CMHIP, due to the same lack of adequate mental health treatment in the jail. Department staff are working with the Task Force to explore ways to improve the adequacy of mental health care provided in the state's jails, with the goal of reducing the number of competency evaluation orders and subsequent competency restoration orders that are necessary.

Ultimately, while the Department is part of the system responsible for ensuring that individuals receive timely competency evaluations and restoration services, all three branches of government and non-government stakeholders such as DLC, must work collaboratively to address the systemic issues underlying the mental health crisis. The Department is committed to continuing its work and welcomes strengthened and strategic collaboration across stakeholder groups.

**Projected Timeframe for Resolution**

Pursuant to Paragraph 6(c) of the Agreement, DSC commences on December 22, 2017, contemporaneously with the transmission of this Notice of Departmental Special Circumstances. As a result, the timeframe requirements of the Agreement are automatically suspended through June 22,

2018. *See* Agreement at ¶ 6(c). As the plan to remedy DSC moves forward, the Department will continually assess the timeframe for resolution. The Department will update DLC as more information becomes available, in addition to providing the regular updates agreed upon by the parties concerning the multi-faceted strategies outlined above.

The Department has complied with the Agreement in good faith and will continue to do so. The Department looks forward to conferring with you and Dr. Dvoskin to review the reasons for invocation of DSC, to resolve questions you may have about the circumstances that triggered this Notice, and to explore any additional suggestions you may have concerning options to remedy the circumstances forming the basis for DSC. Thank you for your attention to this matter.

Sincerely,

Dr. Robert Werthwein
Director, Office of Behavioral Health

cc:     Dr. Joel Dvoskin, Independent Consultant
        Iris Eytan, Eytan Nielsen LLC
        Dr. Patrick Fox, Chief Medical Officer, CDHS
        Anthony Gherardini, Deputy Executive Director of Operations, CDHS

# EXHIBIT C

Joel A. Dvoskin, Ph.D., ABPP (Forensic)

Phone: 520-577-3051
Cell: 520-906-0366
E-Mail: joelthed@aol.com

Report of the Independent Expert
In the matter of *Center for Legal Advocacy v. Reggie Bicha* et al
September 4, 2017

## Introduction

By agreement of the parties, I was named as "Independent Consultant" for this Settlement Agreement, which the Agreement defined as follows: "… (An) individual experienced in the management and oversight of a state's mental health system, who is independent of the Parties, and, at the Department's expense, oversees the implementation of the timeframe and data reporting requirements set forth in this Agreement." In accordance with the Settlement Agreement, I signed a contract with the Colorado Department of Human Services to fulfill these duties on October 13, 2016.

I attended (telephonically) a meeting with the parties on August 19, 2017. At that meeting, it was agreed that I would issue this relatively brief report. I also suggested to the parties that we reconvene in November of 2017, after the state legislature has made relevant decisions regarding the Department's effort to create short-, intermediate-, and long-term solutions to the problems summarized below.

## Findings

**1. The Department has fulfilled its reporting obligations during this period without exception, and is in full compliance with this part of the Agreement.**
(See the Department's monthly reports, which were previously and timely submitted to the plaintiffs and the Independent Expert by CMHIP.) I should add that there is some disagreement between the parties about the appropriateness of a Declaration of Special Circumstances, specifically regarding the degree to which an increase in judicial referrals were unforeseeable, as opposed to merely unforeseen. If Plaintiffs decide to litigate this issue, I will offer my opinion on this issue if and when it is requested by the court. In the meantime, if the Department's efforts to alleviate the situation are successful, and if the Plaintiffs decide to refrain from litigating at this time, it is my hope that the question will become moot by the December deadline.

**2. During this period the Department has failed to comply with the monthly averages set forth in the Settlement Agreement.** However, as noted above, the Department has declared Special Circumstances as described in the Settlement Agreement. Also as noted above, the Plaintiffs have not agreed that the current situation warrants a Declaration of Special Circumstances. Thus, the question of whether or not the Department has violated the Settlement Agreement remains unsettled.

3. **Individual Cases of Non-Compliance**: The parties agree that there has been a number of cases that fell outside of the requirements of the Settlement Agreement since the State's Declaration of Special Circumstances.

4. **The Department has made every good faith effort to abide by the time frames contained in the Settlement Agreement**, within its existing limitations and resources and in light of the demands placed upon it by the courts. However, there is an urgent need for additional resources if the Department is to once again reach compliance with the Settlement Agreement.

## Analysis

There is no question that the Department is faced with at least two crises regarding this Settlement Agreement. The first is a dramatic increase in the number of referrals from the courts for inpatient evaluations and restorations.  The second crisis is caused by severe staffing shortages at CMHI-P, especially among the clinical staff.

As I noted in my last report, there is no evidence of a lack of commitment to the Agreement by the Department. I especially appreciate of the efforts of Dr. Victoria Gallegos, who manages the Court Services Department at CMHIP.

Unlike my findings in my last report, it is now my opinion that the Department's failure to meet the agreed-upon time frames is directly attributable to clinical staff shortages at CMHIP and unforeseen increases in the numbers of inpatient commitments. In other words, absent dramatic action from the State, this situation is likely to continue to leave the Department unable to meet the timelines prescribed by the Settlement Agreement.

To its credit, the Department has developed a number of proposals that would dramatically improve its ability to once again achieve compliance with the timelines of the Settlement Agreement. Because all potential remedies will require additional funding and/or legislation, the Department is not yet able to specifically list the steps it hopes to take.

There are essentially three ways to remedy this situation. The first and preferred solution would be to dramatically reduce the number of referrals for inpatient evaluations and restorations of competency. Among other steps, this could be accomplished by a combination of the following:

1. Increasing the number of low-level offenders who are diverted from the criminal justice system. Diversion is especially appropriate for arrestees with serious mental illnesses who pose no serious threat to public safety, and would be better served, at much less public expense, in the community mental health system. Diversion can occur either after or instead of arrest, as has been demonstrated successfully in many other states. These programs have the added benefit of reducing the number of people with serious mental illnesses in Colorado's jails.
2. Increasing the willingness of judges to commit incompetent defendants to outpatient commitment where appropriate, or to release misdemeanor defendants with serious mental illness so that they can receive community mental health services.
3. Educating judges about the circumstances that truly warrant an inpatient commitment. (Please note that the Legal Services Department at CMHI-P has already done some judicial education; however, this department is understaffed, and these efforts should be enhanced.)
4. Changes in legislation that would limit the need for inpatient referrals.

Second, the Department could significantly increase the number of available beds. This can be accomplished in several ways:

1. Build and staff additional secure psychiatric inpatient beds. This is of course the most expensive option.
2. Increase the number of high-quality, jail-based restoration programs.
3. Build and staff, or identify and fund additional "step-down" beds for forensic patients who are not deemed to pose a risk of serious violence or escape.
4. Create alternative placements for civil and forensic patients who could be better served in more appropriate settings, such as community hospitals. Similarly, many psychiatric inpatients could receive adequate community mental health services while housed in community residential settings, nursing homes, or their own homes.

Third, the Department could seek to further reduce the length of stay for inpatient evaluations and restorations. However, this solution is, in my opinion, extremely unlikely to succeed given the current staffing shortages at CMHIP.

I look forward to hearing of additional remedial steps that have been taken, including any changes that have been made pursuant to the results of the LEAN audit, which may improve the efficiency of the forensic process.

## Conclusions

In conclusion, currently the State is clearly failing to meet the deadlines contained in the Settlement Agreement. Given the increase in referrals and the staffing problems at CMHIP, this failure will likely continue in the absence of new resources.

The Legal Services Department at CMHIP has been successful in avoiding some inpatient referrals from courts. However, its success is limited by inadequate resources. I strongly recommend that the Department find additional staff to support this vital function.

It is equally clear to me that the Department's failure to adhere to the timelines in the Settlement Agreement is in no way due to a lack of good faith effort on the part of the Department and its employees. Further, it is clear that the Department has a variety of proposed remedies that appear to have been submitted to the executive and legislative branches of the Colorado State government. Since the Department is not at liberty to reveal its specific proposals until the legislature has done its work, it is likely that we will not know much until November, at which time the Plaintiffs and I will be able to assess the adequacy of the State's response to its current failure to meet the requirements of the Settlement Agreement.

In closing, I greatly appreciate the productive and cooperative manner in which the parties and their respective counsel have addressed these challenges. I am hopeful and optimistic that their collective efforts will help the Department to return to full compliance with the timelines of the Settlement Agreement as soon as possible.

Respectfully submitted,

Joel A. Dvoskin, Ph.D., ABPP
Independent Expert

# EXHIBIT D



**COLORADO**
**Office of Behavioral Health**
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 3, 2018

The Honorable Ryan James Stuart
1st Judicial District, Division A
100 Jefferson County Parkway
Golden, CO 80401

RE:          Defendant: Brian Clark
             Criminal Action No.: 2016T17306

Dear Judge Stuart,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 13, 2018 order committing Brian Clark to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Clark to receive outpatient restoration services in the community.

Based on our understanding of Mr. Clark's case, he is currently in-custody because of an alleged probation violation related to his underlying conviction of Driving While Ability Impaired. He was arrested and taken into custody on November 28, 2017; as a result, it appears he has already been in-custody for approximately 122 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Clark may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Clark does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Clark through community hospitals.  This court previously granted him bond,



and his past charges appear to be for traffic-related crimes; they do not warrant commitment to a forensic hospital. In the present case, it is unlikely that Mr. Clark will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 190 days before restoration services even begin. Mr. Clark's suspended sentence in this case is 180 days, which means the length of time he may wait for restoration services to begin may exceed the length of his suspended sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Clark. To the extent there are concerns related to Mr. Clark's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Clark is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Clark's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Clark's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Zina Badri, Deputy Public Defender
        Shannon Hurley, Deputy District Attorney
        District Court Chief Judge Philip J. McNulty

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Patrick K. Fox, M.D., Chief Medical Officer, CDHS



Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
**Office of Behavioral Health**
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 3, 2018

The Honorable Michael James Vallejos
2nd Judicial District
520 West Colfax Avenue
Denver, CO 80204

RE:        Defendant: Daniel Carlos-Miguel
           Criminal Action No.: 2017CR5664

Dear Judge Vallejos,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 5, 2018 order committing Daniel Carlos-Miguel to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Carlos-Miguel to receive outpatient restoration services in the community.

Based on our understanding of Mr. Carlos-Miguel's case, he is currently in-custody because of a charge of alleged Trespass – Dwelling (F5). He was arrested and taken into custody on October 3, 2017; as a result, it appears he has already been in-custody for approximately 178 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Carlos-Miguel may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Carlos-Miguel does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Carlos-Miguel through community hospitals. This court previously



granted him bond, and he does not appear to have previous charges; the current charge does not warrant commitment to a forensic hospital. In the present case, it is unlikely that Mr. Carlos-Miguel will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 200 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Carlos-Miguel's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Carlos-Miguel. To the extent there are concerns related to Mr. Carlos-Miguel's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Carlos-Miguel is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Carlos-Miguel's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Carlos-Miguel's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services

cc:     Allen Whitlock, Deputy Public Defender
        Khoury Dillon, Deputy District Attorney
        District Court Chief Judge Michael A. Martinez

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS



Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 3, 2018

The Honorable Robert L. Lowrey
4th Judicial District
270 S. Tejon
Colorado Springs, CO 80901

RE:          Defendant: Travon Daylie
             Criminal Action No.: 2016CR5754

Dear Judge Lowrey,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 11, 2018 order committing Travon Daylie to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Daylie to receive outpatient restoration services in the community.

Based on our understanding of Mr. Daylie's case, he is currently in-custody because an alleged probation violation related to his underlying conviction of Criminal Mischief - $1000-$5000 (F6). He was arrested and taken into custody on July 3, 2017; as a result, it appears he has already been in-custody for approximately 270 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Daylie may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Daylie does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be



provided to Mr. Daylie through community hospitals. This court previously granted him bond, and his past charges appear to be for lower-level crimes; the current charge does not warrant commitment to a forensic hospital. In the present case, it is unlikely that Mr. Daylie will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 300 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Daylie's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Daylie. To the extent there are concerns related to Mr. Daylie's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Daylie is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Daylie's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Daylie's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

*Robert Werthwein*

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services

cc:   Natasha Koziel, Deputy Public Defender
      Laurel Chase, Deputy District Attorney
      District Court Chief Judge William Bain

      Anthony Gherardini, Deputy Executive Director of Operations, CDHS



Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 9, 2018

The Honorable Michael McHenry
4th Judicial District, Division 21
270 S. Tejon Street
P.O. Box 2980
Colorado Springs, Colorado 80901

RE:          Defendant: Harrison Zabalveitia
             Criminal Action No.: 2017CR5764

Dear Judge McHenry,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 13, 2018 order committing Harrison Zabalveitia to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Zabalveitia to receive outpatient restoration services in the community.

Based on our understanding of Mr. Zabalveitia's case, he is currently in-custody because of charges of alleged Drug Paraphernalia (DPO) and Trespass 3 (Class 1 PO). He was arrested and taken into custody on October 1, 2017; as a result, it appears that he has already been in-custody for approximately 190 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Zabalveitia may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Zabalveitia does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity,



those can be provided to Mr. Zabalveitia through community hospitals. This court previously granted him bond, and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Zabalveitia will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 220 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Zabalveitia's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Zabalveitia. To the extent there are concerns related to Mr. Zabalveitia's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Zabalveitia is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Zabalveitia's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Zabalveitia's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services

cc:    Nathan Ojanen, Deputy Public Defender
       Kaitlynn Brown, Deputy District Attorney
       Chief Judge William Bain
       Colorado State Public Defender Doug Wilson
       District Attorney Dan May



Anthony Gherardini, Deputy Executive Director of Operations, CDHS
Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 9, 2018

The Honorable Shelley I. Gilman
2nd Judicial District, Division 5A
520 West Colfax
Denver, Colorado 80204

RE:      Defendant: Jarrod Stafford
         Criminal Action Nos.: 2017CR4235
                               2017CR2989

Dear Judge Gilman,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 9, 2018 order committing Jarrod Stafford to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Stafford to receive outpatient restoration services in the community.

Based on our understanding of Mr. Stafford's case, he is currently in-custody because of charges of alleged Criminal Mischief (F6) in both of the above-referenced cases. He was arrested and taken into custody on December 15, 2017; as a result, it appears that he has already been in-custody for approximately 115 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Stafford may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Stafford does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be



provided to Mr. Stafford through community hospitals. This court previously granted him bond, and his past charges appear to be for lower-level crimes; they do not warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Stafford will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 140 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Stafford's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Stafford. To the extent there are concerns related to Mr. Stafford's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Stafford is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Stafford's current cases, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Stafford's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Nick Webber, Deputy Public Defender
        Bree Beasley, Deputy District Attorney
        District Court Chief Judge Michael A. Martinez
        Colorado State Public Defender Doug Wilson
        District Attorney Beth McCann



Anthony Gherardini, Deputy Executive Director of Operations, CDHS
Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
**Office of Behavioral Health**
Department of Human Services

**Robert Werthwein**, PhD, Director, OBH
**Jill Marshall**, Chief Executive Officer, CMHIP

April 9, 2018

The Honorable Shannon Lyons
19th Judicial District, Division 16
910 10th Avenue
P.O. Box 2038
Greeley, Colorado 80632

RE:       Defendant: Patrick Allen Walters
           Criminal Action No.: 2017CR2647

Dear Judge Lyons,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 23, 2018 order committing Patrick Allen Walters to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Walters to receive outpatient restoration services in the community.

Based on our understanding of Mr. Walters's case, he is currently in-custody because of charges of alleged Controlled Substance (DF4); Failure to Display Proof of Insurance (T1); Drug Paraphernalia (DPO); and Defective Vehicle (TIA). He was arrested and taken into custody on January 23, 2018; as a result, it appears that he has already been in-custody for approximately 156 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Walters may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Walters does not appear to require the level of security associated with a forensic commitment to



CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Walters through community hospitals. This court previously granted him bond, and his past charges appear to be for lower-level crimes; they do not warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Walters will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 180 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Walters's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Walters. To the extent there are concerns related to Mr. Walters's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Walters is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Walters's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Walters's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:    Megan Bishop, Deputy Public Defender
       Ryan Chun, Deputy District Attorney
       District Court Chief Judge James F. Hartmann, Jr.
       Colorado State Public Defender Doug Wilson
       District Attorney Michael J. Rourke



Anthony Gherardini, Deputy Executive Director of Operations, CDHS
Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services
Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 9, 2018

The Honorable Palmer Boyette
2nd Judicial District, Division 1G
520 West Colfax
Denver, Colorado 80204

RE:     Defendant: Shanon Dogskin
        Criminal Action No.: 2017CR2269

Dear Magistrate Boyette,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 31, 2018 order committing Shanon Dogskin to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Ms. Dogskin to receive outpatient restoration services in the community.

Based on our understanding of Ms. Dogskin's case, she is currently in-custody because of a Possession of Controlled Substance (Drug Misdemeanor Class 1) conviction. She was arrested and taken into custody on December 8, 2017; as a result, it appears that she has already been in-custody for approximately 122 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care who are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Ms. Dogskin may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While she may require hospital-level care related to her mental health disorder, based on her current charges, Ms. Dogskin does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to her clinical acuity, those can be provided to Ms. Dogskin through community hospitals. This court previously



granted her bond, and her past charges appear to be primarily for low-level trespass and park curfew-violation related crimes; they do not warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Ms. Dogskin will be admitted for inpatient restoration services before May 2018. Consequently, she will likely be in-custody for over 150 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Ms. Dogskin's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Ms. Dogskin. To the extent there are concerns related to Ms. Dogskin's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Ms. Dogskin is a Medicaid recipient, she is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Ms. Dogskin's current case, it may be easier for her to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Ms. Dogksin's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services

cc:     Elizabeth Kenny, Deputy Public Defender
        Thain Bell, Deputy District Attorney
        District Court Chief Judge Michael A. Martinez
        Colorado State Public Defender Doug Wilson
        District Attorney Beth McCann



Anthony Gherardini, Deputy Executive Director of Operations, CDHS
Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 9, 2018

The Honorable Verna Carpenter
1st Judicial District, Division 3G
100 Jefferson County Parkway
Golden, Colorado 80401

RE:           Defendant: Thomas Charbonneau
              Criminal Action No.: 2017M5610

Dear Judge Carpenter,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 12, 2018 order committing Thomas Charbonneau to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Charbonneau to receive outpatient restoration services in the community.

Based on our understanding of Mr. Charbonneau's case, he is currently in-custody because of charges of alleged Violation of a Protection Order (M1), Drug Paraphernalia - Possession (DPO), and Obstructing a Peace Officer (M2). He was arrested and taken into custody on November 15, 2017; as a result, it appears that he has already been in-custody for approximately 145 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Charbonneau may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Charbonneau does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Charbonneau through community hospitals. This court previously



granted him bond, and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Charbonneau will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 180 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Charbonneau's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Charbonneau. To the extent there are concerns related to Mr. Charbonneau's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Charbonneau is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Charbonneau's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Charbonneau's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Justin Conley, Deputy Public Defender
        Padraic Emerine, Deputy District Attorney
        District Court Chief Judge Philip McNulty
        Colorado State Public Defender Doug Wilson
        District Attorney Pete Weir



Anthony Gherardini, Deputy Executive Director of Operations, CDHS
Patrick K. Fox, M.D., Chief Medical Officer, CDHS
Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 17, 2018

The Honorable Douglas J. Miles
El Paso County Court, Division K
270 S. Tejon Street
P.O. Box 2980
Colorado Springs, Colorado 80901

RE:        Defendant: Mikia Maltby
           Criminal Action No.:  2016T5660

Dear Judge Miles,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 16, 2018 order committing Mikia Maltby to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Ms. Maltby to receive outpatient restoration services in the community.

Based on our understanding of Ms. Maltby's case, she is currently in custody because of an alleged probation violation related to her underlying conviction of Driving Under the Influence. She was arrested and taken into custody on December 19, 2017; as a result, it appears that she has already been in-custody for approximately 119 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Ms. Maltby may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While she may require hospital-level care related to her mental health disorder, based on her current charges, Ms. Maltby does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to her clinical acuity, those can be



provided to Ms. Maltby through community hospitals. In the present case, it is unlikely that Ms. Maltby will be admitted for inpatient restoration services before May 2018. Consequently, she will likely be in custody for over 140 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Ms. Maltby's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Ms. Maltby. To the extent there are concerns related to Ms. Maltby's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Ms. Maltby is a Medicaid recipient, she is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Ms. Maltby's current case, it may be easier for her to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Ms. Maltby's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Maxel Moreland, Deputy Public Defender
        Justin Derosa, Deputy District Attorney
        District Court Chief Judge William Bain
        Colorado State Public Defender Doug Wilson
        District Attorney Dan May

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Katie McLoughlin, Chief Legal Director, CDHS



Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Dennis Hall
Jefferson County District Court, Division 4E
1st Judicial District
100 Jefferson County Parkway
Golden, CO 80401

RE:          Defendant: Austin Hawkes
             Criminal Action No.:  2016CR1576

Dear Judge Hall,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 9, 2018 order committing Austin Hawkes to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Hawkes to receive outpatient restoration services in the community.

Based on our understanding of Mr. Hawkes's case, he is currently in custody because of an alleged probation violation related to his underlying conviction of Felony Menacing (F5) and Assault 3 (M1). He was arrested and taken into custody on February 1, 2017; as a result, it appears that he has already been in-custody for approximately 440 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Hawkes may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Hawkes does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be



provided to Mr. Hawkes through community hospitals. This court previously granted him bond, and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Hawkes will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 470 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Hawkes's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Hawkes. To the extent there are concerns related to Mr. Hawkes's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Hawkes is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Hawkes's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Hawkes's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Rachel Oliver, Deputy Public Defender
        Zachary Woodward, Deputy District Attorney
        Chief Judge Philip J. McNulty
        Colorado State Public Defender Doug Wilson
        District Attorney Pete Weir

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Katie McLoughlin, Chief Legal Director, CDHS



Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Harold D. Sargent
Jefferson County Court, Division 3C
1st Judicial District
100 Jefferson County Parkway
Golden, CO 80401

RE:  Defendant: Austin Hawkes
Criminal Action Nos.:2017M1365
2017CR454

Dear Judge Sargent,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 10, 2018 order committing Austin Hawkes to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Hawkes to receive outpatient restoration services in the community.

Based on our understanding of Mr. Hawkes's case, he is currently in custody because of charges of alleged Obstructing a Peace Officer (M2), Controlled Substance-Possession (DF4), Violation of a Protection Order-Criminal (M1) in the above-referenced cases. He was arrested and taken into custody on February 1, 2017; as a result, it appears that he has already been in-custody for approximately 440 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Hawkes may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr.



Hawkes does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Hawkes through community hospitals. This court previously granted him bond, and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Hawkes will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 470 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Hawkes's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Hawkes. To the extent there are concerns related to Mr. Hawkes's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Hawkes is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Hawkes's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Hawkes's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:    James Cross, Deputy Public Defender
       Zachary Woodward, Deputy District Attorney
       Chief Judge Philip J. McNulty
       Colorado State Public Defender Doug Wilson
       District Attorney Pete Weir
       Anthony Gherardini, Deputy Executive Director of Operations, CDHS



Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Paul A. King
Douglas County District Court, Division 1
4000 Justice Way
Castle Rock, Colorado 80109

RE:          Defendant: Benito Marceliho Viloria
             Criminal Action No.:  2016CR757

Dear Judge King,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 15, 2018 order committing Benito Marceliho Viloria to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Viloria to receive outpatient restoration services in the community.

Based on our understanding of Mr. Viloria's case, he is currently in custody because of charges of alleged probation violation related to his underlying conviction of Assault 2 – In-Custody/Peace Officer (F5). He was arrested and taken into custody on August 31, 2017; as a result, it appears that he has already been in-custody for approximately 229 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Viloria may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Viloria does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Viloria through community hospitals. This court previously granted him bond and



it is unlikely that Mr. Viloria will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 250 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Viloria's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Viloria. To the extent there are concerns related to Mr. Viloria's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Viloria is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Viloria's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Viloria's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Annelise Garlin, Deputy Public Defender
        Joseph Whitfield, Deputy District Attorney
        Chief Judge Carlos Samour, Jr.
        Colorado State Public Defender Doug Wilson
        District Attorney George Brauchler

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Katie McLoughlin, Chief Legal Director, CDHS
        Tanja E. Wheeler, First Assistant Attorney General



Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Susanna Lea Meissner-Cutler
Douglas County Court, Division G
4000 Justice Way, #2009
Castle Rock, Colorado 80109

RE:        Defendant: Benito Marceliho Viloria
           Criminal Action No.:  2017M1825

Dear Judge Meissner-Cutler,

The Colorado Department of Human Services (Department) respectfully requests that you convert the December 7, 2017 order committing Benito Marceliho Viloria to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Viloria to receive outpatient restoration services in the community.

Based on our understanding of Mr. Viloria's case, he is currently in custody because of charges of alleged charge of Violation of a Protection Order-Criminal (M1). He was arrested and taken into custody on August 31, 2017; as a result, it appears that he has already been in-custody for approximately 229 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Viloria may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Viloria does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Viloria through community hospitals. This court previously granted him bond and



it is unlikely that Mr. Viloria will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 250 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Viloria's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Viloria. To the extent there are concerns related to Mr. Viloria's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Viloria is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Viloria's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Viloria's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:    Nicole Savino, Deputy Public Defender
       Jason Gardner, Deputy District Attorney
       Chief Judge Carlos Samour, Jr.
       Colorado State Public Defender Doug Wilson
       District Attorney George Brauchler

       Anthony Gherardini, Deputy Executive Director of Operations, CDHS
       Katie McLoughlin, Chief Legal Director, CDHS
       Tanja E. Wheeler, First Assistant Attorney General



Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Michele Meyer
Weld County Court, Division 8
19th Judicial District
901 9th Avenue
Greeley, Colorado 80631

RE:        Defendant: Preston Powell
           Criminal Action No.: 2015M3474

Dear Judge Meyer,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 5, 2018 order committing Preston Powell to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Powell to receive outpatient restoration services in the community.

Based on our understanding of Mr. Powell's case, he is currently in-custody because of a charge of alleged Trespass 2 (M3). He was arrested and taken into custody on August 3, 2017; as a result, it appears that he has already been in-custody for approximately 257 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Powell may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Powell does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Powell through community hospitals. This court previously granted him bond,



and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Powell will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 280 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Powell's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Powell. To the extent there are concerns related to Mr. Powell's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Powell is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Powell's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Powell's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Sothie Keo, Deputy Public Defender
        Katie Beals, Deputy District Attorney
        Chief Judge James F. Hartmann, Jr.
        Colorado State Public Defender Doug Wilson
        District Attorney Michael J. Rourke

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Katie McLoughlin, Chief Legal Director, CDHS



Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 18, 2018

The Honorable Shannon Lyons
Weld County District Court, Division 16
19th Judicial District
901 9th Avenue
Greeley, Colorado 80631

RE:        Defendant: Preston Powell
           Criminal Action No.:  2017CR1805

Dear Judge Lyons,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 2, 2018 order committing Preston Powell to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Powell to receive outpatient restoration services in the community.

Based on our understanding of Mr. Powell's case, he is currently in-custody because of a charge of alleged Assault 2-Peace Officer (F4). He was arrested and taken into custody on August 3, 2017; as a result, it appears that he has already been in-custody for approximately 257 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Powell may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Powell does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Powell through community hospitals. This court previously granted him bond,



and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Powell will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 280 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Powell's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Powell. To the extent there are concerns related to Mr. Powell's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Powell is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Powell's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Powell's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:   Samantha Deveraux, Deputy Public Defender
      Ryan Chun, Deputy District Attorney
      Chief Judge James F. Hartmann, Jr.
      Colorado State Public Defender Doug Wilson
      District Attorney Michael J. Rourke

      Anthony Gherardini, Deputy Executive Director of Operations, CDHS
      Katie McLoughlin, Chief Legal Director, CDHS



Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 20, 2018

The Honorable William D. Robbins
Denver County District Court, Division 5H
520 West Colfax Avenue
Denver, Colorado 80204

RE:         Defendant: Christopher Szkutak
            Criminal Action No.:  2017CR5922

Dear Judge Robbins,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 8, 2018 order committing Christopher Szkutak to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Szkutak to receive outpatient restoration services in the community.

Based on our understanding of Mr. Szkutak's case, he is currently in-custody because of three charges of alleged Controlled Substance – Possession (DF4), one charge of alleged Felony Menacing (F5), one charge of alleged Criminal Possession of ID Documents – Multiple Victims (F6), and two charges of alleged ID Theft – Possession with Intent to Use (F4). He was arrested and taken into custody on August 20, 2017; as a result, it appears that he has already been in-custody for approximately 242 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Szkutak may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Szkutak does not appear to require the level of security associated with a forensic commitment to



CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Szkutak through community hospitals. This court previously granted him bond, and it is unlikely that Mr. Szkutak will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 260 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Szkutak's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Szkutak. To the extent there are concerns related to Mr. Szkutak's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Szkutak is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Szkutak's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Szkutak's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     Chris Curtis, Deputy District Attorney
        Taylor Critchell, Deputy Public Defender
        Chief Judge Michael A. Martinez
        Colorado State Public Defender Doug Wilson
        District Attorney Beth McCann

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS



Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 20, 2018

The Honorable William D. Robbins
Denver District Court, Division 4G
520 West Colfax Avenue
Denver, Colorado 80204

RE:         Defendant: Jeffrey Wells
            Criminal Action No.:  2016CR8046

Dear Judge Robbins,

The Colorado Department of Human Services (Department) respectfully requests that you convert the January 29, 2018 order committing Jeffrey Wells to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Wells to receive outpatient restoration services in the community.

Based on our understanding of Mr. Wells's case, he is currently in-custody because of charges of alleged probation violation related to his underlying conviction of Assault 3 (M1). He was arrested and taken into custody on November 9, 2017; as a result, it appears that he has already been in-custody for approximately 161 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Wells may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Wells does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Wells through community hospitals. This court previously granted him bond,



and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Wells will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 190 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Wells's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Wells. To the extent there are concerns related to Mr. Wells's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Wells is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Wells's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Wells's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:    Chris Penny, Deputy District Attorney
       Christina Zorrilla, Deputy Public Defender
       Chief Judge Michael A. Martinez
       Colorado State Public Defender Doug Wilson
       District Attorney Beth McCann

       Anthony Gherardini, Deputy Executive Director of Operations, CDHS



Katie McLoughlin, Chief Legal Director, CDHS
Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 20, 2018

The Honorable Michael J. Vallejos
2nd Judicial District, Division 5D
520 West Colfax Avenue
Denver, Colorado 80204

RE:         Defendant: Justin Barnes
            Criminal Action No.:  2017CR9000

Dear Judge Vallejos,

The Colorado Department of Human Services (Department) respectfully requests that you convert the February 7, 2018 order committing Justin Barnes to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Barnes to receive outpatient restoration services in the community.

Based on our understanding of Mr. Barnes's case, he is currently in-custody because of three counts of alleged Assault 2 – Peace Officer (F4) and three counts of alleged Assault 2 – In-Custody/Peace Officer (F4). He was arrested and taken into custody on December 13, 2017; as a result, it appears that he has already been in-custody for approximately 127 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Barnes may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Barnes does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Barnes through community hospitals. This court previously granted him bond,



and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the present case, it is unlikely that Mr. Barnes will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 150 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Barnes's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Barnes. To the extent there are concerns related to Mr. Barnes's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Barnes is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Barnes's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Barnes's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this. If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:     David Rosen, Deputy Public Defender
        Khoury Dillon, Deputy District Attorney
        Chief Judge Michael A. Martinez
        Colorado State Public Defender Doug Wilson
        District Attorney Beth McCann

        Anthony Gherardini, Deputy Executive Director of Operations, CDHS
        Katie McLoughlin, Chief Legal Director, CDHS



Tanja E. Wheeler, First Assistant Attorney General
Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP





**COLORADO**
Office of Behavioral Health
Department of Human Services

Robert Werthwein, PhD, Director, OBH
Jill Marshall, Chief Executive Officer, CMHIP

April 20, 2018

The Honorable Kerri Lombardi
Denver County Court, Division 3D
520 West Colfax Avenue
Denver, Colorado 80204

RE:         Defendant: Justin Barnes
            Criminal Action No.: 2017M11931

Dear Judge Lombardi,

The Colorado Department of Human Services (Department) respectfully requests that you convert the March 29, 2018 order committing Justin Barnes to the Department for inpatient restoration services at the Colorado Mental Health Institute at Pueblo (CMHIP), to an order allowing Mr. Barnes to receive outpatient restoration services in the community.

Based on our understanding of Mr. Barnes's case, he is currently in-custody because of charges of alleged Assault 3 – First Responder (M1). He was arrested and taken into custody on December 13, 2017; as a result, it appears that he has already been in-custody for approximately 127 days.

As you may be aware, the Department has been experiencing a sustained spike in the number of court orders statewide for inpatient competency restoration services. The number of court orders has far outpaced the Department's available inpatient resources. As a result, defendants are currently waiting an average of four months before being admitted to an inpatient bed. In an effort to address this widespread systemic issue and ensure individuals living with a mental health disorder receive timely services, the Department is collaborating with Disability Law Colorado to identify defendants across the state who may be suited to receive restoration services on an outpatient basis. Increasing utilization of outpatient restoration services would be more appropriate for these defendants, and would reduce, if not eliminate, the significant time defendants who truly need a high security and inpatient level of clinical care are currently waiting to receive those restoration services.

As a result of this collaboration, the Department has determined that Mr. Barnes may be an appropriate candidate for outpatient restoration services. CMHIP is a high security forensic facility; nearly all patients there have been admitted pursuant to a court order. While he may require hospital-level care related to his mental health disorder, based on his current charges, Mr. Barnes does not appear to require the level of security associated with a forensic commitment to CMHIP. If inpatient mental health services are needed due to his clinical acuity, those can be provided to Mr. Barnes through community hospitals. This court previously granted him bond, and his past charges do not appear to warrant commitment to a forensic hospital in this case. In the



present case, it is unlikely that Mr. Barnes will be admitted for inpatient restoration services before May 2018. Consequently, he will likely be in-custody for over 150 days before restoration services even begin. This time waiting for restoration services to begin and be conducted may ultimately meet or exceed the maximum length of Mr. Barnes's sentence.

If this Court converts the order to require outpatient restoration services instead of inpatient, those services can begin on an expedited basis. With the support of the Colorado legislature, the Department has developed growing resources to provide outpatient restoration services. Upon conversion of the order, CMHIP will notify the Department's Division of Forensic Services, which will coordinate the provision of individualized outpatient competency restoration services for Mr. Barnes. To the extent there are concerns related to Mr. Barnes's overall mental and physical health, those concerns could also be addressed in the community, where there are more robust treatment options. For instance, if Mr. Barnes is a Medicaid recipient, he is entitled to all medically necessary clinical care pursuant to the State Medicaid Plan, which includes community-based mental health and substance use disorder treatment and inpatient hospitalization.

Additionally, while the Department does not have an interest in the criminal case, if the charges were to be dismissed in Mr. Barnes's current case, it may be easier for him to access mental health services in the community. Open criminal charges can pose a barrier to individuals attempting to access services in the community. Further, the services may be more effective if they focus solely on clinical need as opposed to restoration of competency; Mr. Barnes's mental health disorder may require ongoing clinical care well beyond the life of this particular case.

The Department appreciates your consideration of its request and welcomes any questions you or the parties may have concerning this.  If you have specific questions, please contact Danielle Weittenhiller, Psy.D., Director of Forensic Services at danielle.weittenhiller@state.co.us or at 303-866-7025.

Respectfully,

Dr. Robert Werthwein, Ph.D., Director, Office of Behavioral Health
Colorado Department of Human Services


cc:    Denver District Attorney, County Court
       David Rosen, Deputy Public Defender
       Chief Judge Theresa Spahn
       Colorado State Public Defender Doug Wilson
       District Attorney Beth McCann

       Anthony Gherardini, Deputy Executive Director of Operations, CDHS
       Katie McLoughlin, Chief Legal Director, CDHS
       Tanja E. Wheeler, First Assistant Attorney General



Libbie McCarthy, Senior Assistant Attorney General
Lauren Peach, Assistant Attorney General
Dr. Joel Dvoskin, Independent Consultant
Mark Ivandick, Disability Law Colorado
Jennifer Purrington, Disability Law Colorado
Iris Eytan, Eytan Nielsen, LLC
Caleb Durling, Rollin Braswell Fisher, LLC
Ellie Lockwood, Snell & Wilmer, LLP

