IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-02285-NYW

CENTER FOR LEGAL ADVOCACY, d/b/a
DISABILITY LAW COLORADO,

      Plaintiff,

v.

REGGIE BICHA,
In his official capacity as Executive Director
Of the Colorado Department of Human Services, and

JILL MARSHALL,
In her official capacity as Superintendent
Of the Colorado Mental Health Institute at Pueblo

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT TO ENFORCE SETTLEMENT AGREEMENT**

---

Disability Law Colorado's Motion for Summary Judgment (Motion) should be denied because it is not entitled to judgment as a matter of law.

## ARGUMENT

### I. <u>Disability Law Colorado is not entitled to judgment as a matter of law.</u>

The law does not support summary judgment in favor of Disability Law Colorado because: 1) the Department's non-performance of the timeframes was contemplated by the parties and does not constitute a breach of the Amended and

Restated Settlement Agreement (Agreement); 2) the Department's December 2017 invocation of Departmental Special Circumstances (DSC) was permitted by the Agreement; 3) the Department has not breached the implied covenant of good faith and fair dealing; and 4) the Department's invocation of DSC complies with the terms of the Agreement. In its Motion, Disability Law Colorado argues that the Department is breaching the Amended and Restated Settlement Agreement (Agreement) because it has not met the timeframes for more than a year, because the Department's December 2017 invocation of DSC was improper, because the Department's December 2017 invocation of DSC breaches the implied covenant of good faith and fair dealing, and because neither invocation of DSC was justified based on the Agreement. Notwithstanding Disability Law Colorado's failure to cite to undisputed material facts in support of its Motion,[1] its arguments fail as a matter of law.

**A.   The Department's non-performance of the timeframes was contemplated by the parties and does not constitute a breach of the Agreement.**

In order to prevail on summary judgment on its claim that the Department breached the parties' contract by not meeting the Agreement's timeframes,

---

[1] Disability Law Colorado fails to cite to materials in the record which it believes are undisputed and it largely fails to cite to specific facts supporting its arguments. Instead, Disability Law Colorado cites to conclusory and unsupported allegations, such as its interpretation of unidentified data. Disability Law Colorado relies on this Court's July 12, 2018 order to justify its failure to cite to undisputed facts. Dkt. 96, fn. 2. This does not meet the threshold requirements for summary judgment. A

Disability Law Colorado must show, by undisputed facts: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Spring Creek Expl. & Prod. Co v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1033 (10th Cir. 2018) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)); *see also, e.g.*, *Stoole v. Metro. Prop. & Cas. Ins. Co.*, 17-CV-0613-NYW, 2018 WL 3126112, at *3 (D. Colo. June 26, 2018). Critical to any analysis of breach in this case is the principle that not every non-performance of a duty is a breach of contract. Arthur L. Corbin, Timothy Murray, Joseph M. Perillo, John E. Murray, Jr., *Corbin on Contracts* § 943 (1952); *see also* Restatement (First) of Contracts § 312 (Am. Law Inst. 1932) ("The promisor does not necessarily commit a breach of contract if he fails to perform his promise.").

Disability Law Colorado does not address three of the four *Spring Creek* factors necessary to demonstrate breach by the Department; instead it only addresses the third factor, i.e. – failure to perform the contract by the defendant. Because it fails to meet its burden to show, by undisputed facts, all four factors, it is

---

party asserting that a fact cannot be genuinely disputed *must* support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and identifying what information it believes demonstrates the absence of a genuine issue of material fact).

not entitled to summary judgment as a matter of law. *Spring Creek Expl. & Prod. Co.*, 887 F.3d at 1033.

And, Disability Law Colorado has not met the one *Spring Creek* factor that it did address, namely, that the Department failed to perform under the contract. Disability Law Colorado argues that non-performance of the timeframes amounts to a breach, and relies on its assertion that the Department has failed to admit all eligible pretrial detainees within 28 days in support of this argument. Dkt. 96, p.5 ¶ I (A).[2] Contrary to Disability Law Colorado's conclusory assertion, the Department has complied with the admission timeframes for inpatient competency evaluations. This is undisputed. Dkt. 97, Ex. B. Given this, all that is at issue here is whether the Department's non-performance of the timeframe requirements related to

---

[2] Disability Law Colorado's Motion also makes numerous allegations not relevant to the four issues stipulated to by the parties and presently before this Court. Dkt. 88, ¶ I (A)(i)-(iv). For instance, Disability Law Colorado alleges that: 1) the "State" admits that it is holding pretrial detainees in jail for months even though it concedes the detainees would be better served in the community; 2) the "State" is keeping individuals charged with low-level offenses in jail and often in administrative segregation or solitary isolation; and 3) that the wait times (for admission for restoration treatment) often exceed the amount of time individuals would have served if they pled guilty. Dkt. 96, pp. 6-7. The Department denies each of these allegations. The Department objects to similar allegations of this nature throughout Disability Law Colorado's Motion, which are largely irrelevant to the four issues before this Court. Because the factual allegations go far beyond the scope of the issues before the court, and are thus irrelevant, the Department does not respond in further detail to them. But, should the Court entertain Disability Law Colorado's myriad other allegations, the Department reserves its right to respond.

inpatient *restoration treatment services* constitutes a breach of the Agreement. It does not.

The Agreement contemplates the possibility that the Department may not be able to meet the inpatient restoration timeframes, and includes language addressing such a circumstance. If non-performance of the inpatient restoration timeframes amounted to a breach, there would be no need for language in the Agreement providing consequences for such non-performance.[3] *See* Arthur L. Corbin et al., *Corbin on Contracts* § 943 (1952); s*ee also* Restatement (First) of Contracts § 312 (Am. Law Inst. 1932). Because Disability Law Colorado has not met its burden under *Spring Creek*, it is not entitled to judgment as a matter of law.

**B.      The Department's December 2017 invocation of DSC was permitted by the Agreement.**

Next, Disability Law Colorado argues that the Department's December 2017 invocation of DSC was a breach of the Agreement because this was the second time the Department invoked DSC. This argument fails as a matter of law because it runs afoul of multiple principles of contract construction.

    1.  <u>Disability Law Colorado's interpretation would require this Court to add terms to the Agreement</u>.

By suggesting that the Department cannot invoke DSC consecutively and more than once, Disability Law Colorado asks this Court to *add limitations into the*

---

[3] The Department's arguments in its Motion for Summary Judgment that its non-performance does not constitute a breach of the Agreement is incorporated by reference as if fully set forth herein. Dkt. 97, pp. 18-21.

*Agreement for which the parties did not bargain.* This violates the well-established principle of contract construction that a court may not add, delete, or rewrite terms of a contract. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 836 (10th Cir. 2016) ("it is not the business of the courts to draft a better contract for the parties than they did for themselves." (*citing Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 820 (Colo. 2002) ("[C]lear and unambiguous provisions cannot simply be rewritten by the courts"), *and Kan. City Life Ins. Co. v. Pettit*, 99 Colo. 268, 61 P.2d 1027, 1028 (1936) ("It is elementary a court cannot make a new contract in lieu of the one originally entered into by the parties themselves.")); *Colo. Interstate Corp. v. CIT Grp./Equip. Fin., Inc.*, 993 F.2d 743, 749 (10th Cir. 1993) ("Where sophisticated parties enter into an agreement setting forth their rights and obligations, the terms of the agreement should control unless the agreement would otherwise be void under state law.").

The parties bargained for DSC and the language governing its application was negotiated on two separate occasions separated by the passage of four years. *See* Dkt. 97, ¶¶ 3, 4, 6-9, 14-18. The terms regarding DSC, and the Agreement as a whole, are unambiguous. Though the Agreement places limits on the Department's ability to invoke DSC, those limits do not include the language that Disability Law Colorado asks the Court to write into the Agreement. Dkt. 78-1, ¶ 6(a)(ii) (setting forth limitations on the circumstances under which DSC may be invoked). Accordingly, this Court should not add language to the Agreement which is not

found within the four-corners of the parties' contract. *Ewing's Lessee v. Burnet*, 36 U.S. 41, 54 (1837) (the court will first take the instrument by its four corners, in order to ascertain its true meaning); *N.Y. Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) (when the contract is unambiguous the parties' intent is to be determined from the face of the contract itself (citing *Gardner v. City of Englewood*, 282 P.2d 1084, 1090 (Colo. 1955))).

> 2.  Disability Law Colorado's interpretation would render DSC terms meaningless, and fails to read the agreement as a whole.

Disability Law Colorado contends that permitting the Department to invoke DSC successively would violate the principles of contract construction because it would render meaningless the Agreement's six-month automatic suspension of timeframes. Dkt. 96, p. 7, ¶ I(B) (referring to Dkt. 78-1, ¶ 6(c), relying on *Summit Bank & Tr. v. Am. Modern Home Ins. Co.*, 71 F. Supp. 3d 1168, 1171 (D. Colo. 2014)). Yet, it is Disability Law Colorado's reading that would render all of DSC meaningless because it would ignore the plain language of the agreement. The Agreement allows the Department to invoke DSC *when there are circumstances beyond its control* that impact the Department's ability to comply with the timeframe requirements. *Spring Creek Expl. & Prod. Co.*, 887 F.3d at 1018 (the court "should be wary of viewing clauses or phrases in isolation, instead reading them in the context of 'the entire contract seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless'" (internal citations omitted)).

Disability Law Colorado also argues that because the Agreement explicitly allows successive invocation of Individual Special Circumstances (ISC), and is silent as to successive invocation of DSC, successive invocation of DSC is not permitted. This reading requires the Court to read DSC without considering the provisions of the Agreement as a whole, contrary to rules of contract construction. *Spring Creek Expl. & Prod. Co.*, 887 F.3d at 1018; *Slowson Expl. Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1482 (10th Cir. 1996) (courts must review a contract as a whole, including exhibits, to determine the intent of the parties).

Disability Law Colorado's interpretation ignores plain terms that define ISC differently than DSC. Indeed, circumstances applicable to one discrete pretrial detainee are distinct from circumstances that impact the entire population of pretrial detainees. *See, e.g.*, Dkt. 78-1, ¶ 6(a)(i) (defining ISC as applicable to situations that delay the offer of admission to a single pretrial detainee); Dkt. 78-1, ¶ 6(a)(ii) (defining DSC as applicable to situations that impact the Department's ability to comply with the timeframes as to all pretrial detainees). The use of different language does not allow a construction of the Agreement which fails to read the contract as a whole. *Texaco, Inc. v. Holsinger*, 336 F.2d 230, 233 (10th Cir. 1964) ("all of the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions of the contract.").

3. <u>Disability Law Colorado assumed the risks associated with the terms it negotiated, and as such, the agreement must be applied as written.</u>

Disability Law Colorado asserts that it would never have agreed to successive invocation of DSC. However, it did not negotiate for any limits on the number of times the Department may invoke DSC. As a sophisticated party entering into a significant contract, Disability Law Colorado assumed the risk associated with the terms of that contract, and should be held to its terms as written. *Colo. Interstate Corp.*, 993 F.2d at 749; *United States v. Winstar Corp.*, 518 U.S. 839, 905 (1996); *Ewing's Lessee*, 36 U.S. 41, 54 (1837).

But, Disability Law Colorado would have the Court ignore these well-established principles of contract construction. Indeed, as written, the Agreement's terms, entered into by sophisticated parties, plainly allow the Department to invoke DSC, while also placing express limits on the Department's ability to do so (i.e., when there are circumstances beyond its control impacting its ability to comply with the timeframe requirements).[4] Dkt. 78-1, ¶ 6(a)(ii). Disability Law Colorado assumed the risk of those terms, and should be held to its plain language. *Winstar Corp.*, 518 U.S. at 905; *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1211 (10th Cir. 2007).

---

[4] The Department's argument in its Motion for Summary Judgment concerning its ability to invoke DSC consecutively and more than once is incorporated by reference as if fully set forth herein. *See* Dkt. 97, pp. 14-17.

For each of these reasons, Disability Law Colorado's argument that the Department's December 2017 invocation of DSC was a breach of the Agreement, fails as a matter of law.

### C. The Department has not breached the implied covenant of good faith and fair dealing.

Disability Law Colorado argues in the alternative that the December 2017 invocation of DSC constitutes a breach of the implied covenant of good faith and fair dealing. This argument also fails as a matter of law because it requires the Court to read terms into the Agreement for which the parties did not bargain.

The implied covenant of good faith and fair dealing cannot contradict terms or conditions for which a party has bargained. *Amoco Oil CoErvin*, 908 P.2d 493, 498 (Colo. 1995) (citing *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 (5th Cir.)(1989)). Good faith performance of a contract involves "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citing *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994).

The Department had a justified expectation that the Agreement did not prohibit it from invoking DSC more than one time and consecutively. The plain terms of the Agreement place no restriction on the number of times or timing of the Department's DSC invocation. Disability Law Colorado and the Department, sophisticated parties, engaged in multiple negotiations, and twice amended the Agreement. At no time did Disability Law Colorado negotiate for or obtain language

10

in the Agreement with the restrictions on DSC it now suggests exist. Indeed,

reading such terms into the Agreement would be manifestly inappropriate under

the circumstances.[5] As such, Disability Law Colorado cannot now claim a breach of

the implied covenant of good faith when it agreed to include the provisions

permitting DSC in the Agreement, and it cannot rely on the principle to contradict

the conditions of DSC for which it bargained. *Id*. Accordingly, the law does not

support summary judgment in Disability Law Colorado's favor on this argument.

> **D.    The Department's invocation of DSC complies with the terms of the Agreement.**

Disability Law Colorado lastly argues that the Department's December 2017

DSC invocation violated the Agreement because it did not meet the Agreement's

definition of DSC. Because this argument ignores the plain language of the

Agreement, it is contrary to law and must also fail.

Under Colorado law, courts must construe the terms of an agreement in a

manner that allows each party to receive the benefit of the bargain, and the scope of

the agreement must faithfully reflect the reasonable expectations of the parties.

*SOLIDFX, LLC*, 841 F.3d at 833 (citing *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.

2003)). "[U]nambiguous contracts are enforced according to their plain, general, and

common meaning in order to ensure the intentions of the parties are enforced."

---

[5] Department's argument in its Motion for Summary Judgment concerning its ability to invoke DSC consecutively and more than once is incorporated by reference as if fully set forth herein. *See* Dkt. 97, pp. 14-17.

*Lincoln v. BNSF Ry. Co.*, No. 17-3120, 2018 WL 3945875, at *9–10 (10th Cir. Aug.

17, 2018) (quoting *Neustrom Union Pac. R.R. Co.*, 156 F.3d 1057, 1063 (10th Cir.

1998)). Courts must first examine the plain language of the contract, and will

enforce the agreement as written unless there is an ambiguity in the language.

*SOLIDFX, LLC*, 841 F.3d at 833 (citing *Allen*, 71 P.3d at 378). Ambiguity does not

appear unless it is genuinely uncertain which of two or more meanings is the proper

meaning. *Lincoln*, 2018 WL 3945875, at *9–10 (citing *Neustrom*, 156 F.3d at 1063).

A contract is ambiguous if it "contains provisions or language of doubtful or

conflicting meaning, as gleaned from a natural and reasonable interpretation of its

language." *Id.* at *10 (internal citations omitted). "Courts should not strain to create

an ambiguity where, in common sense, there is none." *Id.*; *see also SOLIDFX, LLC*,

841 F.3d at 833 (courts should neither rewrite the agreement nor limit its effect by

a strained construction.)

> The Agreement states:

>> "Departmental Special Circumstances," means *circumstances beyond the control of the Department* which impact the Department's ability to comply with the timeframes set forth in Paragraph 2. This *could mean* an unanticipated spike in referrals, a national or statewide disaster impacting admissions decisions system wide. These *examples are provided for illustration only*. Departmental Special Circumstances is a flexible concept, due to the unique and often unforeseen nature of these events.

(emphasis added). Dkt. 78-1, ¶ 6(a)(ii). So, DSC plainly means circumstances

beyond the Department's control which impact its ability to comply with the

Agreement's timeframe requirements. This language is not ambiguous. *See SOLIDFX, LLC*, 841 F.3d at 833.

However, Disability Law Colorado selectively picks words from the DSC definition to create a new one that requires circumstances "'outside the control of the Department'—something 'unique' or 'unforeseen,' akin to a 'statewide disaster.'" Dkt. 96, p. 9. The plain language definition of DSC speaks for itself and the Court should decline Disability Law Colorado's invitation to create a new one.

Though the Agreement does not require DSC to be unique or unforeseen, the Department's June 2017 invocation was based on an unanticipated spike in court-ordered referrals for inpatient competency evaluation and restoration treatment services. *Compare* Exhibit C – BestReferralsPerMonth_July 2018, Column L, Rows 14, 16, and 18 (reflecting 84 orders for inpatient competency evaluation and restoration services in April 2017) *with* Exhibit C, Columns M and N, Rows 14, 16, and 18 (reflecting 110 orders for inpatient competency evaluations and restoration services in May and June 2017, respectively). The number of court orders entered statewide requiring the Department to provide inpatient competency evaluations and restoration treatment services is beyond the Department's control—this fact is not reasonably subject to dispute.[6] It follows then, that any spike in the number of

---

[6] The Department provides inpatient competency evaluations and restoration treatment services pursuant to Colorado law. §§ 16-8.5-101, et seq.; 27-65-107, C.R.S. (2017). It does not control whether or where a court orders a defendant to receive those services. *Id*.

court orders for such services is also beyond the Department's control, thus meeting the definition of DSC. Dkt. 96-2, p. 6.

In December 2017, the Department also invoked DSC. That invocation was based on the fact that, since the spike in referrals during June 2017, courts have continued to order pretrial detainees for inpatient restoration services at the same elevated level. *Compare* Exhibit C – BestReferralsPerMonth_July 2018, Columns I-L, Row 14 (reflecting 49, 49, 38, and 57 orders for inpatient restoration services in January through April 2017, respectively) *with* Exhibit C, Columns M-T, Row 14 (reflecting 65, 61, 62, 76, 65, 66, 76, 68, orders for inpatient restoration services in May through December 2017, respectively). For the same reasons as stated above, the Department also does not control the number of court orders continually entered statewide. So, a persistent elevated number of court orders for such services is also beyond the Department's control, thus meeting the definition of DSC. Dkt. 96-3, p. 3.

Disability Law Colorado does not dispute the fact that there was an increase in the number of court orders in 2017, or that the Department cannot control any spike or sustained increase in the number of court orders for inpatient competency evaluations and restoration treatment services. Dkt. 96, p. 11. Disability Law Colorado also does not dispute whether the Department had the resources to manage the elevated volume of orders when it invoked DSC in December 2017. Dkt. 96, pp. 11. Instead, it argues that the Department should have foreseen the increase

in court orders, and increased its resources accordingly. *Id.* By suggesting this requirement, Disability Law Colorado alters the DSC definition to add a foreseeability element. This is contrary to the principles of contract construction.

In sum, Disability Law Colorado's proposed interpretation of DSC is contrary to the foundational rules of contract construction. Instead of interpreting the plain language of the Agreement as required by *SOLIDFX, LLC*, 841 F.3d at 833 (citing *Allen*, 71 P.3d at 378), Disability Law Colorado insists upon an interpretation that is not natural or reasonable based on the Agreement's plain language. *Lincoln*, 2018 WL 3945875, at *9–10. In addition, adopting Disability Law Colorado's interpretation of DSC would limit the effect of the provision in a manner inconsistent with the Department's reasonable expectations and deprive it the benefit of its bargain. *SOLIDFX, LLC*, 841 F.3d at 833; *Allen*, 71 P.3d at 378. The law does not support such a strained construction. *SOLIDFX, LLC*, 841 F.3d at 833. Accordingly, summary judgment should not be granted in favor of Disability Law Colorado on this argument.

## II.   Contempt is not available to Disability Law Colorado.

Contempt is not available to Disability Law Colorado because this Court's Order of Dismissal Under Fed. R. Civ. P. 41(a)(2) in July 2016 (Order) approves the Agreement and incorporates it by reference, but does not expressly lay out provisions of the Agreement that Disability Law Colorado alleges the Department has violated.

In the context of a settlement agreement, contempt is available in limited circumstances. Where a settlement agreement is approved by the court "*[it] is nothing more than a contract*; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (quoting *D. Patrick v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir.1993)) (emphasis added). For a settlement agreement to have the meaning and effect of an injunction, the order approving the settlement agreement must go further than simply incorporating the agreement's terms by reference. Instead, the order approving the settlement agreement must meet the minimum requirements of F.R.C.P. 65(d)(1)(C), which explicitly requires an order of injunction to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." More specifically, the order must include an explanation of the reasons for its issuance, details of the order's specific terms, and a description of the restrained acts. *New Mexico v. Trujillo*, 813 F.3d 1308, 1319 (10th Cir. 2016). This requirement of a reasonably detailed description of the restrained or required acts aligns with due process requirements necessarily intertwined with contempt enforcement efforts. *FTC v. Kuykendall*, 371 F.3d 745, 756-57 (10th Cir. 2004) (party seeking contempt order has the burden to prove four specific elements, by clear and convincing evidence, including that the defendants had knowledge of, and disobeyed, the order) (quoting *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998));

16

*see also D. Patrick, Inc.*, 8 F.3d at 460–61 (the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the *express and unequivocal* command of a court order).

In 2016, the parties entered into the Agreement, and as a result, filed a joint motion to dismiss Disability Law Colorado's prior Motion to Reopen Action for Enforcement of Settlement Agreement. Dkt. 78. Subsequently, this Court entered the Order, which contained five statements addressing: 1) the Court's jurisdiction over the matter; 2) the Court's approval of the Agreement between the parties; 3) a directive that "[t]he Parties shall comply with the terms of their Settlement Agreement entered into on July 28, 2016, a copy of which appears on the docket for this case at [#78-1] and is incorporated by reference as if fully set forth herein"; 4) retention of jurisdiction over the settlement and enforcement of the Agreement; and 5) dismissing the case pursuant to Fed. R. Civ. P. 41(a)(2). Dkt. 80.

While the Order approving the Agreement states the reasons for its issuance—a satisfactory agreement between the parties resolving the dispute—it does not meet the other requirements of an injunction order because it does not detail specific terms or describe the restrained acts. Dkt. 80. The only reference to either specific terms or restrained acts is through the incorporation of the Agreement by reference. Dkt. 80, ¶ 3. However, incorporation by reference is not enough to render the Agreement a consent decree enforceable through contempt. F.R.C.P. 65(d)(1)(C); *Consumers Gas & Oil, Inc.*, 84 F.3d at 370. Consequently,

17

there is no legal basis to treat the Order as making the Agreement capable of being enforced through contempt;[7] it is a contract between the parties and must be interpreted and enforced as such. *Consumers Gas & Oil, Inc.*, 84 F.3d at 370. Accordingly, the appropriate remedy for enforcement of the Agreement is extension of the Agreement's duration, as agreed upon by the parties.[8]

## CONCLUSION

Throughout its Motion, Disability Law Colorado has failed to show that it is entitled to judgment as a matter of law. Accordingly, its Motion should be denied and this Court should decline to impose the relief Disability Law Colorado seeks.

CYNTHIA H. COFFMAN
Attorney General

*s/ Tanya E. Wheeler*
TANYA E. WHEELER, 37089*
First Assistant Attorney General

---

[7] Disability Law Colorado claims that the Department's letters to state courts in individual criminal cases justify ordering immediate compliance upon pain of contempt in this matter. Dkt. 96, p. 12. The Department disputes Disability Law Colorado's characterization of Exhibit 5 as containing an admission of any sort. The Department has never admitted violating constitutional rights of pretrial detainees. Additionally, Disability Law Colorado invites this Court to enter an order mirroring those of various state courts. Dkt. 96, pp. 13-14. While some of those orders have resulted in certain individuals being admitted immediately, a collateral impact of these orders is that other individuals have waited *even longer* than they otherwise would have because of the "line jumping" this has created. *See* Exhibit D – Order re: Motion for Order for CMHIP to Immediately Transfer Mr. G to CMHIP Pursuant to the Court's Order to Provide Him Restoration Treatment, *People v. D.G.* None of this justifies, or provides a legal basis for, this Court to enter the order Disability Law Colorado seeks.

[8] The Department's arguments in its Motion for Summary Judgment concerning the appropriate remedy in this matter are incorporated by reference as if fully set forth herein. *See* Dkt. 97, pp. 22-24.

ELIZABETH J. MCCARTHY, 37799*
Senior Assistant Attorney General
LAUREN K. PEACH, 49234*
Assistant Attorney General
State Services Section
1300 Broadway, 6th Floor
Denver, CO  80203
Telephone:  (720) 508-6151
FAX:  (720) 508-6041
Email:  tanja.wheeler@coag.gov
        libbie.mccarthy@coag.gov
        lauren.peach@coag.gov

*Counsel of Record
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned hereby certifies that on this 5th day of September, 2018, a true and correct copy of this **DEFENDANTS' RESPONSE TO PLANITIFF'S MOTION FOR SUMMARY JUDGMENT TO ENFORCE SETTLEMENT AGREEMENT**, was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Caleb Durling
FOX ROTHSCHILD LLP
1225 17th Street
Suite 2200
Denver, CO 80202
Telephone: 303-945-7415
Facsimile: 303-974-7468
Email: cdurling@foxrothschild.com

Iris Eytan
EYTAN NIELSEN LLC
3200 Cherry Creek South Drive
Denver, CO 80209
Telephone: 720-440-8155
Facsimile: 720-440-8156
Email: iris@eytan-nielsen.com

Ellie Lockwood
Timothy P. Scalo
SNELL AND WILMER LLP
1200 Seventeenth Street, Suite 1900
Denver, CO 80202
Telephone: 303-634-2000
Facsimile: 303-634-2020
Email: elockwood@swlaw.com

Mark J. Ivandick
Jennifer Purrington
DISABILITY LAW COLORADO
455 Sherman St., Ste. 130
Denver, CO 80203
Telephone: 303-722-0300
Facsimile: 303-722-0720
Email:mivandick@disabilitylawco.org

*/s/ Sandra Martinez*