# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 11-CV-02285-NYW**

CENTER FOR LEGAL ADVOCACY, d/b/a
DISABILITY LAW COLORADO**,**

    Plaintiff**,**

**v.**

REGGIE BICHA,
in his official capacity as Executive Director
of the Colorado Department of Human Services, and

JILL MARSHALL, in her official capacity
as Chief Executive Officer of the Colorado Mental Health
Institute at Pueblo,

    Defendants**.**

---

## PLAINTIFF'S MOTION FOR APPOINTMENT OF SPECIAL MASTER

---

    Plaintiff Center for Legal Advocacy, d/b/a Disability Law Colorado ("DLC") respectfully moves the Court to appoint a special master and recommends that the Court appoint Groundswell Services, Inc. for that task.

    1.    The Court at the November 30, 2018 hearing identified that there are two tracks to this case.  One is a hearing to resolve whether Defendants Reggie Bicha and Jill Marshall (collectively the "Department") properly invoked DSC in June and December 2017 and to what relief Plaintiff is entitled for breach of the Amended Settlement Agreement.  Dkt. 116 at 1 n.1. The other is resolving how and when the Department can come back into compliance with the timeframes for inpatient restoration set out under the 2016 Settlement Agreement and, by extension, comply (or come closer to complying) with the United States Constitution.  *Id.*  On this

latter issue, the Court asked but received no answers as to the current waitlist and when the Department can come back into compliance.[1] Partly in response, this Court ordered "Defendants to submit to Plaintiff and the court 'a plan to remedy the Departmental Special Circumstances, and the projected timeframe for Resolution' as contemplated by Paragraph 6(c) of the Amended and Restated Settlement Agreement no later than **December 14, 2018, including but not limited to addressing the status of the proposed Plans reflected in the June 22, 2017 and December 22, 2017 letters as they pertain to inpatient restoration programs**." Dkt. 116 ¶ 7 (emphasis in original).

2. The Court also strongly encouraged the parties to consider if there is a path to resolution of this case through settlement rather than litigation. One of the issues holding back settlement, from DLC's perspective, is a lack of transparency and information from the Department about when they can come back into compliance and the alleged circumstances causing the Department's frequently-invoked inability to comply with the timeframes for inpatient restoration required by the Amended Settlement Agreement (and its predecessor).

3. The common themes running through these issues are: (1) lack of trust among the parties; (2) lack of information provided to DLC and the Court as to the actual situation and timeline to return to compliance; (3) lack of any plan by the Department to resolve its inability to comply; and (4) lack of success in prior, lengthy negotiations regarding resolution.

---

[1] DLC last received data on November 7, 2018 showing the Department remains out of compliance with the restoration timeframes under the Amended Settlement Agreement. Its review of the numbers indicates the average wait time was at least 58.6 days and the longest wait time was 186 days—over half a year.

4. Nor should DLC be tasked with solving the Department's problems. DLC is a non-profit organization that does not have a forensic psychologist systems specialist on staff who can provide meaningful feedback to the Department regarding its broken system.

5. DLC respectfully submits there is a solution which can solve (or at least address) all of these problems: appointment of a special master.

6. The Court has broad, inherent authority to appoint a special master and there are numerous justifications for doing this under the current circumstances. Appointment of a special master is a form of immediate and constructive relief for the Department's June 2018 and ongoing breach of the Amended Settlement Agreement.

7. First, special masters are used routinely by courts in complex and complicated cases. Rule 53 provides for the appointment of special masters under a variety of circumstances and to perform various roles, including to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district," or to "recommend findings of fact on issues to be decided without a jury if appointment is warranted by . . . some exceptional condition." Fed. R. Civ. P. 53(a)(1)(B)(i). Here, a special master is necessary to assist the Court in effectively addressing the complex and technical issues surrounding the Department's repeated and prolonged failures to comply with the Settlement Agreement's timeframes, and the unconstitutional, statewide backlog of mentally ill pretrial detainees awaiting competency evaluations constitutes an exceptional condition warranting such an appointment.

8. It is not uncommon to have a special master in litigation like this one involving the warehousing of persons in jails who are deemed incompetent and denied timely restoration

treatment ("jail wait litigation"). The Utah jail wait settlement provided for a special master who is Dr. Patrick Fox, who until recently was the head of Colorado's Office of Behavioral Health. *See* Exhibit 1 (recent Utah special master report by Dr. Fox). Alabama's jail wait litigation involves a special master filing quarterly reports. *See* Exhibit 2 (recent Alabama special master report). The State of Washington has a court-ordered independent monitor who supervises its jail wait settlement to assess and evaluate the data and assists in providing the State of Washington, the Court and parties with realistic solutions. *See* Exhibit 3 (Groundswell report). Additionally, as requested here, the State of Washington's Defendant was ordered to submit detailed monthly reports to the Independent Monitor while out of compliance. *See* Exhibit 4 (April 2018 Report to the Independent Monitor).

9. Second, the Court has already held that Defendants are in breach since June 22, 2018. Dkt. 113 at 25. It has reserved ruling on the ultimate remedies, but it retains broad ability to fashion a remedy. *Id.* at 25-27. Appointing a special master squarely falls within those rights.

10. Third, the Court has general equitable powers and they are served here by appointment. "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential." *Sibley v. Sprint Nextel Corp.*, 298 F.R.D. 683, 685 (D. Kan. 2014) (internal quotation marks omitted; second bracketed alteration in original) (quoting *Schwimmer v. United States,* 232 F.2d 855, 865 (8th Cir.1956)); *see also Reed v. Cleveland Bd. of Ed.*, 607 F.2d 737, 746 (6th Cir. 1979) (holding that the authority to appoint "expert advisors or consultants . . . derives from either Rule 53 . . . or from the 'inherent power' of the court"); *Trentadue v. U.S. Cent. Intelligence Agency*, 2:08-CV-0788, 2015 WL 1968263, at

*6 (D. Utah Apr. 30, 2015) ("[E]xercising its inherent powers, the Court hereby APPOINTS Magistrate Judge Dustin B. Pead as Special Master in this action.").

11. Finally, the Court has the power to refer matters to a special master, including for "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues." Fed. R. Civ. P. 16(c)(2)(H, L).

12. Defendants may claim this is a punitive measure, but it is not intended to be. The Department, DLC, and the Court need expert guidance and information for different reasons in a situation where all parties and the Court agree there is a problem of statewide importance that needs to be resolved as quickly as possible and, hopefully, permanently. Appointing someone to support the parties and the Court to that end goal will benefit everyone, including most importantly the thousands of mentally ill detainees who have been or are being forced to wait months in jail to receive any mental health treatment from the Department and in violation of their constitutional rights.

13. Here, the special master would provide a beneficial and much needed resource to the Court and the parties and would serve multiple functions, including accomplishing important tasks such as:

    (a) preparing objective expert reports for the Court and the parties analyzing why this problem has persisted and not improved for 18 months, and suggesting various methods to improve the system;

    (b) evaluating the Department's data and plans (including the Court-ordered December 14, 2018 plan) from a forensic systems perspective, including assessing the plan's strengths and weaknesses for potentially remedying the current crisis;

    (c) conducting a historical evaluation of the system, including analyzing the Department's frequent inability to comply with the required timeframes and

       addressing why the Department consistently invokes Departmental Special Circumstances and how that can be avoided in the future;

(d) receiving monthly reports from the Department (or as the Court orders) to collaborate with the Department to employ protocols, systems, and data collection for both transparency and to evaluate its own needs, weaknesses and hopefully accomplishments;

(e) providing expert feedback to the Department on how to fix a system that has been broken for at least a decade;

(f) testifying at the March 2019 hearing as an impartial expert to give the Court guidance and perspective on the problems that exist and the solutions moving forward; and

(g) continuing, after the March 2019 hearing, to monitor Defendants' efforts to come into compliance and its steps toward remaining in compliance and, ultimately, could be part of the permanent remedies ordered by the Court in its final resolution of these proceedings to enforce the Settlement Agreement.

    14.    The parties previously agreed to have an independent consultant assist the Department with compliance-related issues under the Amended Settlement Agreement. Dkt. 71-1 § 7(a)-(f). His name is Dr. Joel Dvoskin. Unfortunately, Dr. Dvoskin has not been used by the Department as an effective resource. For example, it does not appear that Dr. Dvoskin has ever analyzed the monthly data or provided specific detailed plans for the remediation of the waitlist. Indeed, months after filing the Motion to Reopen the Settlement Agreement, Dr. Dvoskin emailed counsel for the parties asking what was going on in the case, as the last he heard the parties had been attempting to settle. *See* Exhibit 5 (email to Dr. Dvoskin). It appears that Dr. Dvoskin is not receiving any data from the Department (and has not for many months). It is not for today to assign blame for Dr. Dvoskin being sidelined, but the fact remains an independent expert that answers to the Court, and not the Defendants, is needed.

15. DLC proposes Groundswell Services and its team of Drs. Neil Gowensmith and Daniel Murrie. They have tremendous, relevant experience. They have served as consultants for the state of Washington's forensic mental health system from 2014 to 2018 and as lead consultants and expert witnesses in the 2015 federal class-action lawsuit. *See* Ex. 3. They also serve as consultants to the Los Angeles County Department of Health Services on these issues.

16. Dr. Gowensmith is someone who has credibility with both parties. DLC believes he can be an objective resource for the parties and the Court. Dr. Gowensmith has worked extensively for the state as a competency evaluator. Dr. Gowensmith has offered to allow Dr. Murrie to be the lead on the project to further ensure it is even-handed. The resumés of Drs. Gowensmith and Murrie are attached as Exhibit 6.

17. Attached as Exhibit 7 is a letter of interest from Groundswell about the position. In addition, DLC has worked with Groundswell and created a list of proposed duties, attached here as Exhibit 8.

18. For compensation, the Department should be ordered to pay for Groundswell's services. The Department had already agreed in the 2016 Settlement Agreement to pay for Dr. Dvoskin. Dkt. 78-1 § 7(e); *see also Brock v. Ing*, 827 F.2d 1426, 1428 (10th Cir. 1987) ("In a given case, fairness may suggest that the expense be borne by one of the parties . . . . [T]he expense of the Master, caused by the 'wrongdoer,' should be borne by the 'wrongdoer.'").

19. Furthermore, Rule 53 provides the Court with the authority to allocate responsibility for payment of the special master's fees to the Department. *See* Fed. R. Civ. P. 53(g)(3). It is ultimately the State's constitutional and statutory obligations to solve this problem and implement a constitutionally-sound system. It receives millions of dollars in funding for doing

so every year. As the party in breach, it should be responsible for paying the special monitor's fees and costs in this case—not a non-profit and its pro bono counsel or the Court which have been forced to devote considerable resources to monitoring the Department's actions and managing the Amended Settlement Agreement due to Defendants' breach. The agreement with Dr. Dvoskin can be modified by the new scope of duties provided to the special master and ordered by the Court.

20.     As part of the appointment process, the Court will be tasked with determining the length of the special master's appointment. DLC believes it would be in everyone's interest for the special master to be in place for the duration of the Amended Settlement Agreement. At a minimum, the Court should appoint the special master until such time that the Department returns to compliance and the Court enters final judgment against Defendants for their breaches of the Amended Settlement Agreement.

## CONCLUSION

Everyone agrees there is a serious problem with Defendants' persistent and ongoing failure to comply with the timeframes for providing inpatient restoration services to pretrial detainees required by the Amended Settlement Agreement. The parties and the Court need answers and assistance from a forensic systems psychologist with experience in matters such as this one. The appointment of an impartial, empowered expert will help everyone in this case. Groundswell is an entity that can work with and for the parties and the Court to provide such services and assistance. More than a remedy to Defendants' breach, this is a step toward a meaningful and long-term solution.

///

DATED: December 6, 2018.

Respectfully submitted,

| | |
|---|---|
| *s/ Iris Eytan* | *s/ Mark J. Ivandick* |
| Iris Eytan | Mark J. Ivandick |
| EYTAN NIELSEN LLC | Jennifer Purrington |
| 3200 Cherry Creek South Drive | DISABILITY LAW COLORADO |
| Denver, CO 80209 | 455 Sherman St., Ste. 130 |
| Telephone: 720.440.8155 | Denver, CO 80203 |
| Facsimile: 720.440.8156 | Telephone: 303.722.0300 |
| Email: iris@eytan-nielsen.com | Facsimile: 303.722.0720 |
| | Email: mivandick@disabilitylawco.org |
| *s/ Caleb Durling* | *s/ Ellie Lockwood* |
| Caleb Durling | Ellie Lockwood |
| FOX ROTHSCHILD LLP | Timothy P. Scalo |
| 1225 Seventeenth Street, Suite 2200 | SNELL AND WILMER LLP |
| Denver, CO 80202 | 1200 Seventeenth Street, Suite 1900 |
| Phone: (303) 945-7416 | Denver, CO 80202 |
| Email: cdurling@foxrothschild.com | Telephone: 303-634-2000 |
| | Facsimile: 303-634-2020 |
| *Attorneys for Plaintiff Center for Legal Advocacy, d/b/a Disability Law Colorado* | Email: elockwood@swlaw.com; tscalo@swlaw.com |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 6, 2018, a true and correct copy of this motion was electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Tanja E. Wheeler
Libbie McCarthy
Sarah Richelson
Ann Pogue
First Assistant Attorney General
Colorado Department of Law
State Services Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203

*Counsel for Defendants*

                                      */s/Sandy Braverman*
                                      Sandy Braverman