IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02285-NYW

CENTER FOR LEGAL ADVOCACY, d/b/a DISABILITY LAW COLORADO,

    Plaintiff,

v.

REGGIE BICHA, in his official capacity as Executive Director of the Colorado Department of Human Services; and
JILL MARSHALL, in her official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo,

    Defendants.

## ORDER APPOINTING SPECIAL MASTER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiff Center for Legal Advocacy d/b/a Disability Law Colorado's ("DLC" or "Plaintiff") Motion for Appointment of Special Master (or "Motion") [#117] and the Order on Motion for Appointment of Special Master [#123]. On December 18, 2018, the undersigned granted the Plaintiff's Motion for Appointment of Special Master and advised the Parties that a separate, written Order appointing the Special Master would follow. *See* [#123 at 4-5]. Having reviewed the affidavits of Drs. Neil Gowensmith and Daniel Murrie and finding no grounds for disqualification under 28 U.S.C. § 455, the Parties' submissions regarding the duties of the Special Master, and the entire docket, and pursuant to the court's authority under Rule 53 of the Federal Rules of Civil Procedure, the court hereby **APPOINTS** Groundswell Services and its team of Drs. Neil Gowensmith and Daniel Murrie as Special Master in this matter as set forth below.

# FINDINGS OF FACT AND CONCLUSION OF LAW
# REGARDING THE NEED FOR A SPECIAL MASTER

The court hereby incorporates its factual findings and conclusions of law as reflected in its Memorandum Opinion and Order dated November 9, 2018. [#113]. In particular, the court finds as follows:

1. Since at least 2007, the Colorado Department of Human Services ("the Department") and the Colorado Mental Health Institute at Pueblo ("CMHIP") have been subject to contempt citations issued in the Denver District Court relating to the extended period of wait times for pretrial detainees to access competency evaluations.

2. Those 2007 contempt citations were resolved through litigation involving a special counsel appointed by Denver District Court Judge Egelhoff, and resulted in a settlement agreement that required CMHIP to offer admission to pretrial detainees within 28 days of a court order requiring in-patient competency evaluations or restorative treatment, and to maintain a quarterly average of 24 days for both categories.

3. Sometime after the expiration of this first settlement agreement, the Department and CMHIP did not transport pretrial detainees to CMHIP for competency evaluation or restoration treatment within 28 days after they were ready for admission, prompting this action.

4. Plaintiff alleged that Defendants failed to timely admit pretrial detainees in jails across Colorado into CMHIP, the State's only forensic mental health hospital charged with providing court-ordered evaluations and accepting custody of pretrial detainees for restorative treatment, for competency evaluations, and restorative treatment for those determined to be incompetent to stand trial. [#1]. The complaint alleged this failure created unconstitutional delays

to provide competency evaluations and treatment for up to 80 pretrial detainees for as long as six months. [*Id.*].

5. The Parties settled this action first in 2012, with an agreement ("2012 Agreement") that required the Department to: 1) complete outpatient (in-jail) competency evaluations; 2) offer admission for inpatient competency evaluations; and 3) offer admission for inpatient restoration services in a certain timeframe. [#51-1; #105-15]. Under the 2012 Agreement, the Department was required to complete all out-patient evaluations of a pretrial detainee no later than 30 days after CMHIP's receipt of a court order directing the evaluation and receipt of collateral materials. [#51-1 at ¶ 2(b)]. The Department was also required to admit pretrial detainees to CMHIP no later than 28 days after such detainee is ready for admission and maintain a monthly average of 24 days or less for admissions for restorative treatment and in-patient competency evaluations. [*Id.* at ¶ 2(a)].

6. The 2012 Agreement included a provision called Special Circumstances, which "recognizes that to some extent the Department's ability to perform its statutory obligations and its obligations under [the 2012 Agreement] is based on factors beyond the Department's control."

7. In August 2015, the Department invoked DSC.

8. In October 2015, the Plaintiff moved to reopen the matter for enforcement of the 2012 agreement, in part because it disputed the invocation of DSC. [#53].

9. The Parties were able to resolve this 2015 dispute through an Amended and Restated Settlement Agreement ("Settlement Agreement" or "2016 Agreement") [#78-1]. The 2016 Agreement was effective as of July 28, 2016. [*Id.* at ¶ 9, 22-23].

10. The term of the 2016 Agreement extended until July 31, 2021, unless modified by other provisions arising from the Department's adherence or lack of adherence to the timeframes

set forth in the 2016 Agreement. [#78-1 at ¶ 4(a)]. The Parties agreed that the 2016 Agreement would not be modified to terminate prior to January 1, 2019 – approximately 29 months after its effective date.

11. This Court retained jurisdiction to enforce the Settlement Agreement. [#78 at ¶¶ 3, 4; #105-16]. Under the 2016 Settlement Agreement, the Department is required to offer admission to pretrial detainees to the hospital for restorative treatment or inpatient competency evaluations no later than 28 days after the pretrial detainee is ready for admission. [#105-16 at ¶ 2(a)]. The Department also must maintain a monthly average of 24 days or less for both types of offers of admission. *See* [*id.*].

12. The 2016 Agreement includes a provision called Special Circumstances, which recognizes that "to some extent the Department's ability to perform its statutory obligations and its obligations under [the Settlement Agreement] are based on factors beyond its control."

13. In June and December 2017, the Department invoked DSC. [#105-2; #105-3]. The Parties dispute whether these invocations of DSC are proper.

14. In June 2018, the Department did not invoke DSC.

15. The Department has not complied with the Settlement Agreement timeframes concerning inpatient restoration treatment since June 2017 and remains out of compliance.

16. The Department has complied with the Settlement Agreement timeframes concerning outpatient competency evaluations since July 2015.

17. The Department has complied with the Settlement Agreement timeframes concerning inpatient competency evaluations since May 2018.

18. Chart 1 details the timelines since June 2017 for restorative treatment at CMHIP or a second facility in Arapahoe County, known as RISE, as calculated by the Department.

**Chart 1**

| Month | Number of Pretrial Detainees on Report A Waiting 28+ Days | Average Wait Time | Longest Wait Time |
| --- | --- | --- | --- |
| June 2017 | 3 | 23.5 | 29 |
| July 2017 | 33 | 27.2 | 45 |
| August 2017 | 73 | 39.5 | 56 |
| September 2017 | 90 | 46.7 | 68 |
| October 2017 | 114 | 59.4 | 88 |
| November 2017 | 133 | 67.2 | 87 |
| December 2017 | 147 | 66.4 | 129 |
| January 2018 | 165 | 69.8 | 129 |
| February 2018 | 175 | 72.6 | 114 |
| March 2018 | 203 | 93.6 | 133 |
| April 2018 | 195 | 82.4 | 136 |
| May 2018 | 200 | 91.7 | 144 |
| June 2018 | 189 | 94.6 | 144 |
| July 2018 | 175 | 81.7 | 149 |
| August 2018 | 170 | 81.1 | 149 |

[#105-9]. In each month from July 2017 through present, Defendants have failed to maintain a 24-day monthly average for inpatient restorative treatment.

19. This court found Defendants in breach of the 2016 Agreement as of June 2018 when it did not invoke DSC but continued to fail to comply with the timeframe requirements for inpatient restoration services. As of August 2018, the average wait time for inpatient restoration services was almost four times the amount of time contemplated by the 2016 Agreement.

20. On December 17, 2018, pursuant to court order, Defendants submitted a "Comprehensive Plan for Compliance," [#122; #122-1; #122-2; #122-3] that was then subject to errata filed on December 19, 2018. [#128]. According to the Comprehensive Plan for Compliance, as of December 17, 2018, 69 pretrial detainees are waiting more than 28 days for inpatient restoration services. [#128 at 2].

21. Defendants have represented that they believe in good faith that the Department can resume compliance with the 2016 Agreement timeframes for inpatient competency restoration services in May 2019. [#122-1 at 30; #128, #128-1].

22. Defendants further represent that a new unit of CMHIP with an additional 24 beds will come online in August 2020, and needs no further funding. [#122-1 at 31].

23. Defendants also represent that they are attempting to increase further bed capacity, but that those proposals require additional funding that has not been secured from the Colorado General Assembly.

## APPOINTMENT

### A. Special Master Duties:

1) Review the Department's Plan [#122-1; #128] to increase timeliness of performance of competency services, including inpatient and outpatient competency evaluations and restorative treatment ("competency services").

2) Recommend a plan for the Department's consideration that proposes methods for addressing short- and long- term compliance with the timeframes for competency services that may ultimately be adopted in whole or in part as part of the court's injunctive relief to address the ongoing breach of the Amended and Restated Settlement Agreement ("Settlement Agreement").[1]

3) Develop a system of data collection, review, and analysis of Departmental data and continued monitoring related to competency services, to include monthly reporting by the Department to the Special Master, and monthly reporting by the Special Master analyzing such data and making recommendations to the Court based on such data.

---

[1] Defendants request that this duty and the one set forth in Paragraph 8 be modified by "provided that the interpretation of such duties does not violate the separation of powers doctrine." As the court noted in its prior Memorandum Opinion and Order, the very terms of the Amended Settlement Agreement and the Defendants' breach of such agreement has necessarily altered the application of the doctrine. [#113 at 22 n.2]. Accordingly, while the court remains mindful of its authority and basis for subject matter jurisdiction, *Kort v. Hufnagel*, 729 P. 2d 270 (Colo. 1986) (en banc), the court clearly retains jurisdiction to enforce the Amended Settlement Agreement and provide relief for the breach thereunder. In addition, the Special Master's duties are limited to a recommendation for a plan for the Department's consideration that may ultimately be adopted as part of the court's injunctive relief, and therefore the duties of the Special Master do not implicate the separation of powers doctrine.

4) Identify actual areas within the statewide system which have caused, are causing, or may cause non-compliance with the timeframe requirements of the Settlement Agreement concerning competency services.

5) Make recommendations to the Department for improved performance in the timely delivery of competency services.

6) Assist the Department in designing and implementing a plan to address compliance with the Settlement Agreement timeframes concerning inpatient competency restoration treatment, support the Department's implementation of its plan, and monitor the Department's compliance with such Settlement Agreement during the duration of the Appointment.

7) Survey the Department's efforts to attain compliance with the Settlement Agreement's timeframe requirements concerning competency services and report to the Court and parties on the progress towards reaching compliance on those timeframes on a monthly basis, including documenting which efforts require action or approval by third-parties.

8) Assist the court in fashioning and evaluating compliance with any injunctive relief ordered by the court.

9) The Department shall report monthly to the Special Master, the Court, and the Plaintiff on the status of the waitlist, the progress toward reaching the goal, and what impediments, if any, exist.

10) Make other recommendations to the Court and the parties on how to improve delivery of competency services for the purpose of effectuating compliance with the Settlement Agreement timelines concerning competency restoration services, including how to audit the State's performance.

11) Submit reports to the Court and parties, as defined in the court's Rule 53 Order

**B.      Duties and Reporting:**

In order for the Special Master to make such recommendations to the Court and the Department as specified above, the Department shall provide information the Special Master seeks for the purpose of carrying out his or her specific duties and obligations identified in this document.

As part of his or her duties, the Special Master shall provide the Court and the Parties with status reports every other month for the first six months (starting thirty days after receiving the Department's report identified in number 3 above), and then quarterly thereafter. Such reports shall address the Department's compliance with the timeframe requirements of the Settlement Agreement concerning competency services, and shall provide a detailed summary of information and recommendations the Special Master believes the Court and Parties should consider relating to the Department's compliance with the Settlement Agreement timeframes concerning competency services. The Special Master's report shall include, but not be limited to, reporting on

the number of Pretrial Detainees ordered to receive competency services and admission and/or evaluation timeframes for those Pretrial Detainees, an assessment of the Department's operations, systems, and admissions practices and policies relating to the Department's ability to comply with the Settlement Agreement timeframes concerning provision of competency services, and guidance to the Department for improvement and increasing efficiencies in these areas.

The Special Master shall have reasonable access to all records that the Department determines are reasonably related to the Settlement Agreement timeframes concerning competency services or the Department's ability to meet and comply with the proposed Plan [#122-1]. The Special Master shall be able to request the Department organize the data in a format which is necessary for the Special Master's efficient review. As a component of his or her reporting, the Special Master may select a sample of Pretrial Detainees from the Department's monthly reporting and audit the timeliness by the Department of that sample's Offered Admission dates for competency evaluations or restoration treatment. The Special Master shall include its findings of any such audit in his or her reports, and those reports shall be provided to the parties and filed with the Court, with any private or confidential information redacted from the public filing.

The Special Master shall have the right to confer and subcontract with additional experts (but not allow double billing), as he or she determines in the exercise of his or her professional judgment would be helpful to the Court or the Parties, including for preparation of additional reports, studies, or research.

### C. <u>**Visitation and Access:**</u>

The Special Master shall have the authority and responsibility to visit and access Colorado facilities, confer with stakeholders in the criminal justice and mental health systems, review documents, staff procedures, patient records, access to budget and resources available and funding streams related to the Department's duties under the Settlement Agreement and competency evaluations and restorative treatment, generally. Neither the Special Master nor the Parties shall publicly disclose information obtained by the Special Master pursuant to this paragraph, which would otherwise be privileged or confidential, without consent of all Parties and/or order of the court.

### D. <u>**Compensation:**</u>

As a result of the Department's ongoing breach of the Settlement Agreement since June 2018, and as an interim remedy to the breach, the Special Master's invoices must be submitted to the Court for payment by the Department.

While the Special Master is appointed, the Independent Consultant's duties are stayed, alleviating the Department of paying two individuals. The Department shall compensate the Special Master and his or her staff at his or her standard rates. The Department shall reimburse all reasonable expenses of the Special Master and Special Master's staff consistent with the State's government rates, procurement guidelines, and Department policy, including for travel and accommodations.

E.     **Duration:**

The Special Master shall be engaged and paid for by the Department until the Department comes into compliance with the Settlement Agreement timeframes concerning inpatient competency restoration services and maintains such compliance for a continuous period of 18 months. The Parties may file motions with the court to alter the duration of the Special Master's engagement (either terminate or extend the services of the Special Master), upon good cause shown.

**CONCLUSION**

Consistent with the directives set forth herein, this Order hereby **APPOINTS** Groundswell Services and its team of Drs. Neil Gowensmith and Daniel Murrie as Special Master in this matter.

DATED: December 28, 2018                                                            BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge