

Groundswell Services, Inc.

March 28, 2019

*Re: Civil Action No.  11-cv-02285-NYW*

The Honorable Judge Nina Wang
United States Magistrate Judge
District of Colorado
Alfred A. Arraj United States Courthouse
901 19th Street
Denver, CO 80294

Judge Wang,

This report serves as our first required status report as designated by the recent
Consent Decree dated March 15, 2019 addressing Case No. 1:11-cv-02285-NYW.  As you
know, we submitted our first report in response to your original court order on February
22, 2019.  Since then, the parties of collaboratively drafted a Consent Decree dated
March 15, 2019, which designates March 28, 2019 as the date of our first report.
Therefore, we are submitting this report as both a review of our original report, and an
update of intervening events.  In both the original court order, and in the more recent
Consent Decree, our reporting duty requires us to review updated data, monitor
progress, and provide recommendations to the Colorado Department of Human
Services (CDHS) to support their efforts to improve the timeliness and quality of
competence-related services.

Since our appointment on January 2, 2019, there have been tremendous developments
in this litigation. In December 2018, CDHS submitted to the Court a plan to attain
compliance with the Settlement Agreement by June 2019; this plan was updated on
January 4, 2019. As mandated by your court order, our first task was to review that plan
and submit our report by January 28, 2019. We did so. Shortly thereafter, the Parties
agreed to enter mediation. That mediation spanned several days of early March 2019.
As you know, the result was a Consent Decree dated March 15, 2019.  In our view, the
process and outcome of the mediation were remarkably successful; both parties
collaborated and compromised, leading to a Consent Decree that details ambitious, but

attainable, plans and timelines for CDHS to improve competency-related services and the broader system of care in which they provide these services.

As you know, we submitted our first report mandated by your court order on February 22, 2019. The time since that report was devoted to the mediated Consent Decree. Thus, in this first post-Consent-Decree report, we summarize our work since January 2, 2019, and we provide a preliminary analysis of the limited CDHS data we have received since February 2019. We anticipate that, going forward, most of our reports will focus more heavily on data and actionable items designated in the Consent Decree. Moreover, given the current legislative session, this report will also discuss pending drafted legislation that bears directly on the competency-services system in Colorado (subsequent reports will less likely address such legislation).

*Work since appointment on January 2, 2019*
First, we submitted our review of the CDHS Plan to attain compliance with the settlement agreement. Our review of their Plan was also based on our review of many parts of the competency system, interviews with key stakeholders, site visits, data analysis, and incorporation of best practices and promising practices from other jurisdictions. Our report outlined six key areas for improvement in the CDHS competency system: creating a comprehensive and cohesive plan, emphasizing community-based services, prioritizing outpatient competence restoration, incorporating a triage system, improving data collection and analysis, and developing a central system of easily-accessible information for stakeholders.

Soon after the submission of that report, the Parties agreed to enter mediation. As you know, this mediation spanned several days in early March of 2019, and led to a draft Consent Decree, dated March 15, 2019, that details tasks and timelines for CDHS to improve delivery of competency-related services.  One (or both) of us were present throughout the mediation.  *We were consistently impressed by both parties' apparent efforts to collaborate and compromise.*  We are optimistic that the plan detailed in the Consent Decree is attainable if CDHDS makes continued, proactive effort.

You have read the Consent Decree; we will not detail its contents here. *We consider the mediation, and the Consent Decree it produced, a tremendous step towards solving the competency-related crisis in Colorado*.  Since completing the draft Consent Decree, we have worked with the parties in several ways that were either prescribed in the Consent Decree, or closely aligned with goals in the Consent Decree.

These tasks have included:

- *Drafted 2019 legislation*: We have reviewed multiple legislative drafts of competence-related legislation, and we have reviewed summary sheets of major issues that various parties are interested in bringing to the 2019 legislative session. We have provided our comments and analysis to each party drafting

legislation. It seems clear to us that substantive competence-related legislation is being prepared for the 2019 session, some with broad consensus. However, drafted language to date is still preliminary. In some areas, drafted legislation is inconsistent with sections of the Consent Decree. These inconsistencies must be rectified. The sweeping legislation underway must complement, not contradict, the Consent Decree.

In addition to statutory change, it seems very likely that additional budgetary requests will be made to support new programs and their new positions. We have reviewed this legislation and the corresponding JBC budget requests with a focus on ways they are consistent with and supportive of CDHS efforts to meet the goals detailed in the Consent Decree.

- *Drafted Budgetary Requests:* We have reviewed draft requests to the JBC for funding that will support the steps and goals detailed in the Consent Decree.

- *Weekly Meetings with CDHS*:  As of March 22, we began weekly meetings with CDHS to discuss steps towards meeting the goals detailed in the Consent Decree, and address barriers to those goals. We have also scheduled additional on-site meetings to address these goals, and we have scheduled the monthly meetings (with leadership from both parties) that the Consent Decree prescribes.

### *Analysis of CDHS monthly data*

The Consent Decree (like the earlier court order appointing us as Special Master) requires that we submit an analysis of CDHS data and make recommendations based on that data. We address this requirement, in this current report, with a substantial caveat:

*Current data are incomplete*. We have now received monthly reports from CDHS for three months to date (December 2018, January 2019, and March 2019).  We presented our general responses to December and January data in our earlier (February 22, 2019) report.  Generally, the data provided in the monthly reports is sparse, but now that the mediation and Consent Decree are complete, we will work with CDHS to present data in the most useful and complete format (indeed, CDHS has emphasized their willingness to modify and expand their data reports). For example, we have asked CDHDS to present data detailing and the time defendants spend in each stage of competency-related services (i.e., awaiting evaluation, awaiting restoration services, receiving restoration services, etc), and we understand they are working towards presenting these data in subsequent reports.

Notwithstanding this substantial caveat, we summarize below the available data (which reports monthly totals of evaluation and restoration orders, both inpatient and outpatient).

Regarding the number of underline evaluations ordered overall (204), there is some variation in the last 12 months, ranging from 178 to 225 competency evaluations per month, but no discernable trend towards increased referrals for evaluations.  However, February 2019 saw a substantial increase in the number of *inpatient* competency evaluations ordered (29, the highest number in the past year) by courts statewide, and a slight decrease in the number of outpatient competency evaluations ordered (175, which is among the lower monthly rates).

Regarding restoration, February 2019 saw little change in the numbers of cases ordered for restoration overall, as compared to recent months. A total of 128 defendants were ordered to restoration in February 2019, as compared to 139 in January and 116 in December 2018. There remains much variation in the monthly number of defendants ordered to restoration, ranging from 84 to 139 during the past 12 months.

However, the number of defendants (92) ordered to *inpatient* restoration in February 2019 represents the greatest number to date (i.e., since October 2017, the earliest data we have available).  Meanwhile, the 36 individuals referred for outpatient community restoration in February 2019 is a substantial decrease from the four prior months, though it is roughly similar to the average for the past year.

We are reluctant to draw strong conclusions from the February 2019 increase in inpatient restoration orders, given limitations to the available data, and the dangers of drawing strong conclusions from any one-month deviation.  Nevertheless, this recent increase demonstrates—at a minimum—that *the interventions prescribed in the Consent Decree are crucial and time-sensitive*.

Regarding potential explanations for this February increase, CDHS staff mentioned during our first weekly meeting that judges continue to issue show-cause orders, perhaps even more frequently than they have in the past, to facilitate more prompt inpatient restoration.  We encouraged CDHS to begin rapid and assertive efforts to educate judges about the Consent Decree—particularly the "two-tier" system and triage efforts that prioritize inpatient restoration for those who need it most (and, relatedly, the ways in which show-cause orders can actually undermine triage efforts to prioritize those who need inpatient services most promptly).   In short, it will be crucial for CDHS to widely educate the courts and other stakeholders regarding the changes detailed in the consent decree.

Again, we anticipate that future reports will review further CDHS data as they begin sharing it with us.  In the meantime, we encourage you to contact us with any questions or requests.  We appreciate the opportunity to serve the court, and the state of Colorado, in this important matter.

Neil Gowensmith, Ph.D.
President, Groundswell Services Inc.
neil.gowensmith@gmail.com

Daniel Murrie, Ph.D.
danielmurrie@me.com