

Groundswell Services, Inc.

July 6, 2020

*Re: Civil Action No.  11-cv-02285-NYW*

The Honorable Judge Nina Wang
United States Magistrate Judge
District of Colorado
Alfred A. Arraj United States Courthouse
901 19th Street
Denver, CO 80294

Judge Wang,

As you may recall from our May 2020 Quarterly Report and our email correspondence of May 26-27, we had been working with CDHDS OBH and Disability Law Colorado to reach some form of agreement regarding the fines that would accumulate amid the COVID-19 pandemic. Specifically, you may recall that all parties (including DLC and Special Master) agreed that COVID-19 represents a special, unforeseeable circumstance, but also agreed that the Consent Decree explicitly forbids formally invoking Departmental Special Circumstances until a later date.  Therefore, the parties were engaged in ongoing discussions about how to handle the fines that will inevitably result from COVID-attributable delays.  On the one hand, all parties agree that the Department should *not* be fined for delays that are solely, truly caused only by COVID.  On the other hand, all parties want to ensure that the COVID pandemic does not absolve the Department from any duties for the timely service they can provide, or relieve them from any sanctions (fines) they *should* rightly face for *non*-COVID delays.

As we discussed in the weeks preceding our May report, OBH proposed the best solution was to agree upon a fines amount that the Department *would have incurred this year* were it not for COVID.  Next, OBH provided estimates (i.e., their own, and a "second opinion," similar estimate from a statistician who was not employed by OBH) that they would have likely accumulated roughly $2 million in fines absent the COVID-19 pandemic.  They proposed that OBH agree to this fines amount for the following year, rather than attempt to estimate the fines on a monthly basis, which would require invoking Individual Special Circumstances (ISC) for each defendant whose movement was hindered by precautions or procedures necessitated by the COVID-19 pandemic.  From the perspective of OBH, this negotiated agreement would have been much

more efficient than invoking ISC for individual cases, because the latter would require considerable effort from OBH, and considerable effort from DLC to review.

At the time of our correspondence with you in late May, it seemed likely that DLC would accept this proposal from the Department.  However, DLC ultimately (around mid-June) declined this proposal from the Department. Absent an agreement, OBH has defaulted back to an approach in which they will invoke ISC on every individual case whose progress has been slowed by the COVID pandemic response.  This includes, for example, defendants who cannot be evaluated promptly because jails forbade external evaluators and did not allow for video-conferenced evaluations, and defendants who were found incompetent but could not be promptly transitioned to the hospital because of delays necessary for safety (such as admitting defendants in cohorts to monitor for infection). DLC's stated rationale for preferring the invocation of ISC on individual cases was to ensure that OBH could provide specific information about each defendant's status: what the barriers to transfer have been, what efforts OBH has made to move them, and what options remain. DLC believes that transparent communication and individualized attention to the waitlist will continue to force OBH to make concerted efforts for persons in need of competency services.

We have monitored this negotiation attempt since mid-June, and we discussed it in our first two-party monthly meeting held at the end of June. (We intentionally delayed updating you, because we wanted to have some sense of how this process would work, and whether the parties would return to negotiation; they have not).  Overall, it is clear the process of invoking ISC requires considerable work by OBH staff.  We anticipate this approach may, ultimately, result in fewer fines paid by OBH (as compared to the proposed agreement of $2.5 million). Nevertheless, DLC appears generally satisfied with the approach, and reportedly appreciates the individualized attention and documentation the process requires.  Thus, it appears that parties will continue with this plan (i.e., invoking ISC on many defendants) as the response to delays caused by the COVID pandemic.

Frankly, we had some concerns that this process—in which OBH proposed and agreement and DLC ultimately declined—reflected a setback.  There were ways in which it suggested a reluctance to collaborate for an agreement, and ongoing DLC distrust of OBH (which may be reasonable in light of more distant history).  We were concerned this may suggest a regression to a less collaborative and collegial tone, even after such significant progress and collaboration over the past year.  However, as of our late-June two-party meeting, the tone between the two parties remained constructive and collaborative.  In short, we were relieved that—even though they failed to reach an agreement—both parties returned to the table with a constructive approach, remaining eager to collaborate for the good of class members.  Though concerned that this lack of resolution may have created a setback, we are generally encouraged that much of the progress in collaboration seems to remain.

Regarding broader updates in the era of the COVID pandemic, we see good news and bad news. Our greatest concern is that waiting times for Tier 1 defendants (those who most urgently need hospitalization) have increased, and the Department is not consistently meeting the 7-day

deadlines that they had previously been meeting so consistently.  On the other hand, there has been tremendous (and greater-than-expected) progress in reducing the overall number of people on the waitlist.  Indeed, the waitlist has reached record lows, and appears roughly half the size it was before the COVID pandemic.  Apparently, the reduction in arrests and incarcerations caused by the pandemic has provided some relief in the pace of evaluation and restoration orders.  The Department has used this opportunity to make progress in some ways, even if progress in other ways is limited by COVID-related safety precautions.  The most recent Monthly Compliance report (July 7, 2020) reports that the numbers of court orders for competency evaluations are on the rise, and that they will likely approach pre-COVID levels within the next month or so; if so, we anticipate that waitlist numbers will rise accordingly.  We will provide much more detailed updates on their progress in our next Quarterly Report, due in late August.

We will continue to work with the Department on these and related matters, and we encourage you to contact us with any questions or requests.  As always, we appreciate the opportunity to serve the court, and the state of Colorado, in these important efforts.


Neil Gowensmith, Ph.D.
President, Groundswell Services Inc.


Daniel Murrie, Ph.D.